Philip J. Giles, State Bar #30340
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: pgiles@allenbarneslaw.com
dnelson@allenbarneslaw.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ADVANCED REIMBURSEMENT SOLUTIONS, LLC, et. al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 2:22-bk-06372-BKM<br><br>(Jointly Administered) |
| This filing applies to:<br><br>☐ ALL DEBTORS<br>☐ ADVANCED REIMBURSEMENT SOLUTIONS, LLC;<br>☒ AMERICAN SURGICAL DEVELOPMENT, LLC | Case No. 2:22-bk-06372-BKM<br>Case No. 2:22-bk-06373-BKM<br><br>**MOTION TO ASSUME THERMOTEK'S PROPOSAL FOR PURCHASE OF USED VASCUTHERM 5 UNITS** |

Pursuant to Code § 365(a), Rules 6006 and 9014, and LBR 6006-1, American Surgical Development, LLC, a debtor ("Debtor") in the above-captioned Chapter 11 case, hereby requests that this Court enter an order authorizing the Debtor to assume the *Proposal for Purchase of Used VascuTherm 5 Units* ("Proposal") attached hereto as **Exhibit A**.[1] The Debtor entered into the Proposal with ThermoTek prior to the Debtor filing its bankruptcy case (the "Case"). The Debtor and ThermoTek shall collectively be

---

[1] Unless indicated otherwise, (*i*) statutory citations refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532; (*ii*) rule citations shall refer to the Federal Rules of Bankruptcy Procedure ("Rule"), 1001-9037, and (*iii*) local rule citations shall refer to the Local Rules for the U.S. Bankruptcy Court for the District of Arizona ("LBR").

{00375490 3}

referred to as (the "Parties").

As provided in more detail herein, assumption of the Proposal is in the best interest of the Debtor's estate. Assumption of the Proposal ensures (*i*) a quick liquidation of up to 150 pieces of rapidly depreciating medical equipment, and (*ii*) a reduction of the estate's administrative expenses because the Debtor would no longer be responsible for storing the medical equipment acquired by ThermoTek. Accordingly, the Debtor wishes to assume the Proposal including all of its terms and conditions. The following Memorandum of Points and Authorities support this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION, VENUE, AND BACKGROUND

1. The Debtor filed its voluntary petition for relief in the District of Arizona under Chapter 11 on September 23, 2022 ("Petition Date"). The Debtor continues as a Debtor-in-possession under the management and control of Bryan Perkinson, Chief Restructuring Officer, in accordance with Code §§ 1107 and 1108.

2. This Court has jurisdiction over the Case under 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding related to the administration of the bankruptcy estate under 28 U.S.C. § 157(b)(2)(A).

3. ThermoTek manufactures the VascuTherm 5 (the "Unit"), an FDA-controlled Class II prescription device. Between 2017 and 2019, the parties engaged in four separate pre-petition transactions where Debtor purchased in total 230 Units from ThermoTek. On average, each Unit fully depreciates in value after 36 months. The respective timeline for each pre-petition transaction between the parties is as follows:

    a. The Debtor purchased 30 Units in December of 2017 which have fully depreciated in value as of December 2020;

    b. the Debtor purchased 120 Units between January and February of 2018, which fully depreciated in value as of January or February 2021;

  c. the Debtor purchased 30 Units in June of 2019 which fully depreciated as of June 2022; and

  d. the Debtor purchased 50 Units in August of 2019, which fully depreciated as of August 2022.

4. Therefore, all of the Debtor's originally purchased 230 Units have now fully depreciated in value.

5. As stated, a Unit is an FDA-Controlled, Class II prescription device. The FDA heavily regulates the purchase of a Unit like this. For example, only a licensed Durable Medical Equipment dealer who follows FDA device guidelines may purchase a used prescriptive device. Additionally, any bankruptcy conservator or trustee wanting to sell or liquidate Class II devices to a party other than the manufacturer must follow FDA Class II device traceability guidelines. These regulations reinforce that it is in the estate's best interest to execute upon the Proposal with ThermoTek, rather than incur significant costs to find a subsequent buyer in adherence with the FDA's guidelines.

6. Before the Debtor filed its bankruptcy petition, the parties entered into the Proposal wherein ThermoTek offered to purchase 150 Units from the Debtor at a price of $72.50 per unit. This Proposal permits the Debtor to recuperate what otherwise would be a sunken cost for the estate as the prospect for finding another buyer is unlikely.

7. The Debtor is in the midst of a wind-down that will minimize administrative expenses and maximize the value of estate assets. Assuming this Proposal will aid in expediting the Debtor's wind-down process.

<u>THE PROPOSAL FOR PURCHASE OF USED VASCUTHERM 5 UNITS</u>

8. The Debtor and ThermoTek are parties to the Proposal dated September 19, 2022 attached hereto as **Exhibit A**.

9. The Proposal came about after substantial negotiations between the Parties.

10. The Proposal provides that ThermoTek will purchase up to 150 of the Debtor's Units at a price of $72.50 per Unit.

11. Each Unit identified for potential purchase shall first be subject to ThermoTek's initial evaluation.

12. If ThermoTek accepts and takes delivery on a Unit, then these Unit(s) are considered sold "as is" with no provision of warranty or return back to the Debtor.

13. On a mutually agreeable date, ThermoTek shall inspect and pick-up the accepted Unit(s) at ThermoTek's expense for eventual delivery to its Texas office.

14. Within 10 days of pick-up, the Debtor shall invoice ThermoTek for all Unit(s) picked up, and ThermoTek shall remit payment within 30 days of receipt of the invoice.

15. The Debtor is not in default with respect to their obligations under the Proposal.

## II. LEGAL ANALYSIS.

16. Under Code § 365(a), a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Because the Debtors have not defaulted under the Proposal, the requirements for assuming an executory contract in default under Code § 365(b) are inapplicable to this matter.

17. Although Code § 365 does not set forth standards for courts to apply in determining whether to approve a trustee/debtor-in-possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g.,* Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 550 (1953); Matter of Talco, Inc., 558 F.2d 1369, 1173 (10th Cir. 1977). A trustee satisfies the "business judgment" test when they determine, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. In re FCX, Inc., 60 B.R. 405, 411 (Bankr.

E.D.N.Y. 1986); see also In re Genco Shipping & Trading, Ltd., 509 B.R. 455, 462 (Bankr. S.D.N.Y. 2014) (quoting In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) ("A court will normally approve the assumption of any executory contract upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.").

18. The Bankruptcy Code does not provide a precise definition of an executory contract. Within the Ninth Circuit, the "Countryman" definition is most frequently used to determine whether a contract is executory for bankruptcy purposes. *TKO Props., LLC v. Young (In re Young)*, 214 B.R. 905, 910 (Bankr. D. Idaho 1997). The Countryman approach deems a contract as executory if: "the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *Id. See also: In re Texscan Corp.*, 976 F.2d 1269, 1272 (9th Cir. 1992) ("An executory contract is one on which performance is due to some extent on both sides. . . In executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.). And more generally, the Supreme Court recently reinforced that "A contract is executory if performance remains due to some extent on both sides." *Mission Prod. Holdings v. Tempnology, LLC,* 139 S. Ct. 1652, 1658 (2019) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 (1984)).

19. The Proposal here is an executory contract because neither party has exchanged consideration for the Units. Specifically, the Proposal calls for ThermoTek to inspect each of the Units it wishes to purchase, which it has not yet completed. More significantly, ThermoTek has not paid for any units that it wishes to purchase. Performance also still remains for the Debtor because the Debtor has not transferred ownership of any of the Units to ThermoTek. Therefore, the Proposal is an executory

contract because significant performance remains between both parties, consistent with the Ninth Circuit's adopted Countryman approach.

20. It is in the Debtor's business judgment to assume the Proposal for multiple reasons. First, liquidating these Units accelerates the Debtor's goal of liquidation. The Debtor will have substantially less units to liquidate or dispose of after the parties execute the Proposal. Second, the Proposal enables the Debtor to work towards maximizing the estate's assets for the benefit of creditors while minimizing administrative expenses. In addition to the administrative costs for storing the Units, this Proposal also eliminates the increased administrative time and expenses necessary to find an alternative buyer adhering to the FDA's rigid guidelines for medical equipment like this. And third, the Units are considered outdated technology which increases the difficulty of selling the Units to an alternative purchaser because they likely have a substantially reduced resale value to other purchasers. Thus, allowing the Debtor to assume the Proposal will generate an additional $72.50 per Unit purchased for the estate, a significant value compared to the otherwise likely scenario where an alternative buyer would likely offer little to no consideration to the Debtor.

## III. CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(i) authorizing the Debtor's immediate assumption of the Proposal;

(ii) granting such other and further relief as the Court deems just and proper under the circumstances of these cases.

DATED: October 4, 2022.

**ALLEN BARNES & JONES, PLC**

*/s/ PJG #30340*
Philip J. Giles
David B. Nelson
Attorneys for Debtors

| | | |
|---|---|---|
| 1 | **E-FILED** on October 4, 2022 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case. | |
| 2 | | |
| 3 | | |
| 4 | **COPY** e-mailed the same date to: | |
| 5 | Edward K. Bernatavicius<br>18 Office of the United States Trustee<br>230 N. First Avenue, Suite 204<br>19 Phoenix, AZ 85003-1706<br>Edward.K.Bernatavicius@usdoj.gov<br>*Trial Attorney* | Bryan Perkinson<br>Chief Restructuring Officer<br>c/o Sonoran Capital Advisors<br>1733 N. Greenfield Rd., Ste 104<br>Mesa, AZ 85205<br>bperkinson@sonorancap.com |
| 6 | | |
| 7 | | |
| 8 | Geoffrey Goodman<br>Foley & Lardner LLP<br>321 N. Clark St., Suite 3000<br>Chicago, Illinois 60654<br>ggoodman@foley.com | Eric S. Goldstein<br>Shipman & Goodwin LLP<br>One Constitution Plaza<br>Hartford, CT 0 6103-1919<br>egoldstein@goodwin.com<br>*Attorneys for United Healthcare Insurance Company and United HealthCare Services, Inc.* |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | Alan A. Meda<br>Burch & Cracchiolo, P.A.<br>1850 N. Central Ave., Suite 1700<br>Phoenix, AZ 85004<br>ameda@bcattorneys.com<br>*Attorney for Pantheon Global Holdings, LLC* | Jason D. Curry<br>Amelia B. Valenzuela<br>QUARLES & BRADY LLP<br>Renaissance One<br>Two N. Central Avenue<br>Phoenix, AZ 85004<br>jason.curry@quarles.com<br>amelia.valenzuela@quarles.com<br>Sybil.Aytch@quarles.com<br>*Attorneys for United Healthcare Insurance Company and United HealthCare Services, Inc.* |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Janel M. Glynn<br>Lindsi M. Weber<br>THE BURGESS LAW GROUP<br>3131 E. Camelback Road, Ste. 224<br>Phoenix, AZ 85016<br>janel@theburgesslawgroup.com<br>lindsi@theburgesslawgroup.com<br>*Counsel for The Aetna Life Insurance Company, Aetna, Inc., and Aetna Health, Inc.* | Michael W. Carmel, Esq.<br>MICHAEL W. CARMEL, LTD.<br>80 East Columbus Avenue<br>Phoenix, AZ 85012-2334<br>Michael@mcarmellaw.com<br>*Attorney for Troon Pain Management LLC; Robotic Surgery Center, LLC; Physicians Billing Associates, LLC; Facilities Billing Associates, LLC; and Arizona Pain Doctors, LLC* |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | / / / | |
| 26 | / / / | |

{00375490 3} -7-

Steve Tabor
Vice President of Sales
ThermoTek, Inc.
stabor@thermotekusa.com

*/s/ Misty Vasquez*

# Exhibit A



September 19, 2022


Mr. Phil Chapman
Sonoran Capital Advisors
1733 N Greenfield Rd. Ste 104,
Mesa, AZ 85205

RE: CONFIDENTIAL Proposal for Used VascuTherm units from American Surgical Development (ASD)

Dear Phil:

Please accept this letter as ThermoTek's proposal to purchase up to 150 of American Surgical Development's (ASD) used VascuTherm 5 devices: subject to the following:

| Price per Unit | - $72.50 for each VascuTherm 5 unit; accepted and picked up by ThermoTek |
|---|---|
| Condition(s) | - Each VascuTherm 5 unit identified for potential purchase shall first be subject to ThermoTek's initial unit evaluation, on premises, at 23275 North 19th Ave, Phoenix, AZ 85027.<br>- All VascuTherm 5 units identified for potential purchase shall be made available for inspection within the air-conditioned confines of the ASD warehouse. This includes all VascuTherm 5 units that are currently stored in the outside trailer.<br>- These VascuTherm 5 units in the trailer shall first be brought into the warehouse, unpacked, and segregated by ASD or Sonoran Capital personnel. and ready for ThermoTek's inspection.<br>- To be eligible for purchase, each VascuTherm 5 system must include:<br>    o VascuTherm 5 device; free of visible damage<br>    o VascuTherm umbilical hose<br>    o VascuTherm power cord.<br>- If ThermoTek's accepts and takes delivery on a VascuTherm 5 unit, then these unit(s) are considered sold "as is" with no provision of warranty or return back to ASD.<br>- On a date to be mutually determined, ThermoTek shall inspect and pick-up the accepted devices at ThermoTek's expense for eventual delivery to its offices in Flower Mound, TX<br>- Within 10 days of pick-up, Sonoran Capital Advisors shall invoice ThermoTek for all units picked up, and ThermoTek shall remit payment within 30 days of receipt of the invoice.<br>- Packaging and freight costs, from ThermoTek's Mesa facility to Flower Mound, TX shall be a ThermoTek's expense. |
| Ineligible units | The following units shall be considered ineligible for purchase:<br><br>- Any unit(s) marked as a TEC unit, or VascuTherm Model 2 device<br>- Any unit(s) marked as a Pulsar Scientific Recovery Plus device |

|  | - Any VascuTherm 5 unit that has visible damage (i.e., cracked screen, damaged outer case, etc.)<br>- Any VascuTherm 5 device that does not include an umbilical hose and power cord.<br>- Any/all carry cases |
|---|---|

We look forward to your response and acceptance of our offer.

Best regards,

*Steve Tabor*

Steve Tabor
Vice President of Sales
ThermoTek, Inc.
(972) 874-4918
stabor@thermotekusa.com



# Amendment to American Surgical Development Proposal

Financial Statement in Support of ThermoTek's Offer

| | |
|---|---|
| Original Dealer Purchase Price | $2,499.00 |
| Total Units Purchased by ASD | 230 |
| | |
| Depreciation Schedule – Average DME Distributor of VascuTherm devices<br><br>• 30 units purchased in Dec. 2017<br>• 120 units purchased Jan/Feb 2018<br>• 30 units purchased in June 2019<br>• 50 units purchased in August 2019 | 36 months<br><br>• Fully depreciated as of Dec 2020<br>• Fully depreciated as of Jan/Feb 2021<br>• Fully depreciated as of June 2022<br>• Fully depreciated as of Aug 2022 |
| Depreciated value of a fully depreciated VascuTherm 5 to ThermoTek<br>• ThermoTek assumes all performance testing<br>• ThermoTek assumes all parts & labor to bring a unit to FDA-approved, factory standards | <u>5% or $124.95</u> |
| Expense adjustments to depreciated value:<br>• (less) packaging materials to ship units back from AZ to Texas<br>• (less) freight from Arizona to Texas<br>• (less) processing & labor | (less) $10.00 per unit<br><br>(less) $35.00 per unit<br>(less) $7.45 per unit |
| **Net value per Unit** | **$72.50** (depreciated value less expenses) |
| | |
| Note(s) to Seller: | 1. A VascuTherm is an FDA-controlled, Class II prescription device.<br>2. Only a licensed Durable Medical Equipment dealer who follows FDA device guidelines may purchase a used prescriptive device<br>3. It would be unlawful for a bankruptcy conservator to sell or liquidate Class II devices without following FDA Class II device traceability guidelines<br>4. Any purchaser of these devices would be strongly encouraged to send them back to the manufacturer to have them safety tested in accordance with manufacturer's factory specifications.<br>5. Current repair turn-around time is 90-120 days. Dealers who require evaluation/repair of an ASD VascuTherm 5 device should be advised. |