1 Philip J. Giles, State Bar #30340
David B. Nelson, State Bar #34100
2 **ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
3 Phoenix, Arizona 85004
Ofc: (602) 256-6000
4 Fax: (602) 252-4712
Email: pgiles@allenbarneslaw.com
5          dnelson@allenbarneslaw.com

6 Attorneys for Debtors

7

## UNITED STATES BANKRUPTCY COURT

8
## DISTRICT OF ARIZONA
9

| | |
|---|---|
| In re: | Chapter 11 |
| ADVANCED REIMBURSEMENT SOLUTIONS, LLC, et. al., | Case No. 2:22-bk-06372-BKM |
| | (Jointly Administered) |
| Debtors. | |
| This filing applies to: | Case No. 2:22-bk-06372-BKM<br>Case No. 2:22-bk-06373-BKM |
| ☒ ALL DEBTORS | |
| ☐ ADVANCED REIMBURSEMENT SOLUTIONS, LLC; | **DEBTORS' DISCLOSURE STATEMENT DATED OCTOBER 25, 2022** |
| ☐ AMERICAN SURGICAL DEVELOPMENT, LLC | |

18      Advanced Reimbursement Solutions, LLC and American Surgical Development,

19 LLC (collectively, the "Debtors" or "Proponents") in the above-captioned Chapter 11

20 cases (collectively, the "Cases"), hereby submit this *Disclosure Statement Dated*

21 *October 25, 2022* ("Disclosure Statement") to assist Creditors in making informed

22 decisions when voting on the *Debtors' Plan of Reorganization Dated October 25, 2022*

23 ("Plan"), attached hereto as **Exhibit A**.

24

25

26

{00379885}

# ARTICLE 1

## INTRODUCTION TO THE DISCLOSURE STATEMENT AND VOTING

### 1.1    Purpose of the Disclosure Statement

This Disclosure Statement sets forth information regarding the Debtors' pre-petition history; their Property; significant events that led to the filing of the Cases; a summary of the Plan, including when and how Creditors will be paid; and a brief discussion of the confirmation process and the voting procedures that must be followed to enable Creditors' votes to be counted.  The information provided herein is true and accurate to the best of the Debtors' knowledge, information and belief.  However, the statements herein as to, among other things, the history and nature of the Debtors' business and ongoing litigation, are not adopted by, or binding on, any third party.

The primary purpose of this Disclosure Statement is to provide adequate information to those Creditors voting on the Plan so that they may make a reasonably informed decision with respect to exercising their rights to accept or reject the Plan.  This Disclosure Statement is not intended to be relied upon for any purpose other than to determine how to vote on the Plan.  Nothing contained herein shall be deemed conclusive advice on the tax or other legal effects of the Plan on holders of Claims or interests. **Consult your personal counsel or tax advisor regarding any questions or concerns respecting tax, securities, or other legal consequences of the Plan.**

### 1.2    Definitions

Unless otherwise defined herein, terms defined in the Plan, capitalized herein, shall have the same meanings when used in this Disclosure Statement.  In addition, unless otherwise defined herein or in the Plan, terms used in this Disclosure Statement shall have the same meanings as in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, or, if not defined, their ordinary meanings.

### 1.3 Authorized Representations

This Disclosure Statement is the only document authorized by the Bankruptcy Court to be used in connection with soliciting votes on the Plan. You should not rely upon any representations or inducements made to secure your acceptance of the Plan other than those set forth herein or in the Plan. **The Bankruptcy Court's approval of this Disclosure Statement does not constitute a certification or ruling by the Court regarding the completeness or accuracy of any statements contained herein. The information contained in this Disclosure Statement came from the Debtors' records and information.** The Debtors have provided the information in good faith but have not retained a certified public accountant to audit the information contained herein nor prepared this information according to generally accepted accounting principles.

This Disclosure Statement is not the Plan. This Disclosure Statement and the Plan should be read together in their entireties before you vote on the Plan. For the convenience of Creditors and interest holders, the Plan is summarized in this Disclosure Statement. In the event of any inconsistency, the Plan controls.

### 1.4 Voting Procedures

To be entitled to vote, a Creditor must have an Allowed Claim that is Impaired under the Plan. Code § 1124 defines whether a Claim is Impaired. To summarize, a Claim is Impaired if the Plan modifies the legal or contractual rights of the Claimant, or if the Plan does not cure and reinstate the legal or contractual rights of the Claimant. A Creditor in a Class that will not receive any distribution under the Plan, under any circumstances, is not entitled to vote in the Class of which it is a member and is deemed to have rejected the Plan.

All Creditors or interested parties entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing the Ballot that accompanies this Disclosure Statement, and timely mailing the original Ballot to Debtors' counsel as

directed below.

**The Court issued an order requiring that all Ballots accepting or rejecting the Plan be <u>received</u> by close of business on _____ ("Ballot Deadline").** The Ballots should be sent to:

Philip J. Giles
David B. Nelson
ALLEN BARNES & JONES, PLC
1850 N. Central Ave., Suite 1150
Phoenix, AZ 85004
Fax: (602) 252-4712
pgiles@allenbarneslaw.com
dnelson@allenbarneslaw.com

**Your Ballot may not be counted if Debtors' counsel receives it after the Ballot Deadline.** If a Creditor casts more than one Ballot voting the same Claim before the Ballot Deadline, the last Ballot received before the Ballot Deadline will be deemed to reflect the Creditor's intent and thus will supersede any prior Ballot.

**1.5** **<u>Confirmation of the Plan</u>**

For the Plan to be effective, it must be "confirmed," which means that the Court has approved the Plan. For the Plan to be confirmed, votes by each Impaired Class representing at least two-thirds (2/3) in amount of the Allowed Claims voting in each Class and greater than one-half (1/2) in number of individual Creditors voting in each Class must be submitted in favor of acceptance of the Plan. If the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan.

When confirmed by the Bankruptcy Court, the Plan will bind all Claim holders, whether or not they are entitled to vote or did vote on the Plan, and whether or not they received or retained any distributions or Property under the Plan.

## ARTICLE 2

## THE DEBTORS

### 2.1     The Debtors

#### 2.1.1     Advanced Reimbursement Solutions, LLC

ARS is a medical claims billing company that specializes in handling out-of-network medical claims to insurance companies/payors ("Payors" or "payors") on behalf of various types of medical providers. ARS was formed in Delaware on January 9, 2015, and registered with the Arizona Corporation Commission on September 16, 2015. While it has had active clients in up to seventeen states, ARS's principal place of business is and has always been in Scottsdale, Arizona. Pantheon Global Holdings ("Pantheon") is ARS's (and ASD's) parent company.

Generally, ARS served as the exclusive out-of-network claims billing agent for its clients. ARS contracts with medical providers and healthcare facilities and submits all out-of-network medical claims on their behalf. Apart from merely submitting medical claims, ARS's services include, without limitation, communicating with payors regarding billed medical claims, providing patient intake services, and, at times, appealing payors' initial adjudications of medical claims. ARS sought not to bill government plans such as Medicare, Medicaid, Tri Care or other federally funded plans.

ARS does not directly receive payment from payors or patients. Instead, it receives payment from its provider customers. Ordinarily, the payor directly pays the provider. In more limited cases, the insurer may reimburse a patient directly. In such cases, ARS will attempt to collect the reimbursement from the patient on the provider's behalf. In either scenario, once ARS registers that the payor issued a payment on the claim, ARS invoices the provider for its fee. ARS calculates this fee based on a percentage of the payments received by its provider customers on the medical claims that ARS submitted.

Since its formation, ARS processed hundreds and thousands of medical claims on behalf of its clients. The types of claims processed by ARS include professional fees, supplies and durable medical equipment, facility fees, anesthesia, and other medical fees.

### 2.1.2  American Surgical Development, LLC

ASD is a marketing company that operated as a complement to ARS. ASD introduced providers to ASD-affiliated medical facilities and gave the option for external providers to refer their patients to ASD-affiliated medical facilities. Formed in Delaware on May 19, 2014 and registered with the Arizona Corporation Commission as a foreign limited liability company on January 5, 2015, ASD maintained its principal place of operations in Scottsdale, Arizona. ASD, like ARS, is a Pantheon subsidiary.

ASD received compensation equivalent to a percentage of the facility fees that it helped generate on behalf its affiliated medical facilities. ASD subcontracted with ARS to handle the billing of such claims to payors. ASD ceased all operations as of September 23, 2022, but continues to collect its pre-petition account receivables.

### 2.2  Incidents Leading to Bankruptcy Filing

The factors leading to the Debtors' bankruptcy filing include, without limitation, the litigations between the Debtors and both Aetna and United in separate proceedings (including the cost of counsel), concerns regarding the propriety of certain aspects of the Debtors' business practices, the substantial loss of customers by ARS and ASD, and circumstances relating to the Covid pandemic. There were also substantial transfers out of the Debtors to, and/or for the benefit of, individual and affiliate insiders that impacted cash available to fund operations.

Notwithstanding the Debtors' bankruptcy filing, both the Aetna litigation ("Aetna Litigation") and United litigation ("United Litigation") remain pending against non-debtor parties before the U.S. District Court for the District of Arizona, case nos. CV-19-

05395-PHX and CV-21-01302-PHX, respectively.

ARS initiated the Aetna Litigation on October 12, 2019, asserting claims against Aetna under the Employee Retirement Income Security Act of 1974 ("ERISA") and common law for alleged under-payment of benefits. After significant discovery, and upon motion by Aetna, the District Court determined that ARS lacked standing to prosecute its alleged claims against Aetna.

Aetna filed counterclaims against the Debtors under ERISA, common law, and other statutes, sought substantial damages, and named additional non-debtor parties as counterclaim defendants. The Debtors have denied Aetna's allegations against them. Certain of the Maldonado Parties who are counterclaim defendants in the Aetna Litigation have filed motions to dismiss Aetna's claims against them, which remain pending. As of the Petition Date, the Aetna Litigation remains ongoing as to third parties, though it is stayed as to the Debtors pursuant to 11 U.S.C. § 362(a).

United filed suit against ARS on July 26, 2021. United asserts many of the same claims alleged by Aetna and seeks similar recourse vis-à-vis substantial damages and other types of relief against ARS and multiple other parties. ARS did not assert claims against United. ARS denies the allegations made by United against it. As of the Petition Date, the United Litigation remains ongoing, though it is stayed as to the Debtors pursuant to 11 U.S.C. § 362(a).

In both the Aetna Litigation and the United Litigation (together, the "Creditor Litigation"), United and Aetna generally allege, without limitation, that the Debtors and certain providers engaged in fraudulent billing practices, and tortuously interfered with United and Aetna's contractual relationships with their in-network providers and their members. The Debtors deny these allegations.

Most if not all of the Debtors' revenue stream was attributable to fees earned in connection with billing medical claims to payors, including Aetna and United. Their

revenue stream has slowed down considerably since the Creditor Litigation began, including because of the factors set forth above, leading to the Debtors being unable to generate sufficient cashflow to fully cover ordinary course obligations in addition to their significant defense costs. Consequently, the Debtors could not continue funding a defense in the Creditor Litigation and recognized the high likelihood that Aetna and United would eventually obtain, at a minimum, a default judgment against them. At the same time many, but not all, of the Debtors' provider clients terminated their contracts with the Debtors. Because of the confluence of these factors, the Debtors believed there was no way their operations would remain viable.

### 2.3    Appointment of CRO and Retention of Counsel

Recognizing their operations were dwindling and the litigation expense surmounting, the Debtors retained Sonoran Capital Advisors ("Sonoran") and Bryan Perkinson for financial advisory services, and Allen Barnes & Jones, PLC ("AB&J") and Philip Giles as counsel to evaluate a prospective bankruptcy filing. On June 14, 2022, the Debtors' owners executed resolutions appointing Mr. Perkinson as the Debtors' Chief Restructuring Officer ("CRO"). Thereafter, the CRO, Sonoran, and AB&J determined the Debtors best option for an organized winddown was through a chapter 11 liquidation. With a resolution between Aetna and United providing the best chance for a successful and efficient liquidation, the Debtors, Aetna, United, and the Maldonado Parties began negotiating terms related to a prospective bankruptcy. *See* Section 2.4.1.

### 2.4    Developments during the Cases

On September 23, 2022 the Debtors filed their voluntary chapter 11 petitions with the U.S. Bankruptcy Court for the District of Arizona. Shortly thereafter, the Debtors

filed the following first day filings:[1]

- *Application to Employ Counsel for Debtors* and related filings, ECF Nos. 5-7;

- *Application to Employ Sonoran Capital Advisors, LLC as Chief Restructuring Officer* for the Debtors and related filings, ECF Nos. 9-11, 30;

- *Motion for Joint Administration et al.* and related filings, ECF Nos. 15-16;

- *Motion to Approve Procedures for Interim Compensation for Professionals* and related filings, ECF Nos. 17-18;

- *Motion to Assume Plan of Liquidation Support Agreement* ("PSA Motion") and related filings, ECF Nos. 19-20

- *Declaration of Bryan Perkinson*, ECF No. 21; and

- *Certificate of Service* for the aforementioned filings, ECF No. 22.

On September 26 and 27, 2022, the Court entered orders granting the Applications to Employ AB&J and Sonoran, ECF Nos. 27, 31. The Court also entered orders authorizing joint administration of the Debtors' cases and setting the last day to file proofs of claim as December 7, 2022, ECF Nos. 35-36.

On September 27, 2022, the Debtors and the U.S. Trustee lodged a stipulated order granting the Debtors' *Motion for Procedures for Interim Compensation for Professionals*, ECF No. 32.

On October 4, 2022, ASD filed a *Motion to Assume Thermotek's Proposal to Purchase Used Vascutherm 5 Units* and related filings, ECF Nos. 46-48. Through this motion, ASD sought to liquidate up to 150 fully depreciated Vascutherm 5 units

_____

[1] The Debtors did not seek traditional first day relief customary in a chapter 11 proceeding as such relief was unnecessary for this case, but for purposes of this discussion the initial motions and applications filed will generally be referred to as the "first day filings."

pursuant to an agreement it entered into pre-petition with Vascutherm.

### 2.4.1 Plan of Liquidation Support Agreement

Prior to the Petition Date, the Debtors entered into a *Plan of Liquidation Support Agreement* ("<u>PSA</u>") with Aetna, United, and the Maldonado Parties (defined more fully in the PSA). Through the PSA Motion, the Debtors seek to assume the PSA which provides, among other things, Aetna's and United's support of the Debtors' liquidation efforts and anticipated plan of liquidation, subject to certain requirements. Parties are encouraged to review the PSA Motion and PSA for additional information. A copy of the PSA is attached hereto as **Exhibit B**. On October 21, 2022, the Court entered an order approving the PSA Motion, ECF No. 69.

Pursuant to the PSA, the Debtors, Maldonado Parties, Aetna and United are to engage in good-faith mediation in an effort to resolve the Debtors' Causes of Action, and United and Aetna's own claims against Maldonado Parties. The parties subsequently scheduled a two-day mediation to occur on November 29-30, 2022, in front of the Honorable Judge Collins. Judge Collins has set a deadline of November 18, 2022, for related briefing.

### 2.5 Debtors' Liquidation

As previously discussed, due to the Creditor Litigation and substantial loss of revenue and clientele, the Debtors determined that an orderly winddown and liquidation would preserve the greatest value for Creditors. Recognizing the importance of a consensual winddown and plan confirmation, the Debtors undertook substantial efforts to resolve their disputes with Aetna and United through these proceedings. Fortunately, the Debtors have no secured creditors, so the Debtors and/or the Liquidating Trustee will be able to liquidate the Debtors' unencumbered Property for distribution to the Debtors' Unsecured Creditors. The Debtors believe a chapter 11 winddown will yield a substantially better return to Creditors than they would receive in chapter 7.

**ARTICLE 3**

**SUMMARY OF THE DEBTORS' CURRENT FINANCIAL CONDITION**

The Debtors' monthly operating reports filed in the Cases provide significant detail regarding the Debtors' financial condition during these Cases. The Debtors will continue to file monthly operating reports with the Bankruptcy Court until they confirm the Plan. Interested parties are encouraged to review the Schedules, Statements of Financial Affairs, and monthly operating reports for more details.

**ARTICLE 4**

**DESCRIPTION OF PROPERTY**

The Debtors' listed their assets and liabilities as of the Petition Date on their Schedules and Statements of Financial Affairs filed in their respective Cases. As discussed in Article 2 above, the Debtors are liquidating their assets. As of October 25, 2022, the Debtors currently hold free and clear cash in the total amount of approximately $141,783.47.

Besides cash, the Debtors' remaining assets fall into the following 7 categories:

| Asset | Estimated Value | Description |
|---|---|---|
| Accounts Receivable ("A/R") | $459,920 | A/R represents a good-faith estimate as to the aggregate amount of likely recoverable compensation due to the Debtors based on payments made by payors and received by the Debtors' clients.[2] |
| Work in Progress ("WIP") – Future A/R | $2,500,000-$6,000,000 | WIP represents the claims ARS has prepared or submitted for payment by the payor or is otherwise currently servicing. The value range provided is a good-faith estimate as to what ARS could potentially collect upon a payor's adjudication of these claims. |

---

[2] Per the PSA, the Debtors are not attempting to collect A/R from Aetna or United.

| | | |
|---|---|---|
| Insurance Proceeds | Up to $1,203,303 | The Debtors are additional insured under Pantheon's D&O and E&O insurance policies. Pantheon is the Debtors' parent company and the Debtors are listed as additional insureds. The Debtors paid at least $2,652,408.04 in legal fees and costs in connection with the Creditor Litigation, with $1,203,303.25 paid after the date in which the Debtors and Pantheon tendered the insurance claim. The Debtors are seeking reimbursement of these fees or as much of these fees as possible from the D&O and E&O policies. |
| Employee Retention Tax Credit ("ERTC") benefit | Up to $2,799,000 | After initial calculations, ARS believes it is entitled to an ERTC tax benefit. |
| Tax Refund | Unknown | The Debtors are in the process of determining whether they are entitled to a federal or state tax refund. The Debtors do not believe they owe or will owe any pre-petition tax liability. |
| Litigation Claims – Insiders | To be determined, but net positive | The Debtors hold chapter 5 claims and third-party claims against the purported Insiders identified in Exhibit C. The value stated herein does not account for potential defenses to such causes of action or the ability to collect on any judgment obtained. |
| Litigation Claims – Non-Insiders | $0-$145,082 subject to applicable defenses | The Debtors hold chapter 5 claims against the Non-Insiders identified in Exhibit C. The value stated herein does not account for potential defenses to such causes of action or the ability to collect on any judgment obtained. |

# ARTICLE 5

## POST-CONFIRMATION CONTROL

On the Effective Date, the Debtors shall cease to exist and the Debtors' remaining Property interests shall be assigned to and vested in the Liquidating Trust subject to the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall continue the liquidation of the Debtors' Property under terms of the Liquidating Trust Agreement attached to the Plan as Exhibit 1. The Liquidating Trust Agreement establishes a Liquidating Trust Advisory Board, including Aetna, United, and a third, non-Insider creditor, to oversee the Liquidating Trustee's operations and approve any transaction involving assets or claims equal to or over $100,000, as well as the investment of any Liquidating Trust Assets. The Liquidating Trust Advisory Board will also oversee and approve compensation of the Liquidating Trustee, and the retention and payment any other professionals employed by the Liquidating Trust. However, the Liquidating Trustee enjoys discretion regarding general management and liquidation of the trust assets pursuant to the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall submit quarterly reports to the Liquidating Trust Advisory Board regarding the status of liquidation and any other pertinent administrative matters.

# ARTICLE 6

## SUMMARY OF THE PLAN

This section contains a brief summary of the Plan, and it is qualified in its entirety by reference to the Plan, which accompanies this Disclosure Statement. This Plan is a liquidating chapter 11 plan and provides the Debtors and then the Liquidating Trustee will liquidate all assets for the benefit of creditors. **THE PLAN CONTROLS THE RELATIONSHIP BETWEEN THE DEBTORS AND CREDITORS. YOU SHOULD READ THE PLAN IN ITS ENTIRETY PRIOR TO CASTING YOUR BALLOT.**

### 6.1     **Allowed Administrative Claims**

Pursuant to Code § 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. These Claims include, without limitation, post-petition tax Claims, Professional Fees, and any fees due and payable to the United States Trustee. Applications for approval of Administrative Claims must be filed with the Court by the Final Bar Date, and copies must be served upon the Debtors and the Liquidating Trustee, unless exempted by applicable law. Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim by the Final Bar Date shall be deemed to have waived its Claim, and the Claim will be disallowed. Unless otherwise agreed, the holders of Allowed Administrative Claims shall be paid in full in cash on the earlier of (i) the Effective Date, provided that the Administrative Claim is Allowed as of such date, or (ii) ten (10) business days from the date that such Administrative Claim becomes Allowed.

### 6.2     **Class 1 – Allowed Priority Claims**

Class 1 consists of Allowed Claims entitled to priority pursuant to Code § 507(a), unless such Claim qualifies as an Administrative Claim. Unless such Claimant agrees to less favorable treatment, the Liquidating Trustee shall pay each Class 1 Claim in full in order of the priority structure set forth in Code § 507(a). Each Claim of equal or higher priority shall receive payment in full in cash before payment of any Claim entitled to lower priority. To the extent the Liquidating Trustee cannot pay each Claim entitled to equal priority in full at any given time, the Liquidating Trustee shall distribute a *pro rata* share of available funds to Claims of equal priority until the Liquidating Trustee has paid all Class 1 Claims. No prepayment penalty shall apply to the Class 1. Class 1 is not Impaired and deemed to accept the Plan.

### 6.3     **Class 2 – Allowed Unsecured Claims**

Class 2 consists of two subclasses comprising all Allowed Unsecured Claims.

After payment of or reservation for Administrative Claims and Class 1 Claims, the Liquidating Trustee shall distribute a *pro rata* share of all funds to all Class 2 Claimants in accordance with the Liquidating Trust Agreement and as provided herein. Payments shall be made in accordance with the Liquidating Trust Agreement, and all payments shall be made no later than the fifth-year anniversary of the Effective Date, unless the Liquidating Trustee obtains an order of this Court extending this deadline. Class 2 Claims shall not accrue interest. No prepayment penalty shall apply to Class 2. If a Class 2 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 2 Claim shall not receive payment, but the Liquidating Trustee shall establish a Disputed Claim Reserve for the funds necessary to make a distribution to the claimant if the Disputed Claim becomes Allowed in full in accordance with the Plan. Class 2 is Impaired and entitled to vote on the Plan.

### 6.3.1    Class 2.1 – Third-Party Payors

Class 2.1 is the TPP unsecured subclass (the "TPP Class") comprised of (i) the Allowed Claims of Aetna and United and (ii) any other TPPs that may timely file a proof of Claim, which Allowed Claims in (i) and (ii) shall not be subject to set-off, recoupment, reduction or counterclaims of any nature. TPPs that have timely filed proofs of claims shall have an Allowed Claim equal to the amount determined in accordance with the Formula. The Formula and calculated Allowed Claim Amount reflect a settlement and compromise as to such TPP's Claim against the Debtors. Any Allowed Claim amount calculated pursuant to the Formula shall be valid solely for purposes of this Plan and shall not be binding, or subject to res judicata or collateral estoppel, on any party in any other proceeding.

#### 6.3.1.1       Limitation on Source of Distributions

Holders of Allowed Claims in the TPP Class shall receive distributions from the Liquidating Trust Assets, other than proceeds of any Payor Receivables. The Debtors shall use any proceeds of Payor Receivables to pay the

Allowed Administrative Claims and Allowed Priority Claims. The Liquidating Trustee shall use any of the proceeds of Payor Receivables to pay the post-Effective Date expenses of the Liquidating Trust. To the extent that there are insufficient Liquidating Trust Assets to make a full *pro rata* distribution to the TPPs holding Allowed Claims given the foregoing restriction, then such holders shall receive as much of its/their *pro rata* distribution as possible using Liquidation Trust Assets other than Payor Receivables.

### 6.3.2   Class 2.2 – All Remaining Unsecured Creditors

Class 2.2 consists of all Allowed Unsecured Claims that are not entitled to classification in the TPP Class or any other Class of Claims ("Ramaining Unsecured Class"). Like the TPP Class, the Remaining Unsecured Class shall receive its *pro rata* share of distributions paid to the Allowed Class 2 Claims without the restriction provided in § 3.3.1.1, *supra.*

The Remaining Unsecured Class includes the Claim of the Small Business Administration ("SBA"), which is contingent due to the Debtors' pending applications for forgiveness of the debt underpinning its Claim. Any and all distributions intended for the SBA's Claim shall be held in the Disputed Claim Reserve pending complete adjudication of the Debtors' applications for loan forgiveness. In the event the underlying debt is forgiven, the SBA shall hold no Claim and not receive any distribution from the Liquidating Trustee. Conversely, if the SBA debt is not forgiven or only partially forgiven, payments to the SBA on account of its Allowed Claim, as may be reduced to reflect any forgiven amounts, will be remitted in accordance with the Plan and Liquidating Trust Agreement.

### 6.4   Class 3 – TPP Subordinated Class

Class 3 is comprised of the holders of Allowed Claims in the TPP Class. Any TPP holding an Allowed Claim in the TPP Class shall calculate its Allowed

subordinated Claim amount in accordance with the SC-Formula.  The SC-Formula and calculated claim amount reflect a settlement and compromise as to such TPP's claim against the Debtors. Any Allowed Claim amount calculated pursuant to the SC-Formula shall be valid solely for purposes of this Plan and shall not be binding, or subject to res judicata or collateral estoppel, on any party in any other proceeding.

After payment of or reservation for payment in full of the Allowed Administrative Claims, Allowed Class 1 Claims, and Allowed Class 2 Claims, the Liquidating Trustee shall distribute a *pro rata* share of all funds to all Class 3 Claimants with an Allowed subordinated Claim in accordance with the Liquidating Trust Agreement and as provided herein.  Payments shall be made in accordance with the Liquidating Trust Agreement, and all payments shall be made no later than the fifth-year anniversary of the Effective Date, unless the Liquidating Trustee obtains an order of this Court extending this deadline.  Class 3 Claims shall not accrue interest.  No prepayment penalty shall apply to Class 3.  If a Class 3 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 3 Claim shall not receive payment, but, to the extent applicable given its subordinated status, the Liquidating Trustee shall establish a Disputed Claim Reserve for the funds necessary to make a distribution to the claimant if the Disputed Class 3 Claim becomes Allowed in full in accordance with Section the Plan.  Class 3 is Impaired and entitled to vote on the Plan.

**6.5**     **Class 4 – Equity Interests**

There shall be no distribution on account of Class 4 Equity Interests.  Upon the Effective Date, the Equity Interests will be deemed cancelled and will cease to exist. Holders of Equity Interests will receive no distribution under the Plan and therefore are deemed to have rejected the Plan.  Accordingly, Holders of Equity Interests are not entitled to vote.

/ / /

/ / /

# ARTICLE 7

## MEANS TO IMPLEMENT PLAN

The Plan constitutes a motion for substantive consolidation of the Debtors' liabilities and Property only for purposes of Plan voting and distributions to holders of Allowed Claims. Confirmation of the Plan shall constitute the Bankruptcy Court's order granting of that motion. Substantive consolidation is appropriate where: (1) creditors dealt with the entities as a single economic unit; or (2) the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 766 (9th Cir. 2000). Since their inception, the Debtors have jointly operated ARS and ASD nearly as a unified business and operation in their transactions with most of their Creditors. The Debtors have the same primary Creditors, and their assets truly belong to the unified operating business. Moreover, the Debtors' affairs are so entangled that they shared the same operating expenses and employees Accordingly, substantive consolidation as provided in the Plan is appropriate.

Substantively consolidating the Debtors' liabilities and Property on the Effective Date: (a) consolidates the Cases into the Lead Case as a single case; (b) consolidates all Estates' Property into the Consolidated Estate only for purposes of Plan voting and distributions to holders of Allowed Claims under the Plan; (c) converts all Claims against any of the Estates into Claims against the Consolidated Estate such that any proof of Claim filed against one or more of the Debtors is deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor are deemed expunged; (d) disallows, discharges, and eliminates all Intercompany Claims and precludes any distributions under the Plan on account of Intercompany Claims; (e) eliminates and discharges all guarantees by one Debtor of the obligations of any other Debtor and precludes any distributions under the Plan on account of Claims based on such guarantees; and (f) for

purposes of determining the availability of the right of setoff under Code § 553, treats all Debtors as one consolidated entity so that, subject to the other provisions of Code § 553, debts due to any Debtor may be setoff against the debts of any other Debtor. Because there are no secured creditors, there is no concern of substantive consolidation in any way impacting a lien. Substantive consolidation under the Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in the Plan does not affect any applicable date for purposes of pursuing Causes of Action, if any. **SUBSTANTIVE CONSOLIDATION UNDER THE PLAN IS STRICTLY FOR THE PURPOSES DESCRIBED IN THE PLAN AND DOES NOT EFFECT A MERGER OR OTHER CONSOLIDATION OF THE DEBTORS.**

### 7.1 Assumption or Rejection of Executory Contracts

Unless expressly assumed in the Plan, the Debtors will reject all of their Executory Contracts as of the Confirmation Date. The Debtors may assume and assign to the Liquidating Trust any Executory Contract contained in the "Assumed Executory Contract List" that is included in the Plan Supplement; provided, however, no Executory Contracts will be assumed if there is a default requiring cure under Bankruptcy Code § 365(b)

### 7.2 The Liquidating Trust

The Plan will be funded from the Liquidating Trust Assets, including among other things, the Debtors' cash, accounts receivable, Causes of Action under Chapter 5 of the Bankruptcy Code, insurance proceeds, and proceeds from the Employee Retention Tax Credit benefit. To the extent the Debtors are entitled to a federal or state tax refund, any amounts refunded shall also be included in the Liquidating Trust Assets.

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall constitute a motion pursuant to Code §§ 105, 363, and

365 to effect such. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets.

The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Except to the extent definitive guidance from the IRS or a court of competent jurisdiction, including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets as soon as possible after the Effective Date. The valuation shall be used consistently by all parties, including, without limitation, the Liquidating Trustee, on behalf of the Debtors, the Liquidating Trust, the Beneficiaries, and the Liquidating Trust Advisory Board, for all federal income tax purposes.

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

/ / /

/ / /

### 7.3 Appointment of Liquidating Trust Advisory Board

On or prior to the Effective Date, the Liquidating Trustee shall appoint the Liquidating Trust Advisory Board. The Liquidating Trust Advisory Board shall include three members: Aetna, United, and a non-insider Creditor of the Debtors reasonably acceptable to the Aetna and United. Upon the death, resignation, or refusal to serve of a member of the Liquidating Trust Advisory Board, the Liquidating Trustee may appoint a replacement member, which shall be the next willing person with the largest allowed claim in the Class 2 who is not an insider or Maldonado Party. All members of the Liquidating Trust Advisory Board shall owe fiduciary duties to the Beneficiaries as a whole consistent with the duties owed by an official committee of unsecured under Code § 1102.

### 7.4 Appointment of the Liquidating Trustee

The Liquidating Trustee shall be appointed pursuant to the Confirmation Order. The Liquidating Trustee shall be either: (i) Bryan Perkinson (Sonoran Capital), if agreed by Aetna and United, or (ii), if not agreed by Aetna and United, Marshall Glade and Wayne Weitz (B. Riley Advisory Services); Rick Arrowsmith (FTI Consulting); or Coles Hayes (Hayes Law). From and after the Effective Date, the Liquidating Trustee's professionals may be retained by the Liquidating Trustee upon approval of the Liquidating Trust Advisory Board without further need for approval by the Bankruptcy Court. All fees and expenses incurred by the Liquidating Trustee and any retained professionals following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement.

The Liquidating Trust Agreement provides that the Liquidating Trustee will consult with the Liquidating Trust Advisory regarding certain transactions, but vests ultimate decision-making authority in the Liquidating Trustee. The Liquidating Trustee shall be deemed the Estates' representative in accordance with Code § 1123 and shall have all

the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Code §§ 704 and 1106 and Rule 2004 to act on behalf of the Liquidating Trust.  The Liquidating Trustee will have the right to, pursuant to the terms of the Liquidating Trust Agreement: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon, or compromise any Causes of Action; (4) make distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to Claims (including Administrative Claims) and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and their Estates with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Chapter 11 Professionals in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

**7.5**    **Preservation of Rights of Action**

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Code § 1123(b)(3), any Causes of Action that the Debtors or their Estates may hold against any party shall vest upon the Effective Date in the Liquidating Trust. Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action, in accordance with the terms of the Liquidating

Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Any recoveries therefrom shall remain the sole property of the Liquidating Trust for the Beneficiaries of the Liquidating Trust. Holders of Claims shall have no right to any such recovery.

Unless a Cause of Action against a holder of a Claim or other party is expressly waived, relinquished, released, compromised, or settled in the Plan or any final Order, including the Confirmation Order, the Debtors and the Liquidating Trustee expressly reserve such retained Causes of Action for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action not specifically identified or described herein or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel, or laches shall apply to any Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order, including the Confirmation Order. In addition, the Liquidating Trustee expressly reserves the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any party, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

The Debtors have identified potentially liable parties in **Exhibit C** attached hereto. With respect to the Persons identified in Exhibit C, excluding third-party claims of non-Debtors as may be applicable, the Debtors hold or may hold Causes of Action against such individuals and entities for chapter 5 causes of action, including, but not

limited to, preferential transfers and fraudulent transfers, as well as breach of fiduciary duties and wrongful distributions, as applicable, professional negligence claims, as applicable, subject to any defenses such individuals and entities may assert. Regardless of the disclosure of potentially liable parties, any parties to which the Debtors have incurred an obligation, whether on account of services, the purchase or sale of goods, or otherwise, or has received services from the Debtors or a transfer of money or Property of the Debtors, or has transacted business with the Debtors, or leased equipment or Property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of a Cause of Action after the Effective Date, regardless of whether: (i) such party has filed a Proof of Claim against the Debtors in these Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such party's Proof of Claim; (iii) any such party's Claim was included in the Debtors' schedules or other disclosures; (iv) the Debtors or Liquidating Trustee have objected to any such party's scheduled Claim; or (v) any such party's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated.

## ARTICLE 8

## LIQUIDATION ANALYSIS

As a condition to confirmation, Code § 1129(a)(7) requires the Plan to provide that each Creditor either accept the Plan or receive as much under the Plan as such Creditor would receive in a hypothetical Chapter 7 liquidation. The Debtors' Property and liabilities are listed in their schedules and Statements of Financial Affairs filed in their respective Cases, and the Debtors have prepared a Liquidation Analysis attached hereto as **Exhibit D**. The Plan proposes a complete liquidation of the Debtors' remaining Property. An orderly liquidation under the Plan allows the Debtors and the Liquidating Trustee to preserve the maximum value of the Debtors' Property for

distribution to Creditors.   As previously mentioned, the Property is primarily comprised of the Debtors' A/R, WIP, anticipated insurance proceeds, anticipated ERTC credit, and litigation claims against insider and non-insider parties.  While a Chapter 7 Trustee can likely collect the A/R and pursue the Employee Retention Tax Credit, a Chapter 7 Trustee will not operate the Debtors to complete processing the WIP. Additionally, the Debtors believe a Chapter 7 Trustee's pursuit of litigation claims will cost more in legal expenses and yield less than the Debtors (or eventually the Liquidating Trustee) could obtain through this chapter 11, especially in light of the mediation requirement of the PSA.  More importantly, the Plan avoids the additional fees and costs that would be incurred by appointment of a Chapter 7 trustee unfamiliar with the Debtors.

The CRO and Chapter 11 Professionals expect to efficiently liquidate assets and adjudicate claims in the months ahead and ensure a smooth transition of the Debtors' unencumbered assets into the Liquidating Trust for the benefit of Creditors.   Going forward, both the Liquidating Trustee and a Chapter 7 Trustee would incur professional fees pursuing claims administration and avoidance actions.   However, conversion to Chapter 7 triggers significant administrative costs that are avoidable should the CRO transition to the Liquidating Trustee position.   As a result, the Plan provides for a distribution to Creditors that exceeds a hypothetical Chapter 7 liquidation because asset values will be maximized and claims administration will be streamlined through the Liquidating Trust. *See* Exhibit D.

## ARTICLE 9

## TAX ISSUES

Pursuant to Code § 1125(a)(1), the Debtors must provide a discussion of the potential material tax consequences of the Plan to the Debtors and any successors to the Debtors, and a hypothetical investor typical of the holders of Claims or interests in the Cases, that would enable such a hypothetical investor of the relevant Class to make an

informed judgment about the Plan. The Debtors need not include such information about any other possible or proposed plan. In determining whether the Disclosure Statement provides "adequate information" as required by Code § 1125, the Court must consider the complexity of the case, the benefit of additional information to Creditors and other parties in interest, and the cost of providing additional information.

The following discussion summarizes certain considerations that may affect the anticipated federal income tax consequences of the Plan's implementation to Creditors and to the Debtors. It does not address all federal income tax consequences of the Plan nor does it address the state or local income tax or other state or local tax consequences of the Plan's implementation to Creditors or to the Debtors.

This description of the federal income tax consequences of implementing the Plan is based on the Debtors' interpretation of the applicable provisions of the Internal Revenue Code, the regulations promulgated thereunder, and other relevant authority. The Debtors' interpretation, however, is not binding on the Internal Revenue Service or any court. The Debtors have not obtained, nor do they intend to obtain, a private letter ruling from the Internal Revenue Service, nor have the Debtors obtained an opinion of counsel with respect to any of these matters. The discussion below is general in nature and is not directed to the specific tax situation of any particular interested taxpayer. **For these reasons, all Creditors should consult with their own tax advisors as to the tax consequences of implementation of the Plan to them under applicable federal, state, and local tax laws.**

### 9.1 Tax Consequences to the Debtors

In general, the amount of any debt that is partially or totally discharged pursuant to a bankruptcy case is excluded from gross income. Generally, the amount of discharged debt income that is excluded from gross income must be applied to reduce tax attributes. The Debtors' tax attributes are reduced in the following order: (1) net operating losses; (2) general business credits; (3) minimum tax credit; (4) net capital loss and net capital loss

carryovers; (5) reduction in tax basis of the Debtors' property (both depreciable and non-depreciable); (6) any passive activity loss and credit carryovers from the taxable year of the discharge; and (7) foreign tax credit carryovers. The Debtors may elect to apply the debt discharge exclusion first to depreciable property and thereafter to the tax attributes in the above-prescribed order.

### 9.2    Tax Consequences to Secured and Unsecured Creditors

Both Secured and Unsecured Creditors may be required to report income or be entitled to a deduction as a result of the implementation of the Plan. The exact tax treatment depends on, among other things, each Claimant's method of accounting, the nature of each Claimant's Claim, and whether and to what extent such Claimant has taken a bad debt deduction in prior taxable years with respect to the particular debt owed to it by the Debtor. **Each Claim holder is urged to consult with his, her, or its own tax advisor regarding the particular tax consequences of the treatment of his, her, or its Claim under the Plan.**

### 9.3    Tax Consequences to the Equity Interest holders

Each Equity Interest holder is urged to consult with his, her, or its own tax advisor regarding the particular tax consequences of the treatment of his, her, or its interest under the Plan.

## ARTICLE 10

## BALLOTING INSTRUCTIONS

Creditors in Classes 2 and 3 are entitled to vote to accept or reject the Plan. GENERALLY, THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS. However, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one

Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan, discussed in Section 12.1 below.

## ARTICLE 11

## MODIFICATION OF PLAN

The Proponents reserve the right to modify the Plan in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

### 11.1 **Pre-Confirmation**

In accordance with Code § 1127(a), the Proponents may propose the modification of the Plan in writing at any time before confirmation, provided that the Plan, as thus modified, meets the requirements of Code §§ 1122 and 1123, and the Proponents comply with Code § 1125.

### 11.2 **Post-Confirmation**

In accordance with Code § 1127(b), the Plan also may be modified at any time after confirmation and before its substantial consummation, provided that: a) the Plan as modified meets the requirements of Code §§ 1122 and 1123; b) the circumstances then existing justify such modification; and c) the Court confirms the Plan as thus modified under Code § 1129.

### 11.3 **Objections**

Any holder of a Claim or Equity Interest that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Court for doing so, such holder changes its previous acceptance or rejection.

### 11.4 **Effect**

Every modification of the Plan will supersede the previous version of the Plan as and when each modification is effective. When superseded, the previous version of the

Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Proponents or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

Notwithstanding anything to the contrary contained herein, the Proponents shall not be bound by estoppel, or the principles of *res judicata* or collateral estoppel, with respect to any term or provision contained herein in the event the Plan is not confirmed upon the terms and provisions set forth herein.

### 11.5   Default

If the Liquidating Trustee is unable to perform in accordance with the Plan, then it will be in default.  Any Creditor may seek to enforce the Plan by filing a motion seeking such enforcement in the Bankruptcy Court.  <u>Before doing so, the Creditor must provide notice to the Liquidating Trustee specifying the nature of the alleged default and a 30-day period to cure the default.  Any notice must be in writing and sent via certified mail to the Liquidating Trustee and its counsel at the addresses that will be filed with the Court when the Liquidating Trustee is appointed.</u>  The Liquidating Trustee shall provide prompt notice to the Liquidating Trust Advisory Board of the receipt of any notice of an alleged default.

## ARTICLE 12

## CONFIRMATION, RISKS & RECOMMENDATION

### 12.1   Fair and Equitable Test

To the extent such requirements are applicable based upon the votes of Creditors, the Plan satisfies the fair and equitable requirements of Code § 1129(b).  There are no Secured Claims.  With respect to Unsecured Claims, the Plan provides payment to all Creditors based on the priority scheme set forth in the Bankruptcy Code.  Specifically, the Plan provides payment of Administrative and Priority Claims in the order provided in Code § 507(a) prior to payment of any General Unsecured Class.  In addition, the Plan provides

that any Equity Interest holder will not receive a distribution on account of its Equity Interest unless and until all Allowed Claims have been paid in full.

**12.2    Recommendation of the Proponents**

The Debtors have worked closely with its major Creditors to structure the Plan to maximize distribution to Creditors in a liquidation while minimizing unnecessary cost. After thorough review of the Plan and consideration of alternatives, the Debtors believe the Plan promotes the best interests of Unsecured Creditors as a whole. The Proponents believe that an alternative plan or Chapter 7 liquidation would be disadvantageous to Creditors and result in lower recoveries for Creditors, particularly those holding Unsecured Claims. For these reasons, the Proponents respectfully recommend that all Creditors vote in favor of the Plan.

RESPECTFULLY SUBMITTED this 25th day of October, 2022.

ADVANCED REIMBURSEMENT SOLUTIONS, LLC
AMERICAN SURGICAL  DEVELOPMENT, LLC


*/s/ Bryan Perkinson*
Bryan Perkinson, Chief Restructuring Officer

**APPROVED AS TO FORM AND CONTENT:**

**ALLEN BARNES & JONES, PLC**

By: */s/ PJG #30340*
Philip J. Giles
David B. Nelson
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
*Attorneys for Debtors*

# Exhibit A

Philip J. Giles, State Bar #30340
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: pgiles@allenbarneslaw.com
          dnelson@allenbarneslaw.com

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 |
| ADVANCED REIMBURSEMENT SOLUTIONS, LLC, et. al., | Case No. 2:22-bk-06372-BKM |
| Debtors. | (Jointly Administered) |
| This filing applies to: | Case No. 2:22-bk-06372-BKM<br>Case No. 2:22-bk-06373-BKM |
| ☒ ALL DEBTORS<br>☐ ADVANCED REIMBURSEMENT SOLUTIONS, LLC;<br>☐ AMERICAN SURGICAL DEVELOPMENT, LLC | **DEBTORS' PLAN OF LIQUIDATION DATED OCTOBER 25, 2022** |

Advanced Reimbursement Solutions, LLC and American Surgical Development, LLC (collectively, the "Debtors" or "Proponents") in the above-captioned Chapter 11 cases (collectively, the "Cases"), hereby submit this *Plan of Liquidation Dated October 25, 2022* ("Plan"). In addition to reviewing this Plan, all Creditors and interested parties are encouraged to consult the contemporaneously filed *Disclosure Statement Dated October 25, 2022* ("Disclosure Statement") before voting to accept or reject this Plan. **NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

{00379804}

# TABLE OF CONTENTS

**ARTICLE 1 – DEFINITIONS**     **7**

| | | |
|---|---|---|
| **1.1** | **AB&J** | **7** |
| **1.2** | **Administrative Claim** | **7** |
| **1.3** | **Aetna** | **8** |
| **1.4** | **Allowed Claim** | **8** |
| **1.5** | **ARS** | **8** |
| **1.6** | **ASD** | **8** |
| **1.7** | **Assumed Executory Contract List** | **8** |
| **1.8** | **Ballot** | **8** |
| **1.9** | **Bankruptcy Code or Code** | **8** |
| **1.10** | **Bankruptcy Court or Court** | **9** |
| **1.11** | **Bankruptcy Rules or Rules** | **9** |
| **1.12** | **Beneficiaries** | **9** |
| **1.13** | **Business Day** | **9** |
| **1.14** | **Causes of Action** | **9** |
| **1.15** | **Chapter 11 Cases or Cases** | **10** |
| **1.16** | **Chapter 11 Professionals** | **10** |
| **1.17** | **Claim** | **10** |
| **1.18** | **Claimant** | **10** |
| **1.19** | **Class** | **10** |
| **1.20** | **Confirmation Date** | **10** |
| **1.21** | **Confirmation Hearing** | **10** |
| **1.22** | **Confirmation Order** | **11** |
| **1.23** | **Consolidated Estate** | **11** |
| **1.24** | **Creditor** | **11** |
| **1.25** | **Creditor Receivables** | **11** |
| **1.26** | **Debtor(s)** | **11** |

| | | |
|---|---|---:|
| 1.27 | **Disclosure Statement** | **11** |
| 1.28 | **Disputed Claim** | **11** |
| 1.29 | **Disputed Claim Reserve** | **11** |
| 1.30 | **Effective Date** | **12** |
| 1.31 | **Employee Retention Tax Credit** | **12** |
| 1.32 | **Estates** | **12** |
| 1.33 | **Executory Contract** | **12** |
| 1.34 | **Equity Interests** | **12** |
| 1.35 | **Final Bar Date** | **12** |
| 1.36 | **Final Decree** | **12** |
| 1.37 | **Final Order** | **13** |
| 1.38 | **Formula** | **13** |
| 1.39 | **Impaired** | **13** |
| 1.40 | **Insider** | **13** |
| 1.41 | **Initial Bar Date** | **13** |
| 1.42 | **Initial Payment Date** | **13** |
| 1.43 | **Intercompany Claims** | **13** |
| 1.44 | **Lead Case** | **14** |
| 1.45 | **Liquidating Trust** | **14** |
| 1.46 | **Liquidating Trust Agreement** | **14** |
| 1.47 | **Liquidating Trust Advisory Board** | **14** |
| 1.48 | **Liquidating Trust Assets** | **14** |
| 1.49 | **Liquidating Trustee** | **14** |
| 1.50 | **Maldonado Parties** | **15** |
| 1.51 | **Payor Receivables** | **15** |
| 1.52 | **Person** | **15** |
| 1.53 | **Petition Date** | **15** |
| 1.54 | **Plan** | **15** |

| 1.55 | Plan Supplement | 15 |
| 1.56 | Priority Claim | 16 |
| 1.57 | Professional Fees | 16 |
| 1.58 | Property | 16 |
| 1.59 | Proponents | 16 |
| 1.60 | SBA | 16 |
| 1.61 | SC-Formula | 16 |
| 1.62 | Secured Claim | 16 |
| 1.63 | Secured Creditor | 17 |
| 1.64 | Subordinated Claim | 17 |
| 1.65 | TPP | 17 |
| 1.66 | TPP Class | 17 |
| 1.67 | United | 17 |
| 1.68 | Unsecured Claim | 17 |
| 1.69 | Unsecured Creditor | 17 |
| **ARTICLE 2 – IMPORTANT DATES & DEADLINES** | | **18** |
| 2.1 | Initial Bar Date | 18 |
| 2.2 | Final Bar Date | 18 |
| 2.3 | Claims Objection Deadline | 19 |
| 2.4 | Assumption or Rejection of Executory Contracts | 19 |
| **ARTICLE 3 - CLASSIFICATION AND TREATMENT OF CLAIMS** | | **19** |
| 3.1 | Allowed Administrative Claims | 20 |
| 3.2 | Class 1 – Allowed Priority Claims | 20 |
| 3.3 | Class 2 –Allowed Unsecured Claims | 20 |
| 3.4 | Class 3 – TPP Subordinated Class | 23 |
| 3.5 | Class 4 – Equity Interests | 23 |
| **ARTICLE 4 - PLAN IMPLEMENTATION** | | **24** |
| 4.1 | The Liquidating Trust | 25 |

| | | |
|---|---|---|
| **4.2** | **Appointment of Liquidating Trust Advisory Board** | **26** |
| **4.3** | **Appointment of the Liquidating Trustee** | **27** |
| **4.4** | **Cash Accounts** | **28** |
| **4.5** | **Litigation (Causes of Action)** | **28** |
| **4.6** | **Distribution Procedures** | **29** |
| **4.7** | **Withholding Taxes** | **30** |
| **4.8** | **Dissolution and Winding-Up of Debtors** | **30** |
| **4.9** | **Full and Final Satisfaction** | **30** |
| **4.10** | **Cessation of ARS Operations** | **31** |
| **4.11** | **Aetna and United Receivables** | **31** |
| **ARTICLE 6 - BINDING EFFECT OF PLAN** | | **32** |
| **ARTICLE 7 - EFFECT OF CONFIRMATION** | | **32** |
| **ARTICLE 8 - MODIFICATION OF PLAN** | | **32** |
| **8.1** | **Pre-Confirmation** | **32** |
| **8.2** | **Post-Confirmation** | **32** |
| **8.3** | **Effect of Modification** | **33** |
| **ARTICLE 9 - RETENTION OF JURISDICTION** | | **33** |
| **ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS** | | **34** |
| **10.1** | **Preservation of Debtors' Claims, Demands, and Causes of Action** | **34** |
| **10.2** | **Procedure for Determination of Claims** | **36** |
| **10.2.1 Disputed Claims** | | **37** |
| **10.2.2 Contingent and Unliquidated Claims** | | **38** |
| **10.2.3 Reserve Provisions for Disputed Claims** | | **39** |
| **ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS** | | **40** |
| **11.1** | **Distributions** | **40** |
| **11.2** | **Date of Distributions** | **40** |
| **11.3** | **Delivery of Distributions** | **40** |
| **11.4** | **Means of Payment** | **41** |

| | | |
|---|---|---|
| **11.5** | **Rounding** | **42** |
| **11.6** | **De Minimis Cash Distributions** | **42** |
| **11.7** | **Setoff** | **42** |
| **ARTICLE 12 - GENERAL PROVISIONS** | | **42** |
| **12.1** | **Extension of Dates** | **42** |
| **12.2** | **Notices** | **43** |
| **12.3** | **Default** | **43** |
| **12.4** | **Closure of the Cases** | **43** |
| **12.5** | **Effect of Appeal** | **43** |
| **12.6** | **Exculpation and Limitation of Liability** | **43** |
| **12.7** | **General Injunction** | **44** |
| **12.8** | **Interest** | **45** |
| **12.9** | **Additional Assurances** | **45** |
| **12.10** | **Confirmation by Non-Acceptance Method** | **45** |
| **12.11** | **Successors and Assigns** | **45** |
| **12.12** | **Withdrawal of Plan** | **46** |
| **12.13** | **Severability and Reformation** | **46** |
| **12.14** | **Prohibition Against Prepayment Penalties** | **46** |
| **12.15** | **Payment of Statutory Fees and Filing of Quarterly Reports** | **46** |
| **12.16** | **Governing Law** | **47** |
| **12.17** | **Special Tax Issues** | **47** |
| **12.18** | **Conflicts Between Plan and Confirmation Order** | **47** |

# ARTICLE 1 – DEFINITIONS

The following terms shall have the meanings specified below when used in this Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, the feminine, and the neutral. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, schedule to, or exhibit to the Plan. The headings in the Plan are for convenience only and shall not limit or otherwise affect the provisions of the Plan. The rules of construction contained in Code § 102 shall apply to the construction of the Plan, and unless specifically modified herein, terms that are defined by the Bankruptcy Code shall have the same meanings defined by the Code. All terms not specifically defined by this Plan shall have the meanings designated in the Bankruptcy Code, or, if not defined therein, their ordinary meanings. These definitions are a substantial and operative part of the Plan.

## 1.1 AB&J

This term means the law firm of Allen Barnes & Jones, PLC, the Debtors' Court approved counsel.

## 1.2 Administrative Claim

This term means every cost or expense of administration of the Cases allowed under Code § 503(b) and referred to in Code § 507(a)(1), including, without limitation: a) any actual and necessary expense of preserving the Estates as approved by the Bankruptcy Court; b) all Professional Fees; and c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

/ / /

**1.3   Aetna**

This term shall collectively refer to The Aetna Life Insurance Company, Aetna Inc., and Aetna Health Inc.

**1.4   Allowed Claim**

This term means every Claim: (a) (i) as to which a proof of such Claim has been timely filed pursuant to Sections 2.1 or 2.2 below, or (ii) which the Debtors have listed in their Schedules (including any amendments thereto) as liquidated in amount, not contingent, and undisputed; and in either event:  (b) (i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to which the order allowing such Claim has become a Final Order.  The term "Allowed Claim" may be used throughout the Plan with each of the various Claims or Classes of Claims (*e.g.*, "Allowed Administrative Claims" or "Allowed Secured Claims") to signify that such Claims are, will be, or must be Allowed Claims to qualify for certain treatment under the Plan.

**1.5   ARS**

This term means Advanced Reimbursement Solutions, LLC.

**1.6   ASD**

This term means American Surgical Development, LLC.

**1.7   Assumed Executory Contract List**

This term means a list of executory contracts that will be assumed by the Debtor and assigned to the Liquidating Trust, which will be included in the Plan Supplement.

**1.8   Ballot**

This term means the ballot for accepting or rejecting the Plan, which will be distributed to Claimants in Classes that are Impaired and entitled to vote on this Plan.

**1.9   Bankruptcy Code or Code**

These terms mean Title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et seq.</u>, as

now existing or hereafter amended during the Cases.

### 1.10   **Bankruptcy Court or Court**

These terms mean the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Cases, including the United States District for the District of Arizona to the extent that the reference of all or part of the Cases is withdrawn.

### 1.11   **Bankruptcy Rules or Rules**

This term means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Cases.

### 1.12   **Beneficiaries**

This term means holders of Allowed Class 1, Class 2, and Class 3 Claims entitled to receive a distribution from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

### 1.13   **Business Day**

This term means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

### 1.14   **Causes of Action**

This term means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff or recoupment, third-party claims, counterclaims, cross claims, interests of the Estates, Debtors, and/or the Liquidating Trust, as applicable, including without limitation, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Code §§ 544, 545, 547, 548, 549(a), and 550; (ii) for the turnover of property to the Estates or the Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs

to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtors; (v) equitable subordination; (vi) actions against Creditors, Insiders, and/or the Maldonado Parties; and (vii) any and all state and common-law claims for breach of fiduciary duty against the Debtors' current or former directors, officers, managers, or members, based in law or equity, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

**1.15 <u>Chapter 11 Cases or Cases</u>**

This term means the Debtors' collective jointly administered Chapter 11 bankruptcy cases: Case Nos. 2:22-bk-06372-BKM and 2:22-bk-06373-BKM.

**1.16 <u>Chapter 11 Professionals</u>**

This term means all professionals employed by the Estates under Code § 327.

**1.17 <u>Claim</u>**

This term means "claim" as defined in Code § 101(5).

**1.18 <u>Claimant</u>**

This term means the holder of a Claim.

**1.19 <u>Class</u>**

This term means each of the categories of classified Claims described in Article 3 of the Plan.

**1.20 <u>Confirmation Date</u>**

This term means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.21 <u>Confirmation Hearing</u>**

This term means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Code § 1128, including any adjournment or continuation of that hearing from time to time.

### 1.22 Confirmation Order

This term means the Bankruptcy Court's order confirming the Plan pursuant to Code § 1129.

### 1.23 Consolidated Estate

This term means the estate created under Article 4 of the Plan, only for the purposes of voting and distributions to holders of Allowed Claims under the Plan, by consolidating the Estates.

### 1.24 Creditor

This term means "creditor" as defined in Code § 101(10).

### 1.25 Creditor Receivables

This term has the meaning ascribed to it in Section 4.12 hereof.

### 1.26 Debtor(s)

This term means collectively: Advanced Reimbursement Solutions, LLC and American Surgical Development, LLC.

### 1.27 Disclosure Statement

This term means the *Debtors' Disclosure Statement Dated October 25, 2022* in its present form or as it may be altered, amended, supplemented, or modified.

### 1.28 Disputed Claim

This term means every Claim: a) that is scheduled by the Debtors as disputed, contingent, or unliquidated; or b) that is not an Allowed Claim. Where performance is to be rendered under the Plan to any Creditor in respect to a Disputed Claim, such performance shall not be due (notwithstanding the occurrence of the Effective Date for all other purposes and legal effects) unless and until such Disputed Claim becomes, wholly or in part, an Allowed Claim.

### 1.29 Disputed Claim Reserve

This term means the reserve established by the Liquidating Trustee pursuant to the

Liquidating Trust Agreement for payments of Disputed Claims upon such Claims becoming Allowed Claims.

**1.30    Effective Date**

This term means the earlier of: (*i*) the thirtieth (30th) day that occurs after the Confirmation Date, or (*ii*) December 31, 2022.

**1.31    Employee Retention Tax Credit**

This term means the Employee Retention Tax Credit or ERTC made available by the CARES Act, as amended by the Consolidated Appropriations Act and the American Rescue Plan Act.

**1.32    Estates**

This term means the Debtors' collective bankruptcy estates created under Bankruptcy Code § 541.

**1.33    Executory Contract**

This term means every unexpired lease and other contract that is subject to being assumed or rejected under Code § 365.

**1.34    Equity Interests**

This term means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized, or outstanding membership interests, shares, or stock, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

**1.35    Final Bar Date**

This term means the thirtieth (30th) day that occurs after the Effective Date.

**1.36    Final Decree**

This term means a Final Order showing that the Plan has been fully administered.

**1.37   Final Order**

This term means an order or judgment of the Court that: a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or hearing for *certiorari* is pending; or b) if appealed from, shall have been affirmed and no further hearing, appeal, or petition for *certiorari* can be taken or granted.

**1.38   Formula**

This term means an amount equal to 90% of the sum of (i) 25% of the amount paid by the TPP on claims billed by ARS to that TPP; and (ii) 50% of the amount paid by the TPP on claims billed by ASD to that TPP.  For purposes of this calculation, the applicable claims period for (i) Aetna and United is claims with a date of service from January 1, 2016 to the Petition Date; and (ii) any other TPP is the Petition Date back to the applicable statute of limitations for such TPP.

**1.39   Impaired**

This term means "impaired" as defined in Code § 1124.

**1.40   Insider**

This term shall include those Persons identified in Code § 101(31), and any Person deemed a non-statutory Insider as defined in the Ninth Circuit.

**1.41   Initial Bar Date**

This term shall mean December 7, 2022.

**1.42   Initial Payment Date**

This term shall mean the first date in which the Liquidating Trustee makes a distribution from the Liquidating Trust which shall be determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

**1.43   Intercompany Claims**

This term means any Claims between any of the Debtors.

**1.44    Lead Case**

This term means the Debtors' jointly administered Chapter 11 Case, Case No. 2:22-bk-06372-BKM.

**1.45    Liquidating Trust**

This term means the grantor trust created upon the Effective Date for the benefit of the Beneficiaries.

**1.46    Liquidating Trust Agreement**

This term means the agreement, substantially in the form attached hereto as **Exhibit 1**, to be executed by the Debtors and the Liquidating Trustee on the Effective Date, governing the Liquidating Trust, as it may be subsequently modified from time to time.

**1.47    Liquidating Trust Advisory Board**

This term means the Liquidating Trust Advisory Board as defined in the Liquidating Trust Agreement.

**1.48    Liquidating Trust Assets**

This term means all of the Debtors' assets existing as of the Effective Date, including without limitation: (i) cash; (ii) all Litigation and Causes of Action; (iii) all Claims and rights of the Debtors under any insurance policy; (iv) all Claims and rights of the Debtors under any Employee Retention Tax Credit benefit or other state or federal tax refunds; (v) all accounts receivable and future accounts receivable arising after Debtors' completion of work in progress; and (vi) any and all other assets, interests, rights, claims, privileges (including the attorney-client or other similar privileges), books and records, and defenses of the Debtors or Estates, which shall vest in the Liquidating Trust per Section 4.1 of the Plan.

**1.49    Liquidating Trustee**

This term means the Person appointed by the Confirmation Order to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order,

and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement. The identity of the Liquidating Trustee will be set forth in the Plan Supplement.

### 1.50 Maldonado Parties

This term shall include Pantheon Global Holdings, LLC, Brandon Maldonado, Chris Maldonado, Gregory Brian Maxon, Gregory Brian Maxon Maldonado, Sean Maldonado, James Allen, Dana Christini, Annabelle Maxon Maldonado, Cortni Maxon Maldonado, Taylor Maldonado, and Linda Maxon, any business in which the foregoing Persons have a direct or indirect ownership interest (other than publicly traded companies), and any relatives of the foregoing individuals.

### 1.51 Payor Receivables

This term shall mean the proceeds of any accounts receivable of the Debtors arising from the billing of TPPs.

### 1.52 Person

This term means "person" as defined in Code § 101(41).

### 1.53 Petition Date

This term means September 23, 2022, the filing date of the Debtors' voluntary Chapter 11 petitions.

### 1.54 Plan

This term means this *Debtors' Plan of Liquidation Dated October 25, 2022* and every amendment to or modification thereof, if any.

### 1.55 Plan Supplement

This term means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtors no later than fourteen (14) days before the first scheduled Confirmation Hearing and include, among other things, the identity of the Liquidating Trustee, the Assumed Executory

Contract List, and the Third Member (as that term is defined in the Liquidating Trust Agreement) of the Liquidating Trust Advisory Board.

### 1.56    Priority Claim

This term means any Claim entitled to priority under Code § 507(a) other than Administrative Claims.

### 1.57    Professional Fees

This term means any of the post-petition interim and final professional fees, costs, and expenses charged by the Chapter 11 Professionals.

### 1.58    Property

This term means, with respect to the Debtors, all rights, Causes of Action, all of the right, title and interest in and to property (real or personal, tangible or intangible, legal or equitable, liquidated or unliquidated) of whatever type or nature, owned by the Debtors as of the Effective Date, together with property subsequently acquired by the Debtors, and including, but not limited to, property as defined in Code § 541.

### 1.59    Proponents

This term means the parties proposing the Plan.

### 1.60    SBA

This term shall have the meaning ascribed to it in Section 3.3.2 hereof.

### 1.61    SC-Formula

This term means the amount paid by a TPP for claims billed by ARS or ASD to such TPP less the amount of such TPP's Allowed TPP Class Claim based on the Formula. For purposes of this calculation, the applicable claims period for (i) Aetna and United is claims with a date of service from January 1, 2016 to the Petition Date; and (ii) any other TPP is the Petition Date back to the applicable statute of limitations for such TPP.

### 1.62    Secured Claim

This term means every Claim or portion thereof that is asserted by a Creditor

holding such Claim to be secured by a lien, security interest, or assignment encumbering Property in which the Debtors have an interest; provided, however, that such Claim shall be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such Claim against such Property.

**1.63     Secured Creditor**

This term means every Creditor that asserts a Secured Claim in the Cases.

**1.64     Subordinated Claim**

This term means an allowed Class 3 Claim.

**1.65     TPP**

This term means a health insurance company or a third party administrator of a self-funded health plan, which paid claims submitted by either of the Debtors on behalf of medical providers.

**1.66     TPP Class**

This term shall have the meaning ascribed to it in Section 3.3.1 hereof.

**1.67     United**

This term shall collectively refer to UnitedHealthcare Insurance Company and United HealthCare Services, Inc.

**1.68     Unsecured Claim**

This term means every Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract), other than Secured Claims, Administrative Claims, and Priority Claims, that will be classified and paid pursuant to Class 2 or Class 3, as applicable.

**1.69     Unsecured Creditor**

This term means every Creditor that asserts an Unsecured Claim in the Cases.

## ARTICLE 2 – IMPORTANT DATES & DEADLINES

### 2.1    Initial Bar Date

Pursuant to the Court's *Order Setting Bar Date for Proof of Claims* [ECF No. 36], the Court set **December 7, 2022** as the <u>Initial Bar Date</u> for filing proofs of Claim.  For eligibility as Allowed Claims, proofs of Claim must be filed for:

1    Claims not listed in the Schedules of Assets and Liabilities, as may be amended from time to time;

2    Claims that are listed in the Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; and

3    Claims that differ in any respect from those listed in the Schedules of Assets and Liabilities (including, without limitation, the assertion of any right to a setoff under Code § 553 or otherwise);

Any Person or entity asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for payment thereof prior to Initial Bar Date shall be deemed to have waived its Claim, and the Claim will be disallowed and forever barred.

### 2.2    Final Bar Date

Applications for allowance and payment of: a) Administrative Claims that arise after the Petition Date and prior to the Confirmation Date; b) Professional Fees incurred prior to the Confirmation Date; or c) Claims resulting from the Debtors' rejection of Executory Contracts must be filed no later than the Final Bar Date, unless exempted from such requirement pursuant to the Bankruptcy Code.  Any Person asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for allowance and payment thereof shall be deemed to have waived its Claim, and the Claim will be disallowed.  Any Professional Fees incurred after the Effective Date shall be payable in accordance with the Liquidating Trust without the need to seek or obtain Bankruptcy Court approval.

## 2.3 Claims Objection Deadline

On or before the one hundred and eightieth (180th) day after the Effective Date, Liquidating Trustee may file with the Bankruptcy Court, serving a copy upon the Liquidating Trustee and Debtors, including its/his/her/their counsel, as applicable, an objection to any application pending for approval of an Administrative Claim or proof of Claim filed, or deemed filed herein. The Bankruptcy Court may extend the deadline under this section. Filing of a motion to extend the deadline under this Section tolls the deadline until entry of an order by the Bankruptcy Court with respect to such motion.

## 2.4 Assumption or Rejection of Executory Contracts

Unless expressly assumed herein, prior to the Confirmation Date, the Debtors will file motions to assume or reject Executory Contracts. Any Executory Contract not expressly assumed through the Plan, or by a motion filed and approved or pending approval prior to the Confirmation Date, shall be deemed rejected as of the Confirmation Date. The Debtors may assume and assign to the Liquidating Trust any Executory Contract contained in the "Assumed Executory Contract List" that is included in the Plan Supplement; provided, however, no Executory Contracts will be assumed if there is a default requiring cure under Bankruptcy Code § 365(b). [1]

## ARTICLE 3 - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan defines various Classes of Claims and provides for their treatment. This Plan deals with all Claims against the Debtors of whatever character. Only Allowed Claims are entitled to receive payments under the Plan. In accordance with Code §§ 1122 and 1123, all Claims against the Debtors or the Estates are classified and will receive treatment as follows:

---

[1] Notwithstanding the Debtors' intent to assume the business agreements identified herein, on or before October 28, 2022, the Debtors provided 45-60 day notices of their intent to terminate such contracts.

### 3.1     __Allowed Administrative Claims__

Pursuant to Code § 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. These Claims include, without limitation, post-petition tax Claims, Professional Fees, and any fees due and payable to the United States Trustee. Applications for approval of Administrative Claims must be filed with the Court by the Final Bar Date, and copies must be served upon the Debtors and the Liquidating Trustee, unless exempted by applicable law. Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim by the Final Bar Date shall be deemed to have waived its Claim, and the Claim will be disallowed. Unless otherwise agreed, the holders of Allowed Administrative Claims shall be paid in full in cash on the earlier of (i) the Effective Date, provided that the Administrative Claim is Allowed as of such date, or (ii) ten (10) business days from the date that such Administrative Claim becomes Allowed.

### 3.2     __Class 1 – Allowed Priority Claims__

Class 1 consists of Allowed Claims entitled to priority pursuant to Code § 507(a), unless such Claim qualifies as an Administrative Claim. Unless such Claimant agrees to less favorable treatment, the Liquidating Trustee shall pay each Class 1 Claim in full in order of the priority structure set forth in Code § 507(a). Each Claim of equal or higher priority shall receive payment in full in cash before payment of any Claim entitled to lower priority. To the extent the Liquidating Trustee cannot pay each Claim entitled to equal priority in full at any given time, the Liquidating Trustee shall distribute a *pro rata* share of available funds to Claims of equal priority until the Liquidating Trustee has paid all Class 1 Claims. No prepayment penalty shall apply to the Class 1. Class 1 is not Impaired and deemed to accept the Plan.

### 3.3     __Class 2 –Allowed Unsecured Claims__

Class 2 consists of two subclasses comprising all Allowed Unsecured Claims.

After payment of or reservation for Administrative Claims and Class 1 Claims, the Liquidating Trustee shall distribute a *pro rata* share of all funds to all Class 2 Claimants in accordance with the Liquidating Trust Agreement and as provided herein. Payments shall be made in accordance with the Liquidating Trust Agreement, and all payments shall be made no later than the fifth-year anniversary of the Effective Date, unless the Liquidating Trustee obtains an order of this Court extending this deadline. Class 2 Claims shall not accrue interest. No prepayment penalty shall apply to Class 2. If a Class 2 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 2 Claim shall not receive payment, but the Liquidating Trustee shall establish a Disputed Claim Reserve for the funds necessary to make a distribution to the claimant if the Disputed Claim becomes Allowed in full in accordance with Section 10.2.3. Class 2 is Impaired and entitled to vote on the Plan.

### 3.3.1 <u>Class 2.1 – Third-Party Payors</u>

Class 2.1 is the TPP unsecured subclass (the "<u>TPP Class</u>") comprised of (i) the Allowed Claims of Aetna and United and (ii) any other TPPs that may timely file a proof of Claim, which Allowed Claims in (i) and (ii) shall not be subject to set-off, recoupment, reduction or counterclaims of any nature. TPPs that have timely filed proofs of claims shall have an Allowed Claim equal to the amount determined in accordance with the Formula. The Formula and calculated Allowed Claim Amount reflect a settlement and compromise as to such TPP's Claim against the Debtors. Any Allowed Claim amount calculated pursuant to the Formula shall be valid solely for purposes of this Plan and shall not be binding, or subject to res judicata or collateral estoppel, on any party in any other proceeding.

/ / /

/ / /

/ / /

### 3.3.1.1      Limitation on Source of Distributions

Holders of Allowed Claims in the TPP Class shall receive distributions from the Liquidating Trust Assets, other than proceeds of any Payor Receivables. The Debtors shall use any proceeds of Payor Receivables to pay the Allowed Administrative Claims and Allowed Priority Claims. The Liquidating Trustee shall use any of the proceeds of Payor Receivables to pay the post-Effective Date expenses of the Liquidating Trust. To the extent that there are insufficient Liquidating Trust Assets to make a full *pro rata* distribution to the TPPs holding Allowed Claims given the foregoing restriction, then such holders shall receive as much of its/their *pro rata* distribution as possible using Liquidation Trust Assets other than Payor Receivables.

### 3.3.2      Class 2.2 – All Remaining Unsecured Creditors

Class 2.2 consists of all Allowed Unsecured Claims that are not entitled to classification in the TPP Class or any other Class of Claims ("Remaining Unsecured Class"). Like the TPP Class, the Remaining Unsecured Class shall receive its *pro rata* share of distributions paid to the Allowed Class 2 Claims without the restriction provided in § 3.3.1.1, *supra.*

The Remaining Unsecured Class includes the Claim of the Small Business Administration ("SBA"), which is contingent due to the Debtors' pending applications for forgiveness of the debt underpinning its Claim. Any and all distributions intended for the SBA's Claim shall be held in the Disputed Claim Reserve pending complete adjudication of the Debtors' applications for loan forgiveness. In the event the underlying debt is forgiven, the SBA shall hold no Claim and not receive any distribution from the Liquidating Trustee. Conversely, if the SBA debt is not forgiven or only partially forgiven, payments to the SBA on account of its Allowed Claim, as may be reduced to reflect any forgiven amounts, will be remitted in accordance with the Plan and Liquidating Trust Agreement.

### 3.4    Class 3 – TPP Subordinated Class

Class 3 is comprised of the holders of Allowed Claims in the TPP Class. Any TPP holding an Allowed Claim in the TPP Class shall calculate its Allowed subordinated Claim amount in accordance with the SC-Formula. The SC-Formula and calculated claim amount reflect a settlement and compromise as to such TPP's claim against the Debtors. Any Allowed Claim amount calculated pursuant to the SC-Formula shall be valid solely for purposes of this Plan and shall not be binding, or subject to res judicata or collateral estoppel, on any party in any other proceeding.

After payment of or reservation for payment in full of the Allowed Administrative Claims, Allowed Class 1 Claims, and Allowed Class 2 Claims, the Liquidating Trustee shall distribute a *pro rata* share of all funds to all Class 3 Claimants with an Allowed subordinated Claim in accordance with the Liquidating Trust Agreement and as provided herein. Payments shall be made in accordance with the Liquidating Trust Agreement, and all payments shall be made no later than the fifth-year anniversary of the Effective Date, unless the Liquidating Trustee obtains an order of this Court extending this deadline. Class 3 Claims shall not accrue interest. No prepayment penalty shall apply to Class 3. If a Class 3 Claim is not an Allowed Claim prior to the Initial Payment Date, the holder of the Class 3 Claim shall not receive payment, but, to the extent applicable given its subordinated status, the Liquidating Trustee shall establish a Disputed Claim Reserve for the funds necessary to make a distribution to the claimant if the Disputed Class 3 Claim becomes Allowed in full in accordance with Section 10.2.3. Class 3 is Impaired and entitled to vote on the Plan.

### 3.5    Class 4 – Equity Interests

There shall be no distribution on account of Class 4 Equity Interests. Upon the Effective Date, the Equity Interests will be deemed cancelled and will cease to exist. Holders of Equity Interests will receive no distribution under the Plan and therefore are

deemed to have rejected the Plan. Accordingly, Holders of Equity Interests are not entitled to vote.

## <u>ARTICLE 4 - PLAN IMPLEMENTATION</u>

The Plan constitutes a motion for substantive consolidation of the Debtors' liabilities and Property only for purposes of Plan voting and distributions to holders of Allowed Claims. Confirmation of the Plan shall constitute the Bankruptcy Court's order granting of that motion. Substantive consolidation is appropriate where: (1) creditors dealt with the entities as a single economic unit; or (2) the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 766 (9th Cir. 2000). Since their inception, the Debtors have jointly operated ARS and ASD nearly as a unified business and operation in their transactions with most of their Creditors. The Debtors have the same primary Creditors, and their assets truly belong to the unified operating business. Moreover, the Debtors' affairs are so entangled that they shared the same operating expenses and employees. Accordingly, substantive consolidation as provided in the Plan is appropriate.

Substantively consolidating the Debtors' liabilities and Property on the Effective Date: (a) consolidates the Cases into the Lead Case as a single case; (b) consolidates all Estates' Property into the Consolidated Estate only for purposes of Plan voting and distributions to holders of Allowed Claims under the Plan; (c) converts all Claims against any of the Estates into Claims against the Consolidated Estate such that any proof of Claim filed against one or more of the Debtors is deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor are deemed expunged; (d) disallows, discharges, and eliminates all Intercompany Claims and precludes any distributions under the Plan on account of Intercompany Claims; (e) eliminates and discharges all guarantees by one Debtor of the obligations of any other Debtor and precludes any distributions under the Plan on account

of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under Code § 553, treats all Debtors as one consolidated entity so that, subject to the other provisions of Code § 553, debts due to any Debtor may be setoff against the debts of any other Debtor.  Because there are no secured creditors, there is no concern of substantive consolidation in any way impacting a lien.  Substantive consolidation under the Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in the Plan does not affect any applicable date for purposes of pursuing Causes of Action, if any.  **SUBSTANTIVE CONSOLIDATION UNDER THE PLAN IS STRICTLY FOR THE PURPOSES DESCRIBED IN THE PLAN AND DOES NOT EFFECT A MERGER OR OTHER CONSOLIDATION OF THE DEBTORS.**

### 4.1    The Liquidating Trust

The Liquidating Trust shall be formed on the Effective Date to hold and effectuate the orderly disposition of the Liquidating Trust Assets and to make distribution of such assets in accordance with the Plan and Liquidating Trust Agreement.  On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust free and clear of all liens, Claims, and Equity Interests, other than the rights set forth in the Plan, Liquidating Trust Agreement, and Confirmation Order. The Plan shall constitute a motion pursuant to Code §§ 105, 363, and 365 to effect such. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets.

The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Except to the extent definitive guidance from the IRS or a court of competent jurisdiction, including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets as soon as possible after the Effective Date. The valuation shall be used consistently by all parties, including, without limitation, the Liquidating Trustee, on behalf of the Debtors, the Liquidating Trust, the Beneficiaries, and the Liquidating Trust Advisory Board, for all federal income tax purposes.

Expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

**4.2**     **Appointment of Liquidating Trust Advisory Board**

On or prior to the Effective Date, the Liquidating Trustee shall appoint the Liquidating Trust Advisory Board. The Liquidating Trust Advisory Board shall include at least Aetna and United, and to the extent that there is a creditor with interest in serving, who (i) is reasonably acceptable to Aetna and United, (ii) holds an Allowed Class 2 Claim, and (iii) is not an Insider, with such creditor to be identified in the Plan Supplement. Upon the death, resignation, or refusal to serve of a member of the Liquidating Trust Advisory Board, the Liquidating Trustee may appoint a replacement member, which shall be the

next willing Person with the largest Allowed Claim in Class 2 who is not an Insider. All members of the Liquidating Trust Advisory Board shall owe fiduciary duties to the Beneficiaries as a whole consistent with the duties owed by an official committee of unsecured under Code § 1102.

### 4.3 Appointment of the Liquidating Trustee

The Liquidating Trustee shall be appointed pursuant to the Confirmation Order. The Liquidating Trustee shall be identified in the Plan Supplement. From and after the Effective Date, the Liquidating Trustee's professionals may be retained by the Liquidating Trustee upon approval of the Liquidating Trust Advisory Board without further need for approval by the Bankruptcy Court. All fees and expenses incurred by the Liquidating Trustee and any retained professionals following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement and without further order of the Bankruptcy Court.

The Liquidating Trust Agreement provides that the Liquidating Trustee will consult with the Liquidating Trust Advisory Board and/or obtain its consent regarding certain transactions or actions, but otherwise vests decision-making authority in the Liquidating Trustee. The Liquidating Trustee shall be deemed the Estates' representative in accordance with Code § 1123 and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Code §§ 704 and 1106 and Rule 2004 to act on behalf of the Liquidating Trust. In addition to the rights and powers expressly set forth in the Liquidating Trust Agreement, the Liquidating Trustee will have the right to, pursuant to the terms of the Liquidating Trust Agreement and subject to the consent of the Liquidating Trust Advisory Board (where applicable), to do, among other things, the following: (1) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets;

(3) investigate, prosecute, settle, abandon, or compromise any Causes of Action; (4) make distributions as contemplated hereby and the Liquidating Trust Agreement, (5) establish and administer any necessary for Disputed Claim Reserves; (6) object to Claims (including Administrative Claims), and prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and their Estates; and (8) employ and compensate professionals and other agents, including, without limitation, existing Chapter 11 Professionals in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

From and after the Effective Date, the Liquidating Trust Advisory Board may appoint a successor Liquidating Trustee upon the resignation, death, or incapacitation of then-existing Liquidating Trustee, without further order of the Bankruptcy Court.

### 4.4 Cash Accounts

All unencumbered cash collected subsequent to the Effective Date and cash to be reserved by the Liquidating Trustee will be maintained by the Liquidating Trustee in interest-bearing bank accounts.

### 4.5 Litigation (Causes of Action)

Except as otherwise provided in this Plan, all Causes of Action are retained by and vested in the Liquidating Trust, and preserved pursuant to Code § 1123(b). From and after the Effective Date, all remaining Causes of Action not otherwise prosecuted to conclusion or settled as of such date, will be prosecuted or settled by the Liquidating Trustee subject to approval of the Liquidating Trust Advisory Board as may be required under the Liquidating Trust Agreement. To the extent prosecution of any of the Causes of Action is

already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtors, including in any derivative capacity or as an intervening party, will continue the prosecution of such Causes of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors pursuant to the Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

The Liquidating Trustee has discretion, subject to the consent of the Liquidating Trust Advisory Board as may be required under the Liquidating Trust Agreement, to pursue or not to pursue any and all Causes of Action as he determines is in the best interests of the Beneficiaries and consistent with the specific authority of the Liquidating Trustee. With respect to any Cause of Action, the Liquidating Trust and the Liquidating Trustee are bound by, and will give effect to, any release, exculpation, waiver, estoppel or injunction, including, without limitation, any of the foregoing, provided by the Plan or the Confirmation Order.

### 4.6    Distribution Procedures

The Liquidating Trustee shall make distributions to holders of Claims as provided in the Plan and Liquidating Trust Agreement. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in his sole discretion, make a full or partial *pro rata* distribution to Allowed Unsecured Claims as provided in Article 3 above. To the extent that the Liquidating Trustee ever determines that there is likely to be remaining Liquidating Trust Assets realized by the Liquidating Trust after the payment in full of all Liquidating Trust expenses and Allowed Claims, with interest accrued from and after the Petition Date, the Liquidating Trustee will file a notice to this effect with the Bankruptcy Court.

/ / /

/ / /

**4.7** **Withholding Taxes**

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire distribution to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such distribution shall be treated as an unclaimed distribution pursuant to Section 11.3 below.

**4.8** **Dissolution and Winding-Up of Debtors**

Upon the Effective Date, the Liquidating Trustee shall be authorized to take any actions with respect to the Debtors that could have been taken by the unanimous action of any manager, member, officer or director of the Debtors, including but not limited to dissolving and otherwise winding-up the Debtors.

**4.9** **Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and

in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; provided, however, that nothing contained herein shall be deemed to constitute or result in a discharge of the Debtors under Code § 1141(d).

## 4.10    Cessation of ARS Operations

ARS shall cease operations on the earlier of (a) the Effective Date, or (b) December 31, 2012. ARS's cessation of operations shall not preclude it or the Liquidating Trustee from processing its then work in progress and collecting accounts receivable, subject to the limitation in Section 4.11.

## 4.11    Aetna and United Receivables

Neither the Debtors nor the Liquidating Trustee shall attempt to bill or collect any medical claims from Aetna or United (the "Creditor Receivables"). The Debtors shall provide confirmation that they have contacted their clients with outstanding claims that have been submitted to Aetna or United and notified such clients that the Debtors were not taking further action with respect to the those claims. The Maldonado Parties also shall not attempt, directly or indirectly, to attempt to collect the Creditor Receivables.

## ARTICLE 5 - VOTING PROCEDURE

Creditors will vote to accept or reject the Plan. THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS; provided, however, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan and that Creditors receive as much or more under the Plan than

they would receive in a Chapter 7 liquidation.

## ARTICLE 6 - BINDING EFFECT OF PLAN

The provisions of this Plan shall bind the Debtors, the Liquidating Trustee, and any Person or entity holding a Claim or Equity Interest against the Debtors or their Estates, whether asserted or not asserted, whether such Person or entity's Claim arose before or after the respective Petition Date or the Effective Date, whether or not the Claim is Impaired under the Plan, and whether or not such Person or entity has accepted or rejected the Plan.

## ARTICLE 7 - EFFECT OF CONFIRMATION

Upon the Effective Date, all Property of the Estates will vest in the Liquidating Trust, which, subject to the obligations set forth in the Plan and the Liquidating Trust Agreement, may use the Property free of any burdens of the Bankruptcy Code and without need to obtain Court approval of his actions.

## ARTICLE 8 - MODIFICATION OF PLAN

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

### 8.1    Pre-Confirmation

In accordance with Code § 1127(a), the Proponents may propose the modification of the Plan in writing at any time before confirmation, provided that the Plan, as thus modified, meets the requirements of Code §§ 1122 and 1123, and the Proponents comply with Code § 1125.

### 8.2    Post-Confirmation

In accordance with Code § 1127(b), the Plan also may be modified at any time after confirmation and before its substantial consummation, provided that: a) the Plan as modified meets the requirements of Code §§ 1122 and 1123; b) the circumstances then existing justify such modification; and c) the Court confirms the Plan as thus modified

under Code § 1129.

**8.3**    **Effect of Modification**

Every modification of the Plan will supersede the previous version of the Plan as and when each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Proponents or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

Notwithstanding anything to the contrary contained herein, the Proponents shall not be bound by estoppel, or the principles of *res judicata* or collateral estoppel, with respect to any term or provision contained herein in the event the Plan is not confirmed upon the terms and provisions set forth herein.

## ARTICLE 9 - RETENTION OF JURISDICTION

Notwithstanding the confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Cases and this Plan, including, but not limited to, all of the following matters:

    a)   Allowance and payment of any Claims upon any objection thereto (or other appropriate proceedings) by any party in interest entitled to proceed in that manner;

    b)   Determination and adjudication of any issues that arise out of or relate to a sale of any Property;

    c)   Determination and adjudication of any disputes that arise regarding the interpretation of any provisions of this Plan;

    d)   Facilitation of the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate orders regarding this Plan and any provisions thereof;

    e)   Adjudication of any Causes of Action, Litigation, or other proceedings presently pending or otherwise referenced in the Plan, including but not limited to any action regarding the initiation, prosecution, enforcement, compromise or settlement of the Causes of Action in the Estates, and the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b) that may be pertinent to the Cases;

f) Enforcement of any provisions of the Plan and any and all documents relating to the Plan;

g) Determination and adjudication of any issues that relate to the Cases, and any governmental unit's Claim with respect to any tax, or any fine, interest or penalty relating to a tax;

h) Determination of any dispute that may arise regarding the enforcement of any settlement or compromise related to the Cases; and

i) Review of any determination or action by the Liquidating Trustee or any issue arising under or related to the Liquidating Trust.

The Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust and the Liquidating Trustee, including, without limitation, the administration and activities of the Liquidation Trust and the Liquidating Trustee, provided, however, that notwithstanding anything to the contrary, the Liquidating Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any retained Cause of Action or Litigation constituting Liquidating Trust Assets, Disputed Claim, or claim objection in accordance with the Chapter 11 Plan.

## ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS

### 10.1    Preservation of Debtors' Claims, Demands, and Causes of Action

In accordance with Code § 1123(b)(3), all of the Debtors' Claims and Causes of Action against third parties, including the Insiders, will: a) survive the entry of the Confirmation Order and the Effective Date, b) not be discharged by the Plan, and c) become and remain part Liquidating Trust Assets after the Effective Date.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Code § 1123(b)(3), any Causes of Action that the Debtors or their Estates may hold against any party shall vest upon the Effective Date in the Liquidating Trust. Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right, subject to certain limitations and consent rights of the Liquidating Trust Advisory Board, to institute, prosecute, abandon,

settle, or compromise any Cause of Action, in accordance with the terms of the Liquidating Trust Agreement, without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Any recoveries therefrom shall be Liquidating Trust Assets and remain the sole property of the Liquidating Trust for the benefit of the Beneficiaries in accordance with the Liquidating Trust Agreement, and holders of Claims shall have no right to any such recovery.

Unless a Cause of Action against a holder of a Claim or other Person is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, including the Confirmation Order, the Debtors and the Liquidating Trustee expressly reserve such retained Litigation and Causes of Action for later adjudication by the Liquidating Trust, including, without limitation, Causes of Action not specifically identified or described herein or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel, or laches shall apply to any Litigation or Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order, including the Confirmation Order. In addition, the Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any party, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

The Debtors have identified potentially liable Persons in Exhibit C to the Disclosure Statement, which list is non-exclusive. Regardless of the disclosure of potentially liable Persons, any Person to which the Debtors have incurred an obligation, whether on account of services, the purchase or sale of goods, or otherwise, or has received services from the Debtors or a transfer of money or Property of the Debtors, or has transacted business with the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person has filed a Proof of Claim against the Debtors in these Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Person's Proof of Claim; (iii) any such Person's Claim was included in the Debtors' schedules or other disclosures; (iv) the Debtors or Liquidating Trustee have objected to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated.

**10.2** **Procedure for Determination of Claims**

Except as otherwise agreed, any and all proofs of Claim filed after the Initial Bar Date shall be deemed disallowed as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed. No Claim will be an Allowed Claim until timely filed objections to its allowance are resolved. **Any Claims not timely filed or Allowed shall be deemed disallowed by the Confirmation Order.** Only Allowed Claims and interests will receive distributions from the Estates and Liquidating Trust.

Any Claims held by any Person from which property is recoverable under Code §§ 542, 543, 550, or 553 or by any Person that is a transferee of transfers avoidable under

Code §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be deemed disallowed pursuant to Code § 502(d), and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Person have been turned over or paid to the Debtors or Liquidating Trust.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

### 10.2.1 Disputed Claims

Except as to any Claim that has been Allowed prior to the Effective Date, on or before the one hundred and eightieth (180th) day after the Effective Date, the Liquidating Trustee may object to the allowance of a Claim or seek estimation thereof as described in Section 2.3 above. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims, and only then only in accordance with the Liquidating Trust Agreement. If a Claim is not an Allowed Claim as of the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when such Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan and Liquidating Trust Agreement.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to the exclusion of all others, except as to the Chapter 11 Professionals' applications for allowance of compensation and reimbursement of expenses under Code §§ 330 and 503, to make, file, prosecute, settle, withdraw, or resolve objections to Claims. The costs of pursuing the objections to Claims

shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Claims shall be litigated to a Final Order except to the extent the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Claim without approval of the Bankruptcy Court.

## 10.2.2 <u>Contingent and Unliquidated Claims</u>

Until such time as a contingent or unliquidated Claim, or a contingent or unliquidated portion of an Allowed Claim, becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent or unliquidated Claim will only be entitled to a distribution under the Plan when and if such contingent or unliquidated Claim becomes an Allowed Claim.

At any time: (a) prior to the Effective Date, the Debtors; and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Code § 502(c) regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection,

estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism of the Bankruptcy Court.

### 10.2.3 Reserve Provisions for Disputed Claims

On or after the Effective Date, the Liquidating Trustee may reserve cash reserves for the treatment of Disputed Claims in the Disputed Claim Reserve. On each distribution date after the Effective Date in which the Liquidating Trustee makes distributions to holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the *pro rata* share of such distributions to holders of Disputed Claims if such Claims were Allowed Claims, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the holders of Disputed Claims ultimately determined to be Allowed. The Disputed Claim Reserve shall be closed and extinguished by the Liquidating Trust when all distributions and other dispositions of Liquidating Trust Assets required to be made hereunder have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claim Reserve, all cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust. All funds or other property that vest or revest in the Liquidating Trust pursuant to this provision shall be (a) used to pay the fees and expenses of the Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a *pro rata* basis to holders of Allowed Claims. Except as expressly set forth in the Liquidating Trust Agreement, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Claim Reserve.

## ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS

### 11.1    Distributions

The Debtors and Liquidating Trustee will pay Allowed Claims according to the Plan.

### 11.2    Date of Distributions

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court, distributions of cash on account of Allowed Claims will be made in accordance with the Liquidating Trust Agreement.

### 11.3    Delivery of Distributions

Subject to Rule 9010, distributions and deliveries to each holder of an Allowed Claim will be made at the address of such holder as set forth on the respective proof of Claim as of the Effective Date or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified of a change of address.  If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Liquidating Trustee and Debtors, as applicable, are notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest.  Neither the Debtors nor the Liquidating Trustee will be under any obligation to attempt to locate the holder of any Allowed Claim.

Except with respect to property not distributed because it is being held in a Disputed Claim Reserve, distributions that are not claimed by ninety (90) days after the date of an attempted distribution shall be deemed to be unclaimed property under Code § 347(b) and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those distributions are made shall be automatically cancelled. After the expiration of that period, the claim of any Person to those Distributions shall be discharged and forever barred.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this paragraph shall be distributed by the Liquidating Trustee to the other holders of Allowed

Claims in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Rule 3001 on or prior to the Effective Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to the transfer may not have expired by the Effective Date. The Liquidating Trustee shall have no obligation to recognize any purported transfer or encumbrance of any Claim occurring after the Effective Date. In making any distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Effective Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Effective Date.

### 11.4 **Means of Payment**

Payments made to holders of Allowed Claims pursuant to this Plan will be in United States dollars by checks drawn on the domestic bank selected by the Debtors or Liquidating Trustee, as applicable. Any check issued by the Liquidating Trustee and sent to the holder of an Allowed Claim that is not negotiated by ninety (90) days after the date of issuance of such check shall be deemed to be unclaimed property under Code § 347(b) and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those distributions are made shall be automatically cancelled. Requests for reissuance of any check must be made directly to the Liquidating Trustee by the Person to whom such check originally was issued. Any such requests must be made within ninety (90) days of the date of issuance of the particular check. After such date, all Claims in respect of void checks are discharged and forever barred and the proceeds of those checks shall revest in

and become the property of the Liquidating Trust as unclaimed property in accordance with Code § 347(b).

**11.5    Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**11.6    De Minimis Cash Distributions**

The Liquidating Trustee has no obligation to make any cash payment of less than fifty dollars ($50) to any holder of an Allowed Claim unless a request therefor is made in writing to the Liquidating Trustee no later than twenty (20) days after the Effective Date. Such cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims, unless the distribution would still be less than fifty dollars ($50), in which case this provision shall again apply, or (ii) the date on which a final distribution is made to the holders of Allowed Claims.

**11.7    Setoff**

Pursuant to Code § 553 or common law rights of setoff or recoupment, the Debtors and Liquidating Trustee will, in the ordinary course of its affairs, set off or assert recoupment against any Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Debtors or Liquidating Trustee may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder will constitute a waiver or release of any such Claims, rights, and Causes of Action that the Debtors or Liquidating Trustee may possess against such holder.

## ARTICLE 12 - GENERAL PROVISIONS

**12.1    Extension of Dates**

If any date set forth in this Plan, including a payment due date, falls on a day that is not a Business Day, then such date will be the next Business Day.

/ / /

### 12.2 Notices

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

### 12.3 Default

If the Liquidating Trustee is unable or fails without excuse to perform in accordance with the Plan and Liquidation Trust Agreement, then he will be in default. Any Creditor may seek to enforce the Plan and Liquidation Trust Agreement by filing a motion seeking such enforcement in the Bankruptcy Court. <u>Before doing so, the Creditor must provide notice to the Liquidating Trustee specifying the nature of the alleged default and a 30-day period to cure the default. Any notice must be in writing and sent via certified mail to the Liquidating Trustee and its counsel at the addresses that will be filed with the Court when the Liquidating Trustee is appointed.</u> The Liquidating Trustee shall provide prompt notice to the Liquidating Trust Advisory Board of the receipt of any notice of an alleged default.

### 12.4 Closure of the Cases

At such time as the Plan has been substantially consummated, the Liquidating Trustee may file an application for entry of a Final Decree, upon the entry of which the Cases shall be deemed closed.

### 12.5 Effect of Appeal

In the event of any appeal of the Confirmation Order, and provided that no stay of the effectiveness of such Confirmation Order has been entered, the implementation and enforcement of the Confirmation Order and the Plan according to their terms shall remain unaffected.

### 12.6 Exculpation and Limitation of Liability

Pursuant to Code § 1107, the Debtors' fiduciaries are provided statutory qualified immunity for those instances they step into the shoes of a Chapter 11 trustee during the administration of these jointly administered Bankruptcy Cases. This same qualified

immunity is thereby imputed to the Debtors' Chapter 11 Professionals authorized by the Bankruptcy Court to provide services on behalf of these jointly administered Bankruptcy Estates. This qualified immunity is limited in nature. It only pertains to actions taken by the Debtors' fiduciaries and their authorized Chapter 11 Professionals from the Petition Date, through the Confirmation Date, upon which date a chapter 11 trustee's duties and responsibilities to the Bankruptcy Estate are terminated by statute. The qualified immunity is only applicable to those actions taken by the Debtors' fiduciaries and their authorized Chapter 11 Professionals for actions that are necessary to the administration of the bankruptcy case. Qualified immunity shall not extend to the ordinary business transactions of the Debtors. This qualified immunity is equal to the same protection afforded a bankruptcy trustee pursuant to *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983); *In re Castillo*, 248 B.R. 153, 157 (9th Cir. BAP 2000); and *In re Kashani*, 190 B.R. 875, 883 (9th Cir. BAP 1995). Finally, any party seeking to bring an action against a fiduciary of the Debtors or their authorized Chapter 11 Professionals for actions arising from or related to these jointly administered bankruptcy proceedings, must seek permission of the Bankruptcy Court before commencing a lawsuit in another forum. *See In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005); *Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090 (9th Cir. 2016); *see also Kashani* at 885.

### 12.7 **General Injunction**

Except as otherwise expressly provided in this Plan, the Confirmation Order shall provide, among other things, that all parties-in-interest who have held, hold, or may hold Claims are enjoined with respect to such Claims, on and after the Effective Date, from the following: a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Liquidating Trust; b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order

against the Debtors, the Liquidating Trust, or the Liquidating Trust Assets; c) creating, perfecting, or enforcing any encumbrance of any kind against the Liquidating Trust Assets; or d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Liquidating Trust. Notwithstanding the foregoing, nothing herein shall preclude or be construed as a waiver of any third-party or Insider's right to assert a defense to a Cause of Action brought by the Liquidating Trustee, Debtors, or any other party.

### 12.8    Interest

Unless set forth specifically herein, whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

### 12.9    Additional Assurances

The Debtors and any interested parties holding Allowed Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

### 12.10    Confirmation by Non-Acceptance Method

The Proponents hereby request, if necessary, confirmation of the Plan pursuant to Code § 1129(b) with respect to any Impaired Class of Claims that does not vote to accept the Plan.

### 12.11    Successors and Assigns

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

/ / /

### 12.12  Withdrawal of Plan

The Plan may be withdrawn by the Proponents at any time before entry of the Confirmation Order.

### 12.13  Severability and Reformation

The Proponents intend to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if the Court determines that any Plan provision is contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan if it cannot be reformed, or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this provision will prevent the Proponents from modifying the Plan in accordance with and as set forth in the Plan. Pursuant to any ruling by the Court regarding the subject matter of this provision, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

### 12.14  Prohibition Against Prepayment Penalties

If the Liquidating Trustee so chooses, in its sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Liquidating Trust will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Court.

### 12.15  Payment of Statutory Fees and Filing of Quarterly Reports

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Upon the Effective Date, the Debtors' Estates shall be consolidated as provided in Article 4 above and all Cases other than the Lead Case shall be deemed closed. Following the Effective Date and with its assets held by the Liquidating Trust, the Consolidated Estate will not generate any income, make any distributions, or hold any assets. Accordingly, upon the Effective Date and until

entry of an order closing the Lead Case or converting such case to a Chapter 7 proceeding, the Liquidating Trustee shall pay the minimum statutory fee to the U.S. Trustee's Office as set forth in 28 U.S.C. § 1930(a)(6). Additionally, the Liquidating Trustee shall file any quarterly reports in the Lead Case regarding the Debtors' distributions as required by the Bankruptcy Code.

### 12.16 Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

### 12.17 Special Tax Issues

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Code § 1146.

### 12.18 Conflicts Between Plan and Confirmation Order

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

RESPECTFULLY SUBMITTED this 25th day of October, 2022.

ADVANCED REIMBURSEMENT SOLUTIONS, LLC
AMERICAN SURGICAL DEVELOPMENT, LLC


*/s/ Bryan Perkinson*
Bryan Perkinson, Chief Restructuring Officer

1   **APPROVED AS TO FORM AND CONTENT:**

2   **ALLEN BARNES & JONES, PLC**

3

    By: /s/ *PJG #30340*
4         Philip J. Giles
          David B. Nelson
5         1850 N. Central Ave., Suite 1150
          Phoenix, Arizona 85004
6         *Attorneys for Debtors*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit 1

# LIQUIDATING TRUST AGREEMENT

This LIQUIDATING TRUST AGREEMENT (the "Trust Agreement")[1] is made and entered into as of _____, 2022, by and among (a) Advanced Reimbursement Solutions, LLC and American Surgical Development, LLC, in their capacities as debtors and debtors in possession and on behalf of themselves and their respective chapter 11 estates (each a "Debtor" and collectively, the "Debtors"), as settlors, and (b) _____, as trustee of the Liquidating Trust, so long as such individual continues in office, and all other individuals who have been duly elected and qualify as liquidating trustee of the Liquidating Trust hereunder pursuant to Section 1.5 or Article VIII hereof. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (as defined below).

## BACKGROUND

A.     On September 23, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court").

B.     On October 24, 2022, the Debtors filed the Plan of Liquidation Dated October 24, 2022 proposed by the Debtors (as amended, confirmed, and/or modified from time to time, including by the Confirmation Order, the "Plan").

C.     The Plan provides for the creation of a grantor trust on the Effective Date to hold, manage, and administer the Liquidating Trust Assets and distribute the proceeds thereof, if any, to the Beneficiaries (the "Liquidating Trust Beneficiaries") in accordance with the terms of this Trust Agreement, the Plan, and the Confirmation Order.

D.     The Liquidating Trust is being created on behalf of, and for the benefit of, the Liquidating Trust Beneficiaries, who hold beneficial interests in the Liquidating Trust ("Liquidating Trust Interest").

E.     The Liquidating Trust is organized for the sole purpose of liquidating and distributing the Liquidating Trust Assets, and not to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

F.     This Liquidating Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986, as amended (the "IRC") and the regulations promulgated thereunder (the "Treasury Regulations"), specifically Treasury Regulations section 301.7701-4(d) and, as such, as a "grantor trust" for United States federal income tax purposes pursuant to

---

[1] Undefined terms used herein shall have the meanings ascribed to them in the Plan (as defined below).

Treasury Regulations Section 1.671-4(a), with the Liquidating Trust Beneficiaries treated as the grantors and owners of the Liquidating Trust.

## TRUST AGREEMENT

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the Debtors and the Liquidating Trustee agree as follows:

## ARTICLE I.

## DECLARATION OF TRUST

1.1.    Creation of Trust. Effective as of the Effective Date, the Debtors and the Liquidating Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the Liquidating Trust, which shall bear the name "ARS Liquidating Trust." In connection with the exercise of the Liquidating Trustee's power hereunder, the Liquidating Trustee may use this name or such variation thereof as the Liquidating Trustee sees fit. The ARS Liquidating Trust shall be governed by the A.R.S. §§ 14-7401 et. seq. as the same may be amended from time to time (the "Trust Code").

1.2.    Purpose of Liquidating Trust. The purpose of the Liquidating Trust is to implement the Plan on behalf, and for the benefit, of the Liquidating Trust Beneficiaries, and to serve as a mechanism for liquidating (including the investigation, prosecution, or settlement of the Causes of Action), converting to cash or cash equivalents ("Cash"), and distributing the Liquidating Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in conduct or a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

1.3.    Transfer of Liquidating Trust Assets. On the Effective Date, the Debtors shall transfer, for the sole benefit of the Liquidating Trust Beneficiaries, pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B), and in accordance with the Plan and the Confirmation Order, the Liquidating Trust Assets to the Liquidating Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial, or otherwise) of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code section 1141(c). In this regard, the Liquidating Trust Assets will be treated as transferred, for United States federal as well as state and local income tax purposes, in the manner set forth pursuant to Section 5.2 of this Trust Agreement. The transfer of the Liquidating Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sale, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of all Liquidating Trust Assets to the Liquidating Trust, the Debtors shall be discharged and released from all liability with respect to the delivery of such assets, and exculpated as provided in Section 12.6 of the Plan. The Liquidating Trust Assets and all other property held from time to

time by the Liquidating Trust under this Trust Agreement and any earnings, including interest, on any of the foregoing are to be applied by the Liquidating Trustee in accordance with the terms hereof, the Plan, and the Confirmation Order for the benefit of the Liquidating Trust Beneficiaries, and for no other party, subject to the further covenants, conditions, and terms hereinafter set forth. In the event of any conflict among this Trust Agreement, the Plan and the Confirmation Order, the provisions of Section 9.6 of this Trust Agreement shall control.

      1.4.   <u>Funding of Reserves</u>.

      a)   <u>Liquidating Trust Operating Reserve</u>. On the Effective Date, the Liquidating Trust Operating Reserve shall be funded with any remaining funds available in the Liquidating Trust Assets, and shall be used exclusively for the following purposes: (i) to maintain the value of the Liquidating Trust Assets during liquidation; (ii) to pay the reasonable and necessary administrative expenses of the Liquidating Trust, including, but not limited to, (a) the reasonable costs and expenses incurred or anticipated to be incurred by the Liquidating Trustee (including reasonable fees, costs and expenses incurred or anticipated to be incurred by professionals retained by the Liquidating Trustee), (b) the reasonable costs and expenses incurred or anticipated to be incurred by the Liquidating Trust Advisory Board and its members, (c) any taxes imposed on the Liquidating Trust in respect of the Liquidating Trust Assets, (d) the reasonable fees and expenses incurred or anticipated to be incurred in connection with, arising out of or related to the Liquidating Trust Assets and litigation associated therewith, and (e) other costs and expenses contemplated by this Trust Agreement; and (iii) to make distributions to the Liquidating Trust Beneficiaries.

      Following the Effective Date, The Liquidating Trust Operating Reserve shall be increased by the proceeds realized by the sale, liquidation, prosecution, resolution, or other disposition of Liquidating Trust Assets.

      b)   <u>Disputed Claims Reserve</u>. Prior to any distribution, the Liquidating Trustee shall withhold from the Cash that would otherwise be distributed on account of Class 2 General Unsecured Claims in the Disputed Unsecured Claims Reserve, such property as may be necessary to equal one hundred percent (100%) of distributions to which holders of Class 2 Claims disputed pursuant to Section 10.2.1 of the Plan (generally, "Disputed Claims") would be entitled under the Plan if such Disputed Claims were Allowed in their disputed Claim amount. The Liquidating Trustee may request from the Bankruptcy Court, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, or for which the Liquidating Trustee determines to reserve less than the Claim amount as asserted. If the Liquidating Trustee makes such a request, he/she shall withhold the applicable portion of the Disputed Claims Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.

      1.5.   <u>Appointment and Acceptance of Liquidating Trustee</u>. As set forth in the Confirmation Order, the members of the Liquidating Trust Advisory Board hereby designate

_____ to serve as the initial Liquidating Trustee under the Plan. The Liquidating Trustee shall be deemed to be appointed as the sole and exclusive representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3)(B). The Liquidating Trustee accepts the Liquidating Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance, and delivery by the Debtors of all of their respective right, title, and interest in the Liquidating Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order, to the Liquidating Trustee, on behalf, and for the benefit, of the Liquidating Trust Beneficiaries, by the Debtors of all of their respective right, title, and interest in the Liquidating Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order. The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Liquidating Trust within the limitations set forth herein, including the Treasury Regulations and the Trust Code, and shall for all purposes hereunder be acting in the capacity as Liquidating Trustee, and not individually.

1.6.    <u>Liquidation of the Liquidating Trust Assets</u>. The Liquidating Trustee shall, in an expeditious but commercially reasonable manner and subject to the provisions of the Plan, the Confirmation Order, and the other provisions of this Trust Agreement, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions in accordance with the terms hereof and the Plan, and not unduly prolong the existence of the Liquidating Trust. The Liquidating Trustee shall exercise reasonable business judgment and liquidate the Liquidating Trust Assets to maximize net recoveries. Subject to the terms of this Trust Agreement, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights or causes of action of the Liquidating Trust or through the sale, lease, license or other disposition of the Liquidating Trust Assets (in whole or in combination, and including the sale of any claims, rights, or causes of action of the Liquidating Trust). Notwithstanding the foregoing, the Liquidating Trust Advisory Board must approve any (i) sale, transfer, assignment, abandonment, or other disposition of Liquidating Trust Assets with an asserted value equal to or in excess of $100,000; (ii) settlement or compromise of any Causes of Action against the Insiders or the Maldonado Parties; or (iii) settlement or compromise of an objection to a Claim of the Maldonado Parties or a Claim resulting in the Allowed Claim being equal to or in excess of $100,000. The Liquidating Trustee may incur any reasonable and necessary expenses in connection with the liquidation and conversion of the Liquidating Trust Assets into Cash or in connection with the administration of the Liquidating Trust and, subject to the approval of the Liquidating Trust Advisory Board, such expenses shall be deducted from the Liquidating Trust Operating Reserve.

1.7.    <u>No Reversion to Debtors</u>. In no event shall any part of the Liquidating Trust Assets revert to or be distributed to any Debtor.

1.8.    <u>Incidents of Ownership</u>. The Liquidating Trust Beneficiaries shall be the sole beneficiaries of the Liquidating Trust and the Liquidating Trust Assets, and the Liquidating

Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan, and in the Confirmation Order, including those powers set forth in Section 6.2 hereof.

1.9.　　Privileges. On the Effective Date, the attorney-client relationship between the Debtors and their current and former counsel (and any other applicable privileges and protections), shall be transferred to the Liquidating Trustee, who shall succeed to the rights and claims of, and hold the attorney-client privilege (or other such privileges and protections, including the work-product doctrine) for the Debtors, including, without limitation, any common interest privilege. For the avoidance of doubt, nothing in this Trust Agreement shall affect the rights of any non-Debtor third party to assert its own attorney-client and other applicable privileges.

## ARTICLE II.

## LIQUIDATING TRUST BENEFICIARIES

2.1.　　Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Liquidating Trust Interest, the Liquidating Trustee shall be entitled, at the direction and with the approval of the Liquidating Trust Advisory Board, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee, at the direction and with the approval of the Liquidating Trust Advisory Board, may elect to make no payment or distribution with respect to the Liquidating Trust Interest subject to the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Liquidating Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (ii) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall (x) include a complete release of the Liquidating Trust and the Liquidating Trustee, and (y) be subject to the approval of the Liquidating Trust Advisory Board if the proposed agreement results in an Allowed Claim equal to or in excess of $100,000 (the occurrence of either (i) or (ii) of this Section 2.1 being referred to as a "Dispute Resolution"). Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, in accordance with the terms of such Dispute Resolution, net of any taxes attributable thereto in accordance with Section 5.5.

2.2.　　Rights of Liquidating Trust Beneficiaries. Each Liquidating Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Liquidating Trust Beneficiary hereunder according to the terms of its Liquidating Trust Interest. The interest of a Liquidating Trust Beneficiary is hereby declared and shall be, in all respects, personal property. Except as

expressly provided hereunder, a Liquidating Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Liquidating Trust or the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting. No surviving spouse, heir, or devisee of any deceased Liquidating Trust Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Liquidating Trust Assets, but the whole title to the Liquidating Trust Assets shall be vested in the Liquidating Trustee and the sole interest of the Liquidating Trust Beneficiaries shall be the rights and benefits given to such person under this Trust Agreement and the Plan.

      2.3.   <u>Evidence of Liquidating Trust Interest</u>. Ownership of a Liquidating Trust Interest in the Liquidating Trust will be evidenced by the allowance of a Claim against the Debtors pursuant to the terms of the Plan. Any holder of an Allowed Claim under the Plan shall hold a percentage in the Series A, B, or C Liquidating Trust Interest (as indicated on Annex A) equal to the proportion of the underlying Allowed Claim's value to the total value of all Allowed Claims comprising the corresponding Class under the Plan in the same Series. A Liquidating Trust Beneficiary shall be deemed a "Holder of record" (hereinafter "Holder") of such Liquidating Trust Beneficiary's Liquidating Trust Interest(s) for purposes of all applicable United States federal and state laws, rules, and regulations.

      2.4.   <u>Transfers of Liquidating Trust Interests</u>.

          a)   <u>General</u>. Liquidating Trust Interests shall not be transferable or assignable except by will, intestate succession, or operation of law.

          b)   <u>Claims Registry</u>. Any transfer or assignment of a Liquidating Trust Interest by will, intestate succession, or operation of law shall not be effective unless and until such transfer or assignment of the respective Claim is recorded in the Claim registry for the appropriate Debtor and maintained by the Bankruptcy Court in Case Nos. 2:22-bk-06372-BKM or 2:22-bk-06373-BKM, which shall be completed as soon as practicable after transfer or assignment. Subject to Section 2.4(d), the entries in the Claim Registry shall be conclusive absent manifest error, and the Liquidating Trust and the Liquidating Trustee shall treat each person whose name is recorded in the Claim registry pursuant to the terms hereof as the owner of Liquidating Trust Interests for all purposes of this Trust Agreement, notwithstanding notice to the contrary. The Liquidating Trust shall maintain, or cause the agent of the Liquidating Trust to maintain, a register (which may be electronic) setting forth the names and addresses of the Liquidating Trust Beneficiaries, and the amount and class of their Liquidating Trust Interests from time to time.

          c)   <u>Registration</u>. If the Liquidating Trustee, upon advice of counsel, determines that any class of Liquidating Trust Interests may be subject to registration pursuant to section 12 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Liquidating Trustee shall pursue relief from such registration by obtaining either an exemptive

order, a no-action letter, or an interpretive letter from the Securities and Exchange Commission or its staff or, absent its ability to achieve that objective or in lieu thereof, shall register such class pursuant to section 12 of such statute (it being understood and agreed that the Liquidating Trustee with the approval of the Liquidating Trust Advisory Board shall be authorized, among other things, to register such class and to seek relief from one or more of the requirements then applicable subsequent to such registration and to de-register such class). Any expenses that are associated with such application for relief and/or registration shall be deducted from the Liquidating Trust Operating Reserve.

        d)      <u>Further Limitations on Transfer</u>. Notwithstanding any other provision to the contrary, the Liquidating Trustee may disregard any purported transfer or assignment of Liquidating Trust Interests by will, intestate succession, or operation of law if sufficient necessary information (as reasonably determined by the Liquidating Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the Liquidating Trustee.

      2.5.    <u>Limited Liability</u>. No provision of this Trust Agreement, the Plan, or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Liquidating Trust Beneficiary, shall give rise to any liability of such Liquidating Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, by creditors, employees, or equity interest holders of any Debtor, or by any other Person. Liquidating Trust Beneficiaries are deemed to receive the Liquidating Trust Assets in accordance with the provisions of this Trust Agreement, the Plan, and the Confirmation Order in exchange for their Allowed Claims, without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement and the Plan.

# ARTICLE III.

## DURATION AND TERMINATION OF LIQUIDATING TRUST

      3.1.    <u>Duration</u>. The Liquidating Trust shall become effective upon the Effective Date of the Plan and shall have an initial term of five (5) years from the Effective Date; provided, however, that, if warranted by the facts and circumstances, the Bankruptcy Court may extend the term of the Liquidating Trust.

      3.2.    <u>Dissolution of the Liquidating Trust</u>. The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved earlier, as the case maybe, on the earlier to occur of (i) all of the Liquidating Trust Assets having been distributed pursuant to the Plan and this Trust Agreement, (ii) the Liquidating Trustee having determined, with the approval of the Liquidating Trust Advisory Board, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) conclusion of the Liquidating Trust as provided by Section 4.1.

3.3.    Continuation of Liquidating Trust for Winding Up. After the dissolution of the Liquidating Trust and solely for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until its duties have been fully performed. Upon distribution of all the Liquidating Trust Assets, the Liquidating Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidating Trustee. All such records and documents may be destroyed at any time following the date that is five (5) years after the final distribution of the Liquidating Trust Assets, subject to any longer period established by order of a court of competent jurisdiction in litigation to which either or both of the Debtors were named as a party. Nothing herein shall be deemed to abridge any agreement(s) to which the Liquidating Trustee may be party that expressly provides for further retention of such documents and records.

## ARTICLE IV.

## ADMINISTRATION OF LIQUIDATING TRUST

4.1.    Payment of Claims, Expenses, and Liabilities. Except as otherwise provided herein, the Liquidating Trustee shall use the Liquidating Trust Operative Reserve (i) to pay reasonable costs and expenses of the Liquidating Trust that are incurred (including any taxes imposed on the Liquidating Trust, the actual reasonable out-of-pocket fees and expenses incurred by Liquidating Trustee Professionals in connection with the administration and liquidation of the Liquidating Trust Assets, as provided in Section 6.7 herein, and the preservation of books and records of the Liquidating Trust); (ii) to satisfy other obligations or other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, or this Trust Agreement, including fees and costs incurred in connection with the protection, preservation, liquidating, and distribution of the Liquidating Trust Assets and the costs of investigating, prosecuting, resolving, or settling any Cause of Action; (iii) as reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation; and (iv) to satisfy any other obligations of the Liquidating Trust expressly set forth in the Plan, this Trust Agreement, and the Confirmation Order.

4.2.    Distributions.

a)    Generally. Except as otherwise provided in the Plan or this Trust Agreement, the Liquidating Trustee shall make distributions of Cash or other property to the Liquidating Trust Beneficiaries qualifying to receive distributions from the Liquidating Trust when the Liquidating Trustee, in its sole discretion, determines such distribution appropriate, subject to the Liquidating Trustee duty to confer on such matters with the Liquidating Trust Advisory Board. The Liquidating Trustee may postpone any distribution if the Liquidating Trustee determines that a Distribution is impracticable under the circumstances, or the amount of such distribution would be too small to justify the administrative costs associated with making it. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating

Trust.

b)     <u>Classes of Liquidation, Trust Interests; Allocation and Payment of Distributions</u>. Each Liquidating Trust Beneficiary's share of the Liquidating Trust Interests as determined pursuant to the Plan (including any Cash and other property to be received on account of any Liquidating Trust Interest) shall be allocated and distributed, and the Liquidating Trust Assets shall be allocated and distributed, in accordance with Article III of the Plan.

4.3.     <u>Treatment of Unclaimed Distributions</u>. Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an unclaimed distribution or negotiate a distribution within ninety (90) days after an attempted distribution shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such Claim for an unclaimed distribution against the Debtors, the Liquidating Trustee, the Liquidating Trust, and their respective agents, attorneys, representatives, employees or independent contractors, or any of its and their property. In such cases, any Cash otherwise reserved for unclaimed distributions shall become the property of the Liquidating Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed to other holders of Liquidating Trust Interests within the same series. Nothing contained in the Plan or this Trust Agreement shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim; provided, however, that the Liquidating Trustee, in its sole discretion, may publish notice of unclaimed distributions.

4.4.     <u>Setoffs</u>. Except as otherwise set forth in the Plan, the Liquidating Trustee may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Liquidating Trust Interest and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Liquidating Trust Interest by the Liquidating Trustee), the claims, rights, and causes of action of any nature that one or more of the Debtors, Debtors in possession, or the Liquidating Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors in Possession, or the Liquidating Trust may possess against such Holder; provided, further, that nothing contained herein is intended to limit the ability of any Liquidating Trust Beneficiary to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

4.5.     <u>Compliance with Laws</u>. Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws, except as otherwise set forth in this Trust Agreement.

4.6.     <u>Fiscal Year</u>. Except for the first and last years of the Liquidating Trust, the

fiscal year of the Liquidating Trust shall be the calendar year. For the first and last years of the Liquidating Trust, the fiscal year of the Liquidating Trust shall be such portion of the calendar year that the Liquidating Trust is in existence.

4.7. <u>Books and Records</u>. Within thirty (30) days of the Effective Date, the Debtors shall deliver to the Liquidating Trustee all of their books, records, and files, including electronic records. The Liquidating Trustee shall retain and preserve all of the Debtors' books, records, and files (including electronic records), including those created by the Liquidating Trustee. Subject to Section 3.3 hereof, the Liquidating Trustee shall maintain, in respect of the Liquidating Trust and the Liquidating Trust Beneficiaries and all others to receive distributions under this Trust Agreement, books and records relating to the assets and the income of the Liquidating Trust and the payment of expenses of, liabilities of, and claims against or assumed by, the Liquidating Trust and the Liquidating Trustee, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Trust Agreement and applicable provisions of law, including to applicable tax, securities and other federal and state laws. Except as otherwise provided herein or in the Plan, nothing in this Trust Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets. The Liquidating Trustee shall provide any member of the Liquidating Trust Advisory Board with access to such books and records during normal business hours as may be reasonably requested with five (5) days' advance notice. Liquidating Trust Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Liquidating Trustee to inspect such books and records; provided, that, if so requested, all costs associated with such inspection shall be paid in advance by such requesting Liquidating Trust Beneficiary and such Liquidating Trust Beneficiary shall have entered into a confidentiality agreement reasonably satisfactory in form and substance to the Liquidating Trustee.

4.8. <u>Cash Payments</u>. All distributions required to be made by the Liquidating Trustee to the Liquidating Trust Beneficiaries shall be made in Cash denominated in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or, at the option of the Liquidating Trustee, by wire transfer from a domestic bank selected by the Liquidating Trustee or as otherwise required or provided in applicable agreements; provided, however, that Cash payments to foreign holders of Liquidating Trust Interests may be made, at the option of the Liquidating Trustee, in such funds as and by such means as are necessary or customary in a particular foreign jurisdiction.

4.9. <u>Insurance</u>. The Liquidating Trust shall, to the extent deemed necessary or advisable by the Liquidating Trustee, maintain customary insurance coverage for the protection of the Liquidating Trustee; the members, to the extent deemed necessary or advisable by the Liquidating Trust Advisory Board, of the Liquidating Trust Advisory Board; employees; and any such other persons serving as administrators and overseers of the Liquidating Trust on and after the Effective Date. The Liquidating Trustee may obtain insurance coverage with respect to

real and personal property which may become Liquidating Trust Assets, if any.

4.10. <u>Reports</u>.

a) The Liquidating Trustee shall deliver reports to members of the Liquidating Trust Advisory Board not later than thirty (30) days following the end of each fiscal quarter. Such reports shall specify in reasonable detail (i) the status of any Causes of Action and Claims involving the Liquidating Trust or the Liquidating Trust Assets, including any settlements entered into by the Liquidating Trust, (ii) the costs and expenses of the Liquidating Trust that are incurred (including any actual reasonable out-of-pocket fees and expenses incurred by Liquidating Trustee Professionals (as defined below) in connection with the administration and liquidation of the Liquidating Trust Assets during the preceding fiscal quarter), (iii) the amounts listed in clause (ii) incurred since the Effective Date, (iv) the amount of Cash and other assets received by the Liquidating Trust during the prior fiscal quarter, (v) the Liquidating Trustee's estimate as of the end of the most recent fiscal quarter of the uncollected tax refunds and the Employee Retention Tax Credit, if any, and all other Liquidating Trust Assets, (vi) the aggregate amount of Cash and other assets received by the Liquidating Trust since the Effective Date, (vii) the calculation of the estimated amount of the Cash and other assets expected to be distributed within the subsequent fiscal quarter, including any cash on hand that is not to be distributed pursuant to Section 4.2 above, (viii) the aggregate amount of distributions from the Liquidating Trust to the Liquidating Trust Beneficiaries since the Effective Date, and (ix) such other information as the Liquidating Trust Advisory Board may reasonably request from time to time. The Liquidating Trustee shall also timely prepare, file, and distribute such additional statements, reports, and submission (A) as may be necessary to cause the Liquidating Trust and the Liquidating Trustee to be in compliance with applicable law or (B) as may be otherwise reasonably requested from time to time by the Liquidating Trust Advisory Board.

# ARTICLE V.

# TAX MATTERS

5.1. <u>Tax Treatment</u>. For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will treat the Liquidating Trust as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.

5.2. <u>Liquidating Trustee's Tax Power for Debtors</u>.

a) For all taxable periods until dissolved, the Liquidating Trustee shall have full and exclusive authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent), to the same extent as if the Liquidating Trustee

were the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee to correspond with any tax authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer tax payments and tax returns.

b)      In furtherance of the transfer of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date, the Liquidating Trust shall be entitled to all tax refunds and the Employer Retention Tax Credit of the Debtors (and the Liquidating Trust shall bear responsibility for (i) all tax liabilities of the Debtors for taxable years until dissolved, to the extent not discharged by the Plan or provided for payment in the Plan).

c)      Following the Effective Date, the Liquidating Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended tax returns or requests for refunds, if the Liquidating Trustee deems appropriate, for all taxable periods until dissolved.

5.3.    <u>Liquidating Trust Assets Treated as Owned by Liquidating Trust Beneficiaries</u>. For all United States federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) generally will be required to treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Liquidating Trust Beneficiaries and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Disputed Claims Reserve, followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Claims Reserve) in exchange for Liquidating Trust Interests. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to the Disputed Claims Reserve, discussed below). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

5.4.    <u>Tax Reporting</u>.

a)      The Liquidating Trustee shall file (or cause to be filed) all Tax Returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article V. The Liquidating Trustee also will annually send to each Holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for United States federal income tax purposes and will instruct all such Holders to use such information in preparing their United States federal income tax returns or to forward the appropriate information to such Holder's underlying beneficial Holders with instructions to utilize such information in preparing their United States federal income tax returns. The

Liquidating Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the Liquidating Trust that is required by any governmental unit.

b) On or before ninety (90) days after the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the tax refunds as of the Effective Date or shall otherwise arrange for such a valuation to be provided to the Liquidating Trustee by such third-party professionals as the Debtors deem appropriate. The Liquidating Trustee, in consultation with the Liquidating Trust Advisory Board, will then in good faith value all other Liquidating Trust Assets, and shall make all such values (including the tax refund values) available upon written request from an interested parties, and such values shall be used consistently by all parties to the Liquidating Trust (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

c) Allocations of Liquidating Trust taxable income among the Liquidating Trust Beneficiaries (other than taxable income allocable to the Disputed Claims Reserve) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed as such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserve) to the Holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purposes of this Section 5.4(c) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

d) The Liquidating Trustee shall maintain a reserve for any distributable amounts required to be set aside on account of Disputed Claims. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (i) timely elect to treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

e) The Liquidating Trustee shall be responsible for payment, out of the

Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or its assets, including the Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve, as applicable, is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims (including any income that may arise upon the distribution of the assets from the Disputed Claims Reserve), such taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

f) The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including any Reserve, or the Debtors under section 505(b) of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust.

5.5. <u>Tax Withholdings by Liquidating Trustee</u>. The Liquidating Trustee shall withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the Holders of Liquidating Trust Interests. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such Holders of Liquidating Trust Interests for all purposes of the Trust Agreement. The Liquidating Trustee shall be authorized to collect such tax information from the Holders of Liquidating Trust Interests (including without limitation, social security numbers or other tax identification numbers) as the Liquidating Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the Trust Agreement. In order to receive distributions under the Plan, all Holders of Liquidating Trust Interests shall be required to identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Liquidating Trustee for these purposes. This identification requirement generally applies to all Holders, including those who hold their Claims in "street name." The Liquidating Trustee may refuse to make a distribution to any Holder of a Liquidating Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Holder's Liquidating Trust Interests as disputed; provided, however, that, upon the delivery of such information by a Holder of a Liquidating Trust Interest, the Liquidating Trustee shall make such distribution to which the Holder of the Liquidating Trust Interest is entitled, without additional interest occasioned by such Holder's delay in providing tax information; and, provided, further, that, if such information is not furnished to the Liquidating Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the Holder of such Liquidating Trust Interest; and, provided, further, that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any such Holder and the Liquidating Trustee is later held liable for

the amount of such withholding, such Holder shall reimburse the Liquidating Trustee for such liability (to the extent such amounts were actually distributed to such Holder).

## ARTICLE VI.

## POWERS AND LIMITATIONS ON THE LIQUIDATING TRUSTEE

6.1.    Liquidating Trustee. References herein to the Liquidating Trustee shall refer to the individual serving as the Liquidating Trustee solely in its capacity as trustee hereunder. Subject to Article VIII hereof, the Liquidating Trustee shall hold office until the termination of the Liquidating Trust in accordance with the terms set forth herein.

6.2.    Powers of the Liquidating Trustee.

a)    Pursuant to the terms of the Plan, the Confirmation Order, and this Trust Agreement, the Liquidating Trustee shall have various powers, duties, and responsibilities concerning the disposition of Liquidating Trust Assets, the prosecution of Causes of Action, the resolution of Claims against the Debtors' Estates, the administration of the Liquidating Trust and the Liquidating Trust Assets, and to make distributions from the net proceeds of the Liquidating Trust in accordance with the Plan, the Confirmation Order, and this Trust Agreement. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, the Confirmation Order, and this Trust Agreement, take all actions necessary to wind down the affairs of and dissolve the Debtors consistent with the Plan and applicable non-bankruptcy law.

b)    The Liquidating Trustee shall have only such rights, powers, and privileges expressly set forth in the Confirmation Order, the Plan, and this Trust Agreement and as otherwise provided by applicable law, which shall include the powers of a trustee under 11 U.S.C. §§ 704 and 1106, and Fed. R. Bankr. P. 2004 to act on behalf of the Liquidating Trust. Subject to the oversight and approvals by and of the Liquidating Trust Advisory Board when required herein, the Liquidating Trustee shall be expressly authorized to undertake the following actions:

i.   To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by the Debtors or any trustee appointed for any Debtor with like effect as, if authorized, exercised and taken by unanimous action of the Debtors, their respective partners, members, officers, directors and shareholders; including, without limitation, amendment of the articles of organization and by-laws of the Debtors, the merger of any Debtor into another Debtor, the dissolution of any Debtor, and the assertion or waiver of any privilege or protection, including the attorney-client privilege or attorney-work product doctrine that has or could be asserted by or on behalf of any Debtor;

ii.   To open and maintain bank and other deposit accounts, escrows and other accounts, establish and administer Disputed Claim Reserves, calculate and make Distributions

to Holders of Liquidating Trust Interests as provided for or contemplated by the Plan, and take other actions consistent with the Plan and the implementation thereof in the name of the Debtors or the Liquidating Trustee, even in the event of the dissolution of the Debtors;

iii. To make or have made a good faith valuation of the Liquidating Trust Assets, as soon as possible after the Effective Date;

iv. To collect, sell, lease, license, liquidate or otherwise dispose of all Liquidating Trust Assets pursuant to the Plan, subject to approval by the Liquidating Trust Advisory Board in the event that a particular Liquidating Trust Asset is valued at or in excess of $100,000, to make Distributions of Net Proceeds generated by the sale or disposition of Liquidating Trust Assets and to administer the winding-up of the affairs of the Debtors;

v. Subject to the prior approval of the Liquidating Trust Advisory Board to borrow funds, and to also take all actions necessary to preserve and maximize the value of the Liquidating Trust Assets;

vi. To object to any Claims (Disputed or otherwise), and to defend, compromise and/or settle any Claims prior to or following objection without the necessity of approval of the Court, subject to approval by the Liquidating Trust Advisory Board if any such settlement or compromise is of a Claim of the Maldonado Parties or results in an Allowed Claim equal to or in excess of $100,000;

vii. To make decisions, after consultation with and approval by the Liquidating Trust Advisory Board, regarding the retention or engagement of professionals, employees and consultants (generally, "Liquidating Trust Professionals") by the Liquidating Trust and to pay, from the Liquidating Trust Operating Reserve, (i) the charges incurred by the Liquidating Trust on or after the Effective Date for services of professionals upon approval of the Liquidating Trust Advisory Board, without application to the Court, and (ii) disbursements, expenses or related support services relating to the winding down of the Debtors and implementation of the Plan, without application to the Court;

viii. To cause, on behalf of the Liquidating Trust, the Debtors, and their Estates to prepare and file all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal or other tax law;

ix. To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Court as deemed appropriate by the Liquidating Trustee in accordance with the investment and deposit guidelines set forth in this Trust Agreement;

x. To effect all actions, and enter into or execute any agreement, instrument, or document required by or consistent with the Plan, or necessary to implement the provisions of the Plan or this Trust Agreement, and perform all of the obligations of the Debtors or the

Liquidating Trustee under the Plan or this Trust Agreement;

xi. To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization approved by the Liquidating Trust Advisory Board, any assets that the Liquidating Trustee determines, at the conclusion of the Chapter 11 Cases, are of no benefit to creditors of the Debtors or too impractical to distribute, provided, however, that Court approval, upon notice and a hearing, shall be required for any abandonment or donation of assets with a value of ten thousand dollars ($10,000) or more;

xii. Subject to the approval of the Liquidating Trust Advisory Board in accordance with subsection (xiii) below, to investigate (including pursuant to Fed. R. Bankr. P. 2004), prosecute, abandon, withdraw, or settle any Cause of Action not expressly released or waived under the Plan, including participating in or initiating any proceeding before the Court or any other court of appropriate jurisdiction, participating as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding on behalf of the Liquidating Trust, and pursuing to settlement or judgment such actions;

xiii. To negotiate, without Court approval, but in each instance subject to final approval by the Liquidating Trust Advisory Board, the settlement of one or more Causes of Action for which the defendant is an Insider or any of the Maldonado Parties, or the amount claimed by the Liquidating Trust against a defendant, if not an Insider or Maldonado Party, is equal to or greater than $100,000;

xiv. To use Liquidating Trust Assets to purchase or create and maintain all appropriate insurance policies, bonds or other means of assurance and protection of the Liquidating Trust Assets and pay all reasonable insurance premiums and other costs he or she deems necessary or advisable to insure the acts and omissions of the Liquidating Trustee, and if appropriate, the Liquidating Trust Advisory Board;

xv. To implement and enforce all provisions of the Plan, subject to the advice of the Liquidating Trust Advisory Board;

xvi. To maintain appropriate books and records (including financial books and records) to govern the liquidation and distribution of the Liquidating Trust Assets, provided, however, that any abandonment or destruction of books and records shall require Court approval, upon notice and a hearing, unless otherwise provided herein;

xvii. To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Court and serve on the United States Trustee quarterly post-confirmation financial reports for each of the Debtors until such time as such reports are no longer required, or the Court orders otherwise, a final decree is entered closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed;

xviii. Subject to approval of the Liquidating Trust Advisory Board, to

dissolve the Liquidating Trust if the Liquidating Trustee determines, in reasonable reliance on such professionals as it may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to Trust Beneficiaries is likely to exceed the value of the remaining Liquidating Trust Assets;

xix.　　To seek one or more final decrees closing the Debtors' Chapter 11 Cases;

xx. To do all other acts or things consistent with the provisions of the Plan that the Liquidating Trustee deems reasonably necessary or desirable with respect to implementing the Plan; and

xxi.　　To be the Estate representative and successor of the Debtors for all purposes.

c)　　Except as otherwise provided in this Trust Agreement, the Liquidating Trustee will not be required to obtain the order or approval of the Bankruptcy Court, or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power, or privilege conferred hereunder. Notwithstanding the foregoing, where the Liquidating Trustee determines that it is necessary, appropriate, or desirable, the Liquidating Trustee will have the right to submit to the Bankruptcy Court any question or questions regarding any specific action proposed to be taken by the Liquidating Trustee with respect to this Trust Agreement, the Liquidating Trust, or the Liquidating Trust Assets, including the administration and distribution of Liquidating Trust Assets and the termination of the Liquidating Trust. Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the Liquidating Trustee.

### 6.3.　Limitations on Liquidating Trustee.

a)　　The Liquidating Trustee shall, on behalf of the Liquidating Trust, hold the Liquidating Trust out as a trust in the process of liquidation and not as an investment company. The Liquidating Trustee shall be restricted to the liquidation of the Liquidating Trust Assets on behalf, and for the benefit, of the Liquidating Trust Beneficiaries and the distribution and application of the Liquidating Trust Assets for the purposes set forth in, and the conservation and protection of the Liquidating Trust Assets and the administration thereof in accordance with, the provisions of this Trust Agreement, the Plan, and the Confirmation Order. In no event shall the Liquidating Trustee receive any property, make any distribution, satisfy or discharge any claims, expenses, charges, liabilities and obligations or otherwise take any action which would jeopardize the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes within the meaning of Treasury Regulations Section 301.7701-4(d). This limitation shall apply irrespective of whether the conduct of any such actions is deemed by the Liquidating Trustee to be necessary or appropriate for the

conservation and protection of the Trust Assets.

b)      Notwithstanding anything in this Trust Agreement to the contrary, the Liquidating Trustee shall submit to the Liquidating Trust Advisory Board for its approval the following matters and any other matters that expressly or reasonably require the approval of the Liquidating Trust Advisory Board pursuant to the other terms of this Trust Agreement:

i.      The retention or engagement of any Liquidating Trustee Professionals;

ii.      Any payment to the Liquidating Trustee or any Liquidating Trustee Professionals for fees and expenses;

iii.      Any settlement of any Causes of Action involving an Insider, Maldonado Party, or an asserted amount in controversy equal to or in excess of $100,000;

iv.      Any settlement of a Claim of the Maldonado Parties or a Claim where the Allowed amount of the Claim shall be equal to or in excess of $100,000;

v.      Any sale, transfer, assignment, abandonment, or other disposition of a Liquidating Trust Asset with an asserted value equal to or in excess of $100,000;

vi.      Any investment of Liquidating Trust Assets;

vii.      Any borrowing of funds, including funds borrowed to replenish the Liquidating Trust Operating Reserve;

viii.      Any incurrence of any cost, expense, or fee in excess of $100,000; and

ix.      The dissolution of the Liquidating Trust.

The foregoing shall not limit the Liquidating Trustee's ability to make determinations and take actions regarding compliance with tax withholding requirements (including remittances).

6.4.    Establishment of Liquidating Trust Advisory Board.

a)      The "Liquidating Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Trust Agreement, which duties shall be (i) to oversee the liquidation and distribution of the Liquidating Trust Assets by the Liquidating Trustee in accordance with this Trust Agreement, the Plan, and the Confirmation Order, (ii) to approve (or withhold approval) of those matters submitted to it for approval in accordance with the terms of this Trust Agreement, and (iii) to remove and appoint any successor to the Liquidating Trustee as provided for in this Trust Agreement.

b)      The Liquidating Trust Advisory Board shall consist of three (3) members, one (1) of which shall be United and may be replaced at any time at the sole

discretion of United; one (1) of which shall be Aetna and may be replaced at any time at the sole discretion of Aetna, and one (1) of which shall be a Holder of a Liquidating Trust Interest appointed by the Debtor that is (i) not an Insider or Maldonado Party, (ii) willing to serve in such capacity, and (iii) reasonably acceptable to United and Aetna (the "Third Member"). The identity of the Third Member of the Liquidating Trust Advisory Board shall be set forth in the Plan Supplement.

        c)      The authority of the members of the Liquidating Trust Advisory Board shall be effective as of the Effective Date and shall remain and continue in full force and effect until the Liquidating Trust is dissolved in accordance with Section 3.2 hereof. The service of the members of the Liquidating Trust Advisory Board shall be subject to the following:

        i.      the members of the Liquidating Trust Advisory Board shall serve until death or resignation pursuant to clause (ii) below, or removal pursuant to clause (iii) below;

        ii.      a member of the Liquidating Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Liquidating Trust Advisory Board. Such resignation shall be effective when a successor is appointed as provided herein;

        iii.      a member of the Liquidating Trust Advisory Board may be removed by unanimous vote of the other members for (a) fraud or willful misconduct in connection with the affairs of the Liquidating Trust or (b) cause, which shall include a breach of fiduciary duty other than as specified in the foregoing clause (a). Such removal shall be effective only upon the earlier of (a) the acceptance of such removal by the member, or (b) order of the Bankruptcy Court requiring such removal.

        iv.      in addition, the United Member and the Aetna Member may be replaced at any time and for any reason by written notice (from United Healthcare and Aetna respectively) to the Liquidating Trustee and the Third Member.

        v.      in the event of a vacancy in the Third Member's position (whether by removal, death, or resignation) and such member is not replaced pursuant to Section 6.4(c)(iv), the Liquidating Trustee shall appoint as successor member the Unsecured Creditor holding the largest Allowed Class 2 Claim that (a) does not already have a member on the Liquidating Trust Advisory Board; (b) is willing to serve on the Liquidating Trust Advisory Board; and (c) is not an Insider or Maldonado Party; and (d) is reasonably acceptable to United and Aetna.

        vi.      immediately upon appointment of any successor member of the Liquidating Trust Advisory Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Liquidating Trust Advisory Board hereunder shall be vested in and undertaken by the successor member of the Liquidating Trust Advisory Board without any

further act; and the successor member of the Liquidating Trust Advisory Board shall not be liable personally for any act or omission of the predecessor member of the Liquidating Trust Advisory Board.

d) Each member of the Liquidating Trust Advisory Board shall designate (i) one or more representatives who shall attend meetings of and participate in other activities of the Liquidating Trust Advisory Board and (ii) an alternate representative to attend meetings and participate in other activities of the Liquidating Trust Advisory Board when the representatives designated pursuant to clause (i) above are unavailable.

e) Notwithstanding anything in this Trust Agreement to the contrary, the Liquidating Trust Advisory Board shall not take any action which will cause the Liquidating Trust to fail to qualify as a "liquidating trust" for United States federal income tax purposes.

f) A quorum for meetings of the Liquidating Trust Advisory Board shall consist of a majority of the members of the Liquidating Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a member of the Liquidating Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone, or by proxy; provided, further, however, that to the extent practicable, reasonable notice of a meeting must be given to all members of the Liquidating Trust Advisory Board.

g) Except as expressly provided herein, the affirmative vote of a majority of the members of the Liquidating Trust Advisory Board shall be the act of the Liquidating Trust Advisory Board with respect to any matter that requires the determination, consent, approval, or agreement of such board. Any or all of the members of the Liquidating Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the Plan) for the holding thereof. Any member of the Liquidating Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting. In all matters submitted to a vote of the Liquidating Trust Advisory Board, each Liquidating Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Liquidating Trust Advisory Board member or by proxy. In a matter in which the Liquidating Trustee cannot obtain direction or authority from the Liquidating Trust Advisory Board, the Liquidating Trustee may file a motion requesting such direction or authority from the Bankruptcy Court; provided, however, that any member of the Liquidating Trust Advisory Board may oppose such motion.

h) Any action required or permitted to be taken by the Liquidating Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by

unanimous written consent of the Liquidating Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by the Liquidating Trust Advisory Board and filed with the minutes or proceedings of the Liquidating Trust Advisory Board.

    i)  Any member of the Liquidating Trust Advisory Board shall be reimbursed by the Liquidating Trustee from the Liquidating Trust Operating Reserve for its actual, reasonable out-of-pocket expenses incurred for serving on such board, such as travel costs, etc. (but excluding the fees, costs, and expenses of professionals retained by Liquidating Trust Advisory Board members individually), after submission of reasonably detailed receipts or invoices evidencing such expenses. Except as provided for in this Section 6.4, the members of the Liquidating Trust Advisory Board shall not be entitled to receive any other form of compensation for their services provided as such members.

    6.5. Resolution of Claims.

    a)  Unless otherwise provided in the Plan, from the Effective Date through the Claims Objection Deadline, the Liquidating Trustee shall have the authority to object to Claims (in consultation with the Liquidating Trust Advisory Board) to have the Bankruptcy Court determine the amount and treatment of any Claim. Subject to Section 6.3 herein, from and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim with or without approval of the Court.

    b)  Subject to Section 6.3 herein, the Liquidating Trustee shall have the authority to retain counsel and professionals in conjunction with the resolution of Claims pursuant to this Section 6.5. The reasonable fees and expenses of such counsel and professionals as approved by the Liquidating Trust Advisory Board shall be paid and deducted from the Liquidating Trust Operating Reserve.

    c)  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and this Trust Agreement.

    d)  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) regardless of whether any of the Debtors or any other person previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.

    6.6. Actions Taken on Other Than a Business Day. In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

    6.7. Agents, Employees, and Professionals.

a) Subject to approval by the Liquidating Trust Advisory Board, the Liquidating Trust may, but shall not be required to, from time to time enter into contracts with, consult with and retain Liquidating Trustee Professionals deemed by the Liquidating Trustee to have qualifications necessary or desirable to assist in the proper administration of the Liquidating Trust, on such terms as he Liquidating Trustee deems appropriate. Subject to approval by the Liquidating Trust Advisory Board, the Liquidating Trustee may assume existing contracts or leases to which the Debtors are a party as of the date hereof including employment agreements, or may enter into new arrangements on substantially similar terms. None of the professionals that represented parties-in-interest in the Chapter 11 Cases shall be precluded from being engaged by the Liquidating Trustee solely on account of their service as a professional for such parties-in-interest prior to the Effective Date.

b) After the Effective Date, Liquidating Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis, or as may otherwise be agreed by the Liquidating Trustee, to the Liquidating Trustee, including in such invoices a description of the work performed, who performed such work, and, if billing on an hourly basis, the hourly rate of such person, plus an itemized statement of expenses. Subject to the approval of the Liquidating Trust Advisory Board, the Liquidating Trustee shall pay such invoices thirty (30) days after such invoices are received. In the event of any dispute concerning the entitlement to, or the reasonableness of any compensation and/or expenses of any Liquidating Trustee Professionals, either the Liquidating Trustee, with the approval of the Liquidating Trust Advisory Board, or the affected party may ask the Bankruptcy Court to resolve the dispute.

c) All payments to Liquidating Trustee Professionals shall be paid out of the Liquidating Trust Operating Reserve.

6.8. <u>Investment of Liquidating Trust Monies</u>. All monies and other assets received by the Liquidating Trustee as Liquidating Trust Assets (including the proceeds thereof as a result of investment in accordance with this Section 6.8) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Liquidating Trust Beneficiaries, and shall not be segregated from other Liquidating Trust Assets, unless and to the extent required by the Plan. The Liquidating Trustee shall promptly invest any such monies (including any earnings thereon or proceeds thereof) as permitted by section 345 of the Bankruptcy Code, in the manner set forth in this Section 6.8, but shall otherwise have no liability for interest or income on any monies received by the Liquidating Trust hereunder and held for distribution or payment to the Liquidating Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidating Trust shall be administered in accordance with the general duties and obligations hereunder. Unless otherwise approved by the Liquidating Trust Advisory Board, the right and power of the Liquidating Trustee to invest the Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to (i) invest such Liquidating Trust Assets (pending distributions in accordance with the Plan or this Trust Agreement) in short-term direct

obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments"); provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings (including but not limited to Revenue Procedure 82-58, Revenue Procedure 91-15, and Revenue Procedure 94-45), other IRS pronouncements or otherwise.

6.9.    <u>Termination</u>. The duties, responsibilities, and powers of the Liquidating Trustee and the Liquidating Trust Advisory Board shall terminate on the date the Liquidating Trust is wound up and dissolved in accordance with Arizona law pursuant to Section 3.2 hereof, under applicable law and in accordance with this Trust Agreement and the Plan, by an order of the Bankruptcy Court, or by entry of a final decree closing the Debtors' Chapter 11 cases; provided, however, that Sections 7.2, 7.3, 7.4, 7.5, and 7.6 hereof shall survive such termination, dissolution, and entry.

## ARTICLE VII.

## CONCERNING THE LIQUIDATING TRUSTEE AND

## LIQUIDATING TRUST ADVISORY BOARD

7.1.    <u>Reliance by the Liquidating Trustee and the Members of the Liquidating Trust Advisory Board</u>. Except as otherwise provided in this Trust Agreement, the Plan, or the Confirmation Order, the Liquidating Trustee and the members of the Liquidating Trust Advisory Board may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties.

7.2.    <u>Liability to Third Persons</u>. The Liquidating Trustee, the Liquidating Trustee Professionals, and the members of the Liquidating Trust Advisory Board shall not be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any person (including, in the case of the Liquidating Trustee and members of the Liquidating Trust Advisory Board, to any Liquidating Trustee Professionals retained by the Liquidating Trustee in accordance with this Trust Agreement) in connection with the Liquidating Trust Assets or the affairs of the Liquidating Trust and shall not be liable with respect to any action taken or omitted to be taken in good faith, except for actions and omissions determined by a Final Order of the Bankruptcy Court to be due to their respective gross negligence, intentional fraud, criminal conduct, or willful misconduct, and all such Persons shall look solely to the

Liquidating Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Liquidating Trust. Other than as set forth in the Plan or in the Confirmation Order, nothing in this Section 7.2 shall be deemed to release any Liquidating Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

7.3. <u>Nonliability of Liquidating Trustee and Liquidating Trust Advisory Board for Acts of Others</u>. Except as provided herein, nothing contained in this Trust Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Liquidating Trustee, the Liquidating Trust Advisory Board (or its members), or the Liquidating Trustee Professionals of any of the liabilities, obligations, or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Liquidating Trustee to assume or accept any such liability, obligations, or duty. Any successor Liquidating Trustee, or Liquidating Trust Advisory Board member may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee hereunder, and any statement of representation made as to the assets comprising the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so. The Liquidating Trustee, and the Liquidating Trust Advisory Board members shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Liquidating Trustee or any successor Liquidating Trustee, and Liquidating Trust Advisory Board members shall not be liable for any act or omission of any predecessor Liquidating Trustee, or Liquidating Trust Advisory Board member, nor have a duty to enforce any claims against any predecessor Liquidating Trustee, or Liquidating Trust Advisory Board member on account of any such act or omission, unless directed to do so by the Liquidating Trust Advisory Board. No provision of this Trust Agreement shall require the Liquidating Trustee to expend or risk his or her personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder if the Liquidating Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him or her.

7.4. <u>Exculpation</u>. As of the Effective Date, the Liquidating Trustee, the Liquidating Trustee Professionals, and any member of the Liquidating Trust Advisory Board shall be and hereby are exculpated by all Persons, including Liquidating Trust Beneficiaries, Holders of Claims, Holders of Interests, and other parties-in-interest, from any and all claims, causes of action, and other assertions of liability arising out of or related to the discharge of their respective powers and duties conferred by the Plan, this Trust Agreement, or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law or otherwise, except for actions or omissions to act that are determined by Final Order of the Bankruptcy Court to have arisen out of their own respective intentional fraud, criminal conduct, gross negligence, or willful misconduct. No Liquidating Trust Beneficiary, holder of a Claim, holder of an Interest, or other party-in-interest shall have or be permitted to pursue any claim or cause of action against the Liquidating Trustee, the Liquidating Trust, the employees,

professionals, or representatives of either the Liquidating Trustee or the Liquidating Trust (including the Liquidating Trustee Professionals) or the members of the Liquidating Trust Advisory Board, for making payments in accordance with, or for implementing, the provisions of the Plan, the Confirmation Order, and this Trust Agreement in good faith. Any action taken or omitted to be taken with the express approval of the Bankruptcy Court or the Liquidating Trust Advisory Board shall conclusively be deemed not to constitute gross negligence or willful misconduct; provided, however, that, notwithstanding any provision herein to the contrary, the Liquidating Trustee shall not be obligated to comply with a direction of the Liquidating Trust Advisory Board, whether or not express, which would result in a change to the distribution provisions of this Trust Agreement and the Plan.

7.5.  Duties of the Members of the Liquidating Trust Advisory Board.  The members of the Liquidating Trust Advisory Board shall owe a fiduciary duty to Liquidating Trust Beneficiaries as a whole and not to any individual Creditor or Liquidating Trust Beneficiary.  Members of the Liquidating Trust Advisory Board shall owe the same duties to the Liquidating Trust Beneficiaries as the duties owed by members of a committee established by Section 1102(a) of the Bankruptcy Code to their constituents.

7.6.  Indemnity. The Liquidating Trustee, the employees of the Liquidating Trust, the members of the Liquidating Trust Advisory Board, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives, and principals, including the Liquidating Trustee Professionals (collectively, the "Indemnified Parties") shall be indemnified by the Liquidating Trust solely from the Liquidating Trust Assets for any losses, claims, damages, liabilities, and expenses occurring after the Effective Date, including reasonable attorneys' fees, disbursements, and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought by or threatened against one or more of the Indemnified Parties on account of the acts or omissions in their capacity as, or on behalf of, the Liquidating Trustee or a member of the Liquidating Trust Advisory Board; provided, however, that the Liquidating Trust shall not be liable to indemnify any Indemnified Party for any act or omission arising out of such Indemnified Party's respective gross negligence, fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, except for any actions or omissions arising from their own respective willful misconduct, fraud, or gross negligence; provided, however, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Liquidating Trust immediately upon the entry of a Final Order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.6. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

7.7. <u>Compensation and Expenses</u>. Subject to the approval of the Liquidating Trust Advisory Board, the Liquidating Trustee shall receive compensation for its services, to be paid out of the Liquidating Trust Operating Reserve. In addition, the Liquidating Trustee shall be entitled, with the approval of the Liquidating Trust Advisory Board to reimburse itself from the Liquidating Trust Operating Reserve on a monthly basis for all reasonable out-of-pocket expenses actually incurred in the performance of duties in accordance with this Trust Agreement and the Plan.

## ARTICLE VIII.

## SUCCESSOR LIQUIDATING TRUSTEE

8.1. <u>Resignation</u>. The Liquidating Trustee may resign from the Liquidating Trust by giving at least sixty (60) days prior written notice thereof to each member of the Liquidating Trust Advisory Board. Such resignation shall become effective on the later to occur of (a) the date specified in such written notice, and (b) the effective date of the appointment of a successor Liquidating Trustee in accordance with Section 8.4 hereof and such successor's acceptance of such appointment in accordance with Section 8.5 hereof.

8.2. <u>Removal</u>. At any time upon the request of the Liquidating Trust Advisory Board through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Liquidating Trustee, including any successor Liquidating Trustee, for cause. For purposes of this Section 8.2, "cause" shall mean: (a) an act of fraud, embezzlement, or theft in connection with the Liquidating Trustee's duties or in the course of her employment in such capacity, (b) the intentional wrongful damage to the Liquidating Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidating Trust resulting in material harm to the Liquidating Trust, or (d) gross negligence by the Liquidating Trustee in connection with the performance of his or her duties under this Trust Agreement. Unless the Bankruptcy Court orders immediate removal, the Liquidating Trustee shall continue to serve until a successor Liquidating Trustee is appointed, and such appointment becomes effective, in accordance with Section 8.2 hereof. If the Liquidating Trustee is removed for cause, such Liquidating Trustee shall not be entitled to any accrued but unpaid fees, expenses or other compensation under this Trust Agreement or otherwise. If the Liquidating Trustee is unwilling or unable to serve for any other reason whatsoever other than for "cause," subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation, to the extent incurred, arising or relating to events occurring before his or her removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

8.3. <u>Effect of Resignation or Removal</u>. The resignation, removal, incompetency, bankruptcy, or insolvency of the Liquidating Trustee shall not operate to terminate the Liquidating Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan, or the Confirmation Order or invalidate any action

theretofore taken by the Liquidating Trustee. All fees and expenses properly incurred by the Liquidating Trustee prior to the resignation, incompetency, or removal of the Liquidating Trustee shall be paid from the Liquidating Trust Operating Reserve, unless such fees and expenses are disputed by (a) the Liquidating Trust Advisory Board or (b) the successor Liquidating Trustee, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Liquidating Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Liquidating Trust Operating Reserve. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall: (i) promptly execute and deliver such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee or directed by the Bankruptcy Court to effect the termination of such Liquidating Trustee's capacity under this Trust Agreement; (ii) promptly deliver to the successor Liquidating Trustee all documents, instruments, records, and other writings related to the Liquidating Trust as may be in the possession of such Liquidating Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

8.4. <u>Appointment of Successor</u>. In the event of the death, resignation, removal, incompetency, bankruptcy, or insolvency of the Liquidating Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by a majority of the Liquidating Trust Advisory Board. In the event that a successor Liquidating Trustee is not appointed within thirty (30) days after the date of such vacancy, the Bankruptcy Court, upon its own motion or the motion of a Liquidating Trust Beneficiary or any member of the Liquidating Trust Advisory Board, shall appoint a successor Liquidating Trustee.

8.5. <u>Acceptance of Appointment by Successor Liquidating Trustee</u>. Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and to the Liquidating Trust Advisory Board and, in case of the Liquidating Trustee's resignation, to the resigning Liquidating Trustee. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion, and privileges of its predecessor in the Liquidating Trust with like effect as if originally named Liquidating Trustee and shall be deemed appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The resigning or removed Liquidating Trustee shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held by such resigning or removed Liquidating Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion, and privileges of such resigning or removed Liquidating Trustee.

# <u>ARTICLE IX.</u>

# <u>MISCELLANEOUS PROVISIONS</u>

9.1.    <u>Governing Law</u>. This Trust Agreement shall be governed by and construed in accordance with the laws of the State of Arizona, without giving effect to rules governing the conflict of laws.

9.2.    <u>Jurisdiction</u>. Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust and the Liquidating Trustee, including the administration and activities of the Liquidating Trust and the Liquidating Trustee, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; provided, however, that notwithstanding the foregoing, the Liquidating Trustee shall have power and authority to prosecute any Cause of Action in any court of competent jurisdiction (including the Bankruptcy Court).

9.3.    <u>Severability</u>. In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

9.4.    <u>Notices</u>. Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email, facsimile, sent by nationally recognized overnight delivery service or mailed by first-class mail:

     (i)    If to the Liquidating Trustee:

     (ii)    If to the Debtors:

     (iii)    If to the members of the Liquidating Trust Advisory Board:

9.5.    <u>Headings</u>. The headings contained in this Trust Agreement are solely for convenience and reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

9.6.    <u>Relationship to the Plan</u>. The terms of this Trust Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order, and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is a conflict between the

provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) Confirmation Order, (2) the Plan, and (3) this Trust Agreement.

9.7. <u>Entire Trust Agreement</u>. This Trust Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter hereof.

9.8. <u>Cooperation</u>. The Debtors shall turn over or otherwise make available to the Liquidating Trustee at no cost to the Liquidating Trust or the Liquidating Trustee, all books and records reasonably required by the Liquidating Trustee to carry out its duties hereunder, and agree to otherwise reasonably cooperate with the Liquidating Trustee in carrying out its duties hereunder, subject to the confidentiality provisions herein to preserve the confidential nature of the Debtors' books and records.

9.9. <u>Amendment and Waiver</u>. Any provision of this Trust Agreement may be amended or waived by the Liquidating Trustee with the consent of all members of the Liquidating Trust Advisory Board provided, however, that no change may be made to this Trust Agreement that would adversely affect the distributions to be made under this Trust Agreement to any of the Liquidating Trust Beneficiaries, or adversely affect the United States federal income tax status of the Liquidating Trust as a "liquidating trust." Notwithstanding this Section 9.9, any amendment to this Trust Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulations section 301.7701-4(d) and Section 1.2 hereof.

9.10. <u>Meanings of Other Terms</u>. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations, and other entities. All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Trust Agreement, and the words herein and words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section, or subdivision of this Trust Agreement. The term "including" shall mean "including, without limitation."

9.11. <u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed in original, but such counterparts shall together constitute but one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

9.12. <u>Intention of Parties to Establish Liquidating Trust</u>. This Trust Agreement in intended to create a "liquidating trust" for United States federal income tax purposes within the meaning of Treasury Regulations section 301.7701-4(d), and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such United States federal income tax laws, which amendments may apply retroactively. This Trust Agreement is not intended to create and shall not be interpreted as creating a corporation, association, partnership or joint venture of any kind for United States federal income tax purposes or for any other purposes.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives, or agents, effective as of the date first written above.

**ADVANCED REIMBURSEMENT SOLUTIONS, LLC**

By:_____
Name:  Bryan Perkinson
Title:  Chief Restructuring Officer

**AMERICAN SURGICAL DEVELOPMENT, LLC**

By:_____
Name:  Bryan Perkinson
Title:  Chief Restructuring Officer

## Annex A

### Classes of Liquidating Trust Interests and Relative Distribution Priorities

<u>Series A (Class 1) Liquidating Trust Interests</u>: Series A Liquidating Trust Interests consist of the beneficial interests in the Liquidating Trust that shall entitle the Holder thereof to receive distributions of Cash pursuant to the terms and distribution priorities of the Plan, Confirmation Order and Trust Agreement, and which shall be issued to Holders of Allowed Class 1 Claims. Subject to the payment, in full, of all Allowed Administrative Claims, the Liquidating Trustee shall make distributions from the net Cash proceeds generated by the Liquidating Trust until the earlier of (i) dissolution of the Liquidating Trust; or (ii) Series A Holders receiving distributions equivalent to the full value of such Holder's Allowed Claim. Upon receipt of the full value the Holder's Allowed Claim, the corresponding Series A interest shall be deemed satisfied.

<u>Series B (Class 2) Liquidating Trust Interests</u>: Series B Liquidating Trust Interests consist of the beneficial interests in the Liquidating Trust that shall entitle the Holder thereof to receive distributions of Cash pursuant to the terms and distribution priorities of the Plan, Confirmation Order and Trust Agreement, and which shall be issued to Holders of Allowed Class 2 Claims. Subject to the payment, in full, of all Allowed Administrative Claims and satisfaction of all Series A interests, the Liquidating Trustee shall make distributions from the net Cash proceeds generated by the Liquidating Trust, until the earlier of (i) dissolution of the liquidating trust; or (ii) Series B Holders receiving distributions equivalent to the full value of such Holder's Allowed Claim. The Liquidating Trustee shall make distributions owed to Series B1 Holders and Series B2 Holders contemporaneously to the fullest extent practicable. Upon receipt of the full value the Holder's Allowed Claim, the corresponding Series B interest shall be deemed satisfied.

<u>Series B1 (Class 2.1) Liquidating Trust Interests</u>: Series B1 Liquidating Trust Interests consist of the beneficial interests in the Liquidating Trust that shall entitle the Holder thereof to receive distributions of Cash pursuant to the terms and distribution priorities of the Plan, Confirmation Order and Trust Agreement, and which shall be issued to Holders of Allowed Class 2.1 Claims. A Holder's Series B1 Liquidating Trust Interest shall be determined in reference to the value of the Holder's Claim in proportion to all Class 2 Claims. The Liquidating Trustee shall allocate Cash generated from Liquidating Trust Assets except the Payor Receivables to distributions made to Series B1 prior to making distributions derived from such assets to Series B2. In the event that the net proceeds of the Liquidating Trust Assets except for the Payor Receivables are not sufficient to fully satisfy the pro rata distributions otherwise owed to Series B1 Holders, such interest in distributions shall be deemed waived and the remaining proceeds from the Payor Receivables, if any, shall be distributed to Series B2

Holders. In no event, shall the Liquidating Trustee make distributions to Series B1 Holders from Cash derived from Payor Receivables.

Series B2 (Class 2.2) Liquidating Trust Interests: Series B2 Liquidating Trust Interests consist of the beneficial interests in the Liquidating Trust that shall entitle the Holder thereof to receive Distributions of Cash pursuant to the terms and distribution priorities of the Plan, Confirmation Order and Trust Agreement, and which shall be issued to Holders of Allowed Class 2.2 Claims. A Holder's Series B2 Liquidating Trust Interest shall be determined in reference to the value of the Holder's Claim in proportion to all Class 2 Claims. The Liquidating Trustee shall allocate Cash generated from the Payor Receivables to distributions made to Series B2 prior to making distributions derived from any other Liquidating Trust Assets.

Series C (Class 3) Liquidating Trust Interests: Series C Liquidating Trust Interests consist of the beneficial interests in the Liquidating Trust that shall entitle the Holder thereof to receive distributions of Cash pursuant to the terms and distribution priorities of the Plan, Confirmation Order and Trust Agreement, and which shall be issued to Holders of Allowed Class 3 Claims. A Holder's Series C Liquidating Trust Interest shall be determined in reference to the value of the Holder's Claim in proportion to all Class 3 Claims. Subject to the payment, in full, of all Allowed Administrative Claims and satisfaction of all Series A and Series B interests, the Liquidating Trustee shall make distributions from the net Cash proceeds, excluding Payor Receivables, generated by the Liquidating Trust, until the earlier of (i) dissolution of the liquidating trust; or (ii) Series C Holders receiving distributions equivalent to the full value of such Holder's Allowed Claim. In the event that the net proceeds of the Liquidating Trust Assets except for the Payor Receivables are not sufficient to fully satisfy the pro rata distributions otherwise owed to Series C Holders, such interest in distributions shall be deemed waived and the remaining proceeds from the Payor Receivables, if any, shall be distributed to Series B2 Holders. In no event, shall the Liquidating Trustee make distributions to Series C Holders from Cash derived from Payor Receivables.

# Exhibit B

<u>**Plan of Liquidation Support Agreement**</u>

This Plan of Liquidation Support Agreement is dated September 23, 2022 (the "<u>Agreement</u>"), by and between The Aetna Life Insurance Company, Aetna, Inc., and Aetna Health, Inc. (collectively, "<u>Aetna</u>"); UnitedHealthcare Insurance Company and United HealthCare Services, Inc. (collectively, "<u>United</u>" and together with Aetna, the "<u>Creditors</u>"); Advanced Reimbursement Solutions, LLC ("<u>ARS</u>") and American Surgical Development, LLC ("<u>ASD</u>" and together with ARS, the "<u>Debtors</u>"); and the parties listed on **<u>Exhibit 1</u>** (collectively, the "<u>Maldonado Parties</u>" and together with the Creditors and Debtors, the "<u>Parties</u>").

**WHEREAS**, some of the Maldonado Parties are the direct and/or indirect owners of the Debtors;

**WHEREAS**, the Debtors commenced a litigation against Aetna in the U.S. District Court for the District of Arizona (the "<u>District Court</u>"), which is captioned *Advanced Reimbursement Solutions, LLC v. The Aetna Life Insurance Company*, Case No. 19-CV-05395 (the "<u>Aetna Litigation</u>");

**WHEREAS**, Aetna filed counterclaims against, *inter alia*, the Debtors, Gregory Brian Maxon Maldonado, Sean Maldonado, and James Allen in the Aetna Litigation;

**WHEREAS**, United commenced a litigation against, *inter alia*, ARS in the District Court, which is captioned *United HealthCare Services, Inc., et al., v. Advanced Reimbursement Solutions, LLC, et al.*, Case No. 21-CV-01302 (the "<u>United Litigation</u>" and together with the Aetna Litigation, the "<u>Creditor Litigations</u>");

**WHEREAS**, the Debtors and Maldonado Parties have denied the allegations in the Creditor Litigations;

**WHEREAS**, on or about June 14, 2022, the Debtors adopted a resolution appointing Bryan Perkinson ("<u>Perkinson</u>") to serve as their Chief Restructuring Officer ("<u>CRO</u>"), subject to ARS's manager's right to revoke said appointment (the "<u>June 14 Resolution</u>");

**WHEREAS**, on and prior to the date hereof, the Debtors, the Maldonado Parties, and the Creditors have engaged in arm's length, good faith negotiations, and ultimately reached agreement regarding, among other things, (i) the filing of Chapter 11 bankruptcy cases by the Debtors (the "<u>Bankruptcy Cases</u>") in the U.S. Bankruptcy Court for the District of Arizona (the "<u>Bankruptcy Court</u>"); and (ii) a term sheet for a plan of liquidation of the Debtors (the "<u>Plan</u>"), which is attached hereto as **<u>Exhibit 2</u>** (the "<u>Plan Term Sheet</u>");

**WHEREAS**, subject to the terms and conditions set forth therein, the Maldonado Parties, the Debtors, and the Creditors intend to work together to facilitate confirmation and consummation of the Plan and the transactions as further set forth herein (collectively, the "<u>Liquidation Transactions</u>");

**WHEREAS**, to ensure an orderly liquidation of the Debtors for the benefit of its creditors and ultimately a confirmation of the Plan and the occurrence of the Liquidation Transactions, (a) the Debtors are prepared to perform their obligations hereunder, including, among other things, the execution of appropriate company resolutions authorizing the actions of the Debtors hereunder and the appointment, without right to revoke, of Perkinson as the CRO through the Plan Effective Date (as defined below), and to file voluntary Chapter 11 petitions and thereafter promptly seek the Bankruptcy Court's confirmation of the Plan; (b) the Maldonado Parties are prepared to perform their obligations

hereunder; and (c) the Creditors are prepared to perform their obligations hereunder, including working with the Debtors to obtain Bankruptcy Court approval of this Agreement and confirmation of the Plan; and

**WHEREAS**, in expressing such support and commitment, the Parties recognize that certain undertakings contemplated by this Agreement are subject to, among other things, the solicitation and disclosure requirements of applicable bankruptcy law.

**NOW, THEREFORE**, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

<u>AGREEMENT</u>

1. <u>Recitals and Exhibits</u>. The foregoing recitals are true and accurate, and incorporated herein by reference. The Plan Term Sheet is incorporated herein by reference.

2. <u>Agreement Effective Date</u>. With respect to this Agreement, the "<u>Agreement Effective Date</u>" shall occur upon the last date of execution by all of the Parties.

3. <u>Appointment of CRO during Bankruptcy Cases; Company Resolutions</u>.

   a. Upon the Agreement Effective Date and concurrent with the execution of this Agreement, the Debtors shall rescind the June 14 Resolution, and adopt a new resolution appointing Perkinson to serve as CRO of both Debtors and vest him with the powers equal to that of a Chapter 11 Trustee. Unless Perkinson becomes incapacitated or otherwise unable to perform his duties (as determined by an order of the Bankruptcy Court), or the Debtors and Creditors otherwise agree in writing, Perkinson shall remain in the role as CRO of the Debtors until the Plan Effective Date. The Maldonado Parties agree not to terminate Perkinson or otherwise impair his ability to perform his role as CRO. Perkinson will no longer report to Tyler Grim or any other current or former Insider (defined below) of the Debtors, including the Maldonado Parties. However, nothing herein shall limit Perkinson's ability to communicate with the Maldonado Parties, regardless of whether such communications are privileged, as parties-in-interest in the Bankruptcy Cases.

   b. On the Agreement Effective Date, the Debtors shall deliver to the Creditors copies of executed resolutions authorizing (i) Perkinson's appointment as CRO consistent with the terms and conditions of this Agreement, (ii) the Debtors to execute this Agreement and perform thereunder, and (iii) the Debtors to file the Bankruptcy Cases consistent with the terms of this Agreement.

4. <u>Cessation of Debtors' Business Operations; Accounts Receivable Collections</u>. ARS shall cease operations by no later than December 31, 2022. ASD shall cease operations by no later than the date on which the Bankruptcy Cases are filed (the "<u>Petition Date</u>"), subject to collection of any pre-petition receivables (other than the Creditor Receivables as defined hereinafter). Upon the Agreement Effective Date, the Debtors shall cease any further attempt to bill or collect any medical claims from the Creditors (the "<u>Creditor Receivables</u>"). The Debtors shall contact its clients with outstanding claims that have been submitted to Creditors and notify them that the Debtors will not take any further action with respect to those claims. The Maldonado Parties acknowledge that they will not, directly or indirectly, attempt to collect the Creditor Receivables either.

5. <u>Cessation of Litigation</u>.  As of the Agreement Effective Date, the Debtors will cease all activities in the Creditor Litigations (except with respect to the document production referenced in paragraph 7.b. herein).

6. <u>Assumption of Agreement</u>.  The Debtors shall move to assume this Agreement under 11 U.S.C. § 365 (the "<u>Motion to Assume</u>") within five business days of the Petition Date and will vigorously prosecute such motion.  Aetna and United will support the Motion to Assume.

7. <u>Information; Discovery</u>.

 a. Upon request, the Debtors will continue to provide on an informal basis financial information, as well as information on potential causes of action against insiders as defined in 11 U.S.C. § 101(31) (the "<u>Insiders</u>"), including the Maldonado Parties, to the Creditors during the Bankruptcy Cases.

 b. Notwithstanding the automatic stay, the Creditors and the Debtors will continue to meet and confer to develop an efficient and cost-effective means of producing discoverable documents to Creditors for use in the Creditor Litigations against non-debtor defendants, and to the extent necessary will stipulate to relief from stay to effectuate the same.  Creditors acknowledge and agree the Debtors and their professionals will owe fiduciary duties to the respective bankruptcy estates, and any means for producing documents that may be agreed upon shall not prejudice or interfere with the administration of the estates or burden the estates with unnecessary expenses.

8. <u>Milestones</u>.  The Debtors shall adhere to the below deadlines, provided that the deadlines in subparagraphs (d) and (e) shall be subject to the availability of the Bankruptcy Court and the timeliness of its rulings, but the Debtors shall use best efforts to satisfy such milestones:

 a. Petition Date to occur by September 23, 2022;

 b. Motion to Assume filed within five business days of the Petition Date;

 c. Plan and appropriate disclosure statement (the "<u>Disclosure Statement</u>") filed within thirty days of the Petition Date;

 d. Confirmation hearing (which may be combined with a hearing on adequacy of the Disclosure Statement) by no later than December 15, 2022;

 e. Effective date of the Plan (the "<u>Plan Effective Date</u>") by no later than December 31, 2022.

9. <u>Plan Terms; Parties Support Thereof</u>.

 a. The Debtors shall:

  i. Prepare and file the Plan and Disclosure Statement, which shall be consistent with the terms of the Plan Term Sheet, and otherwise in a form and substance reasonably acceptable to Creditors.

  ii. Use best efforts to obtain the approval of the Disclosure Statement and confirmation of the Plan.

  iii. Not directly or indirectly seek, solicit, or support any other plan, sale, proposal, or offer of dissolution, winding up, liquidation, reorganization, merger, or restructuring of the Debtors that could reasonably be expected to prevent, delay, or impede the liquidation of the Debtors as contemplated by the Plan or that is inconsistent with this Agreement and the Plan Term Sheet.

          iv.  Not amend the Plan in a manner adverse to the Creditors.

          v.  Not take any action that is intended or is reasonably likely to interfere with consummation of the Plan and the Liquidation Transactions embodied in the Plan and Plan Term Sheet.

          vi.  Support and complete the Liquidation Transactions substantially on the terms set forth in the Plan, with such terms subject to changes reasonably acceptable to the Creditors or as may be ordered by the Bankruptcy Court.

          vii.  Not object to the claims of the Creditors as long as they are consistent with the TPP Class Claim Methodology (as defined in the Plan Term Sheet).

    b.  The Creditors shall:

          i.  support entry by the Bankruptcy Court of an order approving the Disclosure Statement in form and substance reasonably acceptable to the Creditors and finding that the Disclosure Statement satisfies the requirements of 11 U.S.C. § 1125 (such an order, the "Disclosure Statement Order").

          ii.  subject to entry of the Disclosure Statement Order, (A) timely vote or cause to be voted their claims to accept the Plan by delivering duly executed and completed ballot or ballots, as applicable, accepting the Plan on a timely basis following commencement of the solicitation of acceptances of an Amended Plan in accordance with 11 U.S.C. §§ 1125 and 1126, and (B) not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn); provided, that such vote shall be immediately revoked and deemed void *ab initio* upon termination of this Agreement as provided herein.

          iii.  support the solicitation, confirmation, and consummation of the Plan and Liquidation Transactions, including by filing a statement with the Bankruptcy Court in support thereof.

10.    Mediation.  The Parties shall mediate the claims against the Maldonado Parties of the Debtors' estates and the direct claims of the Creditors against the Maldonado Parties, on the following terms:

    a.  The "Mediation Parties" shall include the Parties and any other principal of the Debtors, and any other individual or entity affiliated with any of the foregoing that received a transfer from the Debtors in the four years prior to the petition date.

    b.  Timing.  The mediation shall commence no later than November 1, 2022, provided that prior to the commencement of the mediation, the Maldonado Parties respond in full to the financial diligence requests set forth in subparagraph (e) below.

    c.  Mediator.  The Mediation Parties shall meet and confer to try to reach agreement on the selection of a mediator, with consideration to be given to using one of the Bankruptcy Judges of the Bankruptcy Court who is not assigned to the Bankruptcy Cases.  If a Bankruptcy Judge is not available to mediate the parties' dispute and the parties cannot otherwise reach agreement on a mediator, the Mediation Parties will move the Bankruptcy Court to select a private mediator.

    d. <u>Costs</u>. To the extent any cost is imposed by the mediator, such costs shall be shared as follows: 25% by Aetna, 25% by United, 25% by Debtors, and 25% by Maldonado Parties. The Creditors and the Maldonado Parties acknowledge the Debtors' ability to pay its portion of any cost imposed by a mediator may be subject to Bankruptcy Court approval. In the event such approval cannot be obtained, the Maldonado Parties shall be responsible for the Debtors' share.

    e. <u>Financial Diligence</u>. Within 30 days of the Agreement Effective Date, each of the Maldonado Parties shall provide Creditors with a current financial statement together with a summary of the disposition of any of their assets during the four (4) years before the Petition Date outside the ordinary course certified as true and correct under penalty of perjury, such summary to include the recipient of such assets and a description of any consideration received in exchange. For avoidance of doubt, no single transfer above $10,000 shall be considered an "ordinary course" disposition. Gregory Brian Maxon Maldonado shall provide to the best of his ability the foregoing information on behalf of his parents, Gregory Brian Maxon and Linda Maldonado. In addition, the Maldonado Parties shall provide to Creditors contemporaneously all source documents relied on in providing the foregoing (x) financial statements, and (y) asset disposition summaries (e.g., bank statements). The foregoing does not preclude the Creditors from pursuing any discovery under Fed. R. Bankr. P. 2004 as permitted by the Bankruptcy Court, but the Creditors shall not pursue such discovery under Rule 2004 against any of the Maldonado Parties prior to their receipt of the financial statements and asset disposition summaries described herein unless this Agreement is earlier terminated. Further, the foregoing does not limit in any way or otherwise waive the ability of the Maldonado Parties to assert in litigation that any particular transfer, regardless of the transfer amount, is a transfer made in the ordinary course. All financial information provided pursuant to this paragraph shall be kept confidential and shall not be disclosed to third parties, other than the Creditors and the Debtors, and their respective professionals; provided, however, (i) the Parties are permitted to disclose such information to the extent required by applicable law or regulation, or in response to a subpoena or similar legal process, and (ii) the Parties shall work together to submit to the Bankruptcy Court a form of protective order to govern the terms of the confidentiality of documents and information exchanged in the mediation or otherwise.

11. <u>Termination.</u>

    a. <u>Creditor Termination</u>. Upon (i) a breach of this Agreement by the Debtors, or (ii) a breach of Sections 3 or Section 4 of this Agreement by the Maldonado Parties, which breach is not cured within five business days of written notice of the same, either Creditor may terminate this Agreement.

    b. <u>Maldonado Party Breach of Mediation Provisions</u>. Upon breach of any other provision of this Agreement by the Maldonado Parties, which breach is not cured within five business days of written notice of the same, and provided that the Debtors are not in breach of the Agreement, this Agreement will remain in effect

but the Debtors and the Creditors' obligation to participate in the mediation under Section 10 shall cease.

c. <u>Creditor Remedies upon Termination.</u>  Upon termination of this Agreement in accordance with subparagraph (a), the Creditors may, in addition to their other remedies at law or equity, move the Bankruptcy Court to convert the Bankruptcy Cases to ones under Chapter 7, or to appointment a Chapter 11 trustee, and the Debtors will not contest such relief other than any arguments that contest the breach of this Agreement, which arguments are expressly preserved.

d. <u>Submission of Exclusive Jurisdiction of Bankruptcy Court</u>.  Upon the occurrence of the Petition Date, the Parties agree that any dispute over whether a breach has occurred under this Agreement shall be resolved by the Bankruptcy Court.  The Parties reserve all other objections to the jurisdictions of the Bankruptcy Court.

e. <u>Debtors' or Maldonado Parties' Termination</u>.  Upon a breach of the agreement by the Creditors, which breach is not cured within five business days of written notice of the same, (i) either Debtor may terminate this Agreement; and (ii) the Maldonado Parties may elect to be relieved of their obligation to participate in the mediation in accordance with Section 10, but the Agreement shall otherwise remain in effect.

f. <u>Stay of Termination</u>.  Other than an automatic termination under subparagraph (g), if a Party files a motion on an expedited basis with the Bankruptcy Court challenging the existence of a default that could give rise to the termination of this Agreement before the expiration of the applicable cure period, the Agreement will not terminate until the Bankruptcy Court renders a decision confirming the default's existence; provided, however, the filing of such a motion does not extend the cure period provided herein and any appeal of the Bankruptcy Court's decision will not further stay the termination of this Agreement, unless the Party challenging the default obtains a stay pending appeal.

g. <u>Automatic Termination</u>.  This Agreement shall terminate automatically upon the following:

   i. if the Bankruptcy Court enters an order: (i) directing the appointment of an examiner with expanded powers or a trustee, unless the Bankruptcy Court directs the appointment of Perkinson as a chapter 11 trustee; (ii) converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Bankruptcy Cases.

   ii. If the Bankruptcy Court enters a final order denying (i) the Motion to Assume; or (ii) confirmation of the Plan.

h. <u>Effect of Termination</u>.  Subject to Section 12 hereof, upon termination of this Agreement in accordance with this Section, (a) this Agreement shall become void and of no further force or effect, and (b) each Party shall be immediately released from its obligations, commitments, undertakings, and agreements hereunder; <u>provided</u>, that in no event shall any such termination relieve a Party hereto from liability under this Agreement for its breach or non-performance of its obligations hereunder prior to the date of the termination.

12. <u>Survival</u>. Notwithstanding the termination of this Agreement, the following provisions shall survive: Section 1, Section 3, Section 4, Section 11.c, Section 11.h, Section 13, Section 16, Section 19, Section 20, Section 25, Section 26, and Section 27.

13. <u>Settlement with Maldonado Parties or other Insiders</u>. The Debtors will not enter into, or seek court approval of, a settlement during the Bankruptcy Cases of claims or causes of action (either estate or third-party) against the Maldonado Parties or any other Insiders without the consent of the Creditors, prior to the Plan Effective Date. This condition shall not limit the ability of the Debtors to discuss potential settlement terms with Insiders or propose any such settlement terms to the Parties.

14. <u>Substantive Consolidation</u>. The Debtors will consult in good faith with the Creditors in an attempt to reach consensus with the Creditors prior to making a decision to seek, or not to seek, substantive consolidation of the Debtors' estates.

15. <u>Further Assurances; Acknowledgment</u>.
   a. The Parties shall cooperate and work together in good faith and shall coordinate their activities with respect to: (i) all matters concerning the solicitation, confirmation, and consummation of the Plan; and (ii) all other matters reasonably necessary or advisable to consummate and make effective the Liquidation Transactions.
   b. The Parties agree and acknowledge that this Agreement is not, and shall not be deemed, a solicitation for acceptances for the Plan. The acceptance of the Creditors will not be solicited until the Creditors have received a Disclosure Statement and related ballot, in each case as approved by the Bankruptcy Court.
   c. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, from time to time, to effectuate the Liquidation Transactions in a manner materially consistent with the Plan Term Sheet.

16. <u>Representations and Warranties</u>. Each Party severally (and not jointly), represents and warrants to the other Parties that the following statements are true, correct, and complete as of the Agreement Effective Date:
   a. such Party has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder;
   b. the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership, or other similar action on its part;
   c. the execution, delivery, and performance by such Party does not and will not (A) violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries, or (B) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party; and
   d. this Agreement is the legally valid and binding obligation of such Party, enforceable in accordance with its terms.

17.    <u>Notice</u>.  Any notice required hereunder may be given by electronic mail or overnight delivery to the below address.  In the case of electronic mail, notice shall be deemed to be given on the date successfully sent, and in the case of overnight mail, on the next business day immediately following the date on which it was sent.

<u>Aetna</u>

Daniel Lyons
Senior Counsel, Legal Dep't
Aetna
151 Farmington Avenue
Hartford, Connecticut 06156
LyonsD1@aetna.com


With a copy to:

Nathaniel Moore
Robins Kaplan LLP
800 LaSalle Ave.
Suite 2800
Minneapolis, Minnesota 55402
nmoore@robinskaplan.com


Geoffrey Goodman
Foley & Lardner LLP
321 N. Clark St.
Suite 3000
Chicago, Illinois 60654
ggoodman@foley.com

<u>United</u>

Damon Thayer
UnitedHealthcare
9700 Health Care Lane, MN017-E300
Minnetonka, Minnesota 55343
[damon_thayer@uhc.com](mailto:damon_thayer@uhc.com)

With a copy to:

Jon Dettmann
Faegre Drinker
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402
[Jon.dettmann@faegredinker.com](mailto:Jon.dettmann@faegredinker.com)

Eric Goldstein
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06013
[egoldstein@goodwin.com](mailto:egoldstein@goodwin.com)

<u>Debtors</u>

Bryan Perkinson, Chief Restructuring Officer
c/o Sonoran Capital Advisors
1733 N. Greenfield Rd., Ste 104
Mesa, AZ 85205
[bperkinson@sonorancap.com](mailto:bperkinson@sonorancap.com)

With a copy to:
Phil Giles
Allen Barnes & Jones PLC
1850 N. Central Ave., Suite 1150
Phoenix, AZ 85004
[pgiles@allenbarneslaw.com](mailto:pgiles@allenbarneslaw.com)

<u>Maldonado Parties</u>

Alan A. Meda
Burch & Cracchiolo, P.A.
1850 N. Central Ave., Suite 1700
Phoenix, AZ 85004
[ameda@bcattorneys.com](mailto:ameda@bcattorneys.com)

James Allen
james@azcolaw.com

18.     Amendments. This Agreement may not be modified, amended, or supplemented except in a writing signed by the Parties.

19.     Governing law; Jurisdiction; Waiver of Jury Trial.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Arizona, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees that any legal action, suit, or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement shall be brought in the Bankruptcy Court (if the Petition Date has occurred) or the District Court (if the Petition Date has not occurred), and each of the Parties hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit, or proceeding. **EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THE INTERPRETATION OR ENFORCEMENT OF THIS AGREEMENT.**

20.     Headings.  The headings of the sections, paragraphs, and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

21.     Successors and Assigns; Severability.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors, administrators, and representatives.  If any provision of this Agreement, or the application of any such provision to any person or circumstance, shall be held invalid or unenforceable in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect.

22.     Complete Agreement. This Agreement and the annexes hereto represent the entire agreement between the Parties with respect to the subject matter hereof and supersede all prior agreements, oral or written, between the Parties with respect thereto. No claim of waiver, modification, consent, or acquiescence with respect to any provision of this Agreement shall be made against any Party, except on the basis of a written instrument executed by or on behalf of such Party.

23.     Counterparts and Execution.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement may be delivered by electronic mail, and an electronic signature (e.g., DocuSign), a copy or facsimile signature (including a signature transmitted as a .tif, .jpg or .pdf image) shall be sufficient to bind the signing party

24.     Representation by Counsel. Each Party acknowledges that it has been represented by, or provided a reasonable period of time to obtain access to and advice by, counsel with respect to this Agreement and the transactions contemplated herein. Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

25.     Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of

any such breach, including, without limitation, an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

26.     Remedies Cumulative. All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

27.     No Third-Party Beneficiaries. Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

28.     Automatic Stay.  The Parties acknowledge that the giving of notice or termination by any Party pursuant to this Agreement shall not be violation of the automatic stay of 11 U.S.C. § 362(a).

[signature pages to follow]

UNITEDHEALTHCARE INSURANCE COMPANY
UNITED HEALTHCARE SERVICES, INC.

_____
By: Damon A. Thayer
Its: Senior Associate General Counsel
Dated: Sept. 23, 2022


THE AETNA LIFE INSURANCE COMPANY
AETNA, INC.
AETNA HEALTH, INC.

_____
By: Daniel Lyons
Its: Senior Counsel
Dated: Sept. 23, 2022


ADVANCED REIMBURSEMENT SOLUTIONS, LLC

_____
By: Bryan Perkinson
Its: Chief Restructuring Officer
Dated: Sept. 23, 2022


AMERICAN SURGICAL DEVELOPMENT, LLC

_____
By: Bryan Perkinson
Its: Chief Restructuring Officer
Dated: Sept. 23, 2022


PANTHEON GLOBAL HOLDINGS, LLC

_____
By:
Its:
Dated: Sept. 23, 2022

_____
Brandon Maldonado
Dated: Sept. 23, 2022

_____
Chris Maldonado
Dated: Sept. 23, 2022

UNITEDHEALTHCARE INSURANCE COMPANY
UNITED HEALTHCARE SERVICES, INC.

_____

By: Damon A. Thayer
Its: Senior Associate General Counsel
Dated: Sept. 23, 2022

THE AETNA LIFE INSURANCE COMPANY
AETNA, INC.
AETNA HEALTH, INC.

_____

By: Daniel Lyons
Its: Senior Counsel
Dated: Sept. 23, 2022

ADVANCED REIMBURSEMENT SOLUTIONS, LLC

_____

By: Bryan Perkinson
Its: Chief Restructuring Officer
Dated: Sept. 23, 2022

AMERICAN SURGICAL DEVELOPMENT, LLC

_____

By: Bryan Perkinson
Its: Chief Restructuring Officer
Dated: Sept. 23, 2022

PANTHEON GLOBAL HOLDINGS, LLC

_____

DocuSigned by:

*Gregory Brian Maxon Maldonado*

86FAE8FA70F6454...

By: Gregory Brian Maxon maldonado
Its: President
Dated: Sept. 23, 2022

_____

Brandon Maldonado
Dated: Sept. 23, 2022

_____

Chris Maldonado
Dated: Sept. 23, 2022

_____

Gregory Brian Maxon Maldonado

Dated: Sept. 23, 2022

Sean Maldonado

Sean Maldonado

Dated: Sept. 23, 2022

James Allen

Dated: Sept. 23, 2022

Dana Christini

Dated: Sept. 23, 2022

Annabelle Maxon Maldonado

Annabelle Maxon Maldonado

Dated: Sept. 23, 2022

Cortni Maxon Maldonado

Dated: Sept. 23, 2022

Taylor Maxon Maldonado

Dated: Sept. 23, 2022


_____

Linda Maxon

Dated: Sept. 23, 2022

DocuSigned by:

*Gregory Brian Maxon Maldonado*

—86FAE8FA70F6454—

Gregory Brian Maxon Maldonado
Dated: Sept. 23, 2022

_____
Sean Maldonado
Dated: Sept. 23, 2022

_____
James Allen
Dated: Sept. 23, 2022

_____
Dana Christini
Dated: Sept. 23, 2022

_____
Annabelle Maxon Maldonado
Dated: Sept. 23, 2022

_____
Cortni Maxon Maldonado
Dated: Sept. 23, 2022

_____
Taylor Maxon Maldonado
Dated: Sept. 23, 2022

_____
Linda Maxon
Dated: Sept. 23, 2022

**Exhibit 1 – Maldonado Parties**

Pantheon Global Holdings, LLC

Brandon Maldonado

Chris Maldonado

Gregory Brian Maxon

Gregory Brian Maxon Maldonado

Sean Maldonado

James Allen

Dana Christini

Annabelle Maxon Maldonado

Cortni Maxon Maldonado

Taylor Maxon Maldonado

Linda Maxon

**Exhibit 2 – Plan Term Sheet**

The Debtors' Plan shall be in a form and substance reasonably acceptable to Creditors and shall contain the following provisions and material terms:[1]

1. <u>Classes of Claims</u>:  The Plan shall contain two classes of general unsecured claims: (i) a class of claims of third-party payors (the "<u>TPPs</u>") that paid claims submitted by the Debtors on behalf of their contracted providers (the "<u>TPP Class</u>"); and (ii) a class of general unsecured creditors other than holders of a TPP Class claim (the "<u>Other GUC Class</u>" and together with the TPP Class, the "<u>GUC Classes</u>").  Except as set forth in paragraph 3 below, the pro-rata distribution to holders of TPP Class claims and Other GUC Class claims shall be the same.

2. <u>TPP Class Claim Valuation Methodology</u>:  The value of TPP Class claims shall be determined based on a formula that will be agreeable to Creditors and Debtors (the "<u>TPP Class Claim Methodology</u>"), which shall be set forth in the Plan or a plan supplement.  The Plan shall expressly provide that the value ascribed to the TPP Class claims reflects a settlement and compromise, and shall not be binding, or subject to res judicata or collateral estoppel, in any other proceeding.

3. <u>Limitation on Distributions from Payor Receivable</u>.  Holders of allowed claims in the TPP Class shall receive distributions from the Liquidating Trust Assets (as defined below), other than the receipt of any accounts receivable of the Debtors arising from the billing of TPPs (the "<u>Payor Receivables</u>"); provided, that such Payor Receivables shall be first used to pay ordinary course expenses prior to the Plan Effective Date, the administrative expenses of the Debtors' estates, and the costs of the Liquidating Trust (as defined below).  To the extent that there are insufficient Liquidating Trust Assets to make a pro-rata distribution to holders of the allowed TPP Class claims given the foregoing restriction, then such holders shall receive as much of a distribution as possible using Liquidating Trust Assets other than collected Payor Receivables.

4. <u>Dissolution and Winding up of Debtors</u>.  The Plan shall authorize the Liquidating Trustee (as defined below) to wind up and dissolve the Debtors.

5. <u>Releases</u>.  Other than traditional exculpation provisions, the Plan shall not provide any releases to any third parties, or any discharge to the Debtors.

6. <u>Liquidating Trust</u>:

   a. <u>Establishment</u>.  The Plan shall establish a liquidating trust (the "<u>Liquidating Trust</u>") to which the Debtors shall grant, convey, or otherwise transfer all right, title, and interest to all of their assets (the "<u>Liquidating Trust Assets</u>"), including all of Debtor's books and records, applicable privileges, and the claims or causes of action of the Debtors (the "<u>Litigation Claims</u>"), as of the Plan Effective Date, other than those assets necessary to pay allowed administrative claims and allowed priority claims under the Plan.  The beneficiaries of the Liquidating Trust shall be the holders of allowed claims in the GUC Classes (the "<u>Liquidating Trust Beneficiaries</u>"), with such interests in the Liquidating Trust to be determined in accordance with the Plan.  A form of trust agreement (the "<u>Liquidating Trust Agreement</u>"), which shall be in a form and substance reasonably acceptable to the Creditors, shall be annexed to the Plan (or plan supplement) and be approved by the Bankruptcy Court in the confirmation order.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan of Liquidation Support Agreement.

b.  <u>Purpose</u>.  The purpose of the Liquidating Trust shall be to hold and effectuate the orderly disposition of the Liquidating Trust Assets and to make distributions of such assets in accordance with the Plan and the Liquidating Trust Agreement.

c.  <u>Liquidating Trustee</u>. The Plan shall appoint a trustee of the Liquidating Trust (the "<u>Liquidating Trustee</u>"), which trustee shall be either (x) Perkinson, if the Creditors agree to his appointment, or (y) if the Creditors oppose his appointment, one of the following as selected by the Debtors:  B. Riley Advisory Services (Marshall Glade and Wayne Weitz); FTI Consulting (Rick Arrowsmith); or Hayes Law (Cole Hayes, Esq.).

    i.  Except as expressly provided in the Liquidating Trust Agreement, and the approval rights of the Liquidating Trust Advisory Board (where applicable and as defined below), the Liquidating Trustee shall have the full right, power, and discretion to (1) manage the affairs of the Liquidating Trust; (2) enter into agreements or otherwise bind the Liquidating Trust; (3) deliver such instruments or documents determined to be necessary or consistent with the terms of the Liquidating Trust Agreement and the Plan; (4) take any actions with respect to the Debtors that could have been taken by the unanimous action of any manager, member, officer, or director of the Debtors, including but not limited to the dissolution and/or winding-up of the Debtors, and the assertion or waiver of the attorney-client or other applicable privileges of the Debtors; (5) open and maintain bank accounts and invest Liquidating Trust Assets; (6) calculate and implement distributions to holders of allowed claims in the GUC Classes ("<u>Distributions</u>"); (7) make a good faith valuation of the Liquidating Trust Assets; (8) object to claims in the GUC Classes ("<u>Claim Objections</u>"); (9) hire and pay compensation to any professional (the "<u>Liquidating Trust Professionals</u>"); (10) cause the Liquidating Trust and the Debtors to file all appropriate and necessary municipal, state, or federal tax returns, and pay any such taxes from the Liquidating Trust Assets; (11) investigate, commence, and prosecute all Litigation Claims; (12) settle any Litigation Claims or Claim Objections, whether or not subject to any pending proceeding; (13) use Liquidating Trust Assets to purchase and maintain all appropriate insurance; (14) implement the terms of the Plan; (15) pay any U.S. Trustee fees; (16) seek a final decree to close the Bankruptcy Cases; (17) maintain accurate books and records; and (18) take any other actions reasonably necessary to perform his/her/its duties under the Liquidating Trust Agreement or the Plan.

    ii.  Liquidating Trustee shall provide quarterly reports to the Liquidating Trust Advisory Board (as defined below), or at such other interval as the Liquidating Trustee and Liquidating Trust Advisory Board shall agree to.

    iii.  Liquidating Trustee's compensation shall be agreed to by the Creditors and Debtors, and set forth in the Liquidating Trust Agreement.

    iv.  The Liquidating Trust Agreement shall set forth customary provisions governing the standard of care of the Liquidating Trustee and limitation on its/his/her liability.

d.  <u>Liquidating Trust Advisory Board</u>.  The Liquidating Trustee shall be overseen by a "<u>Liquidating Trust Advisory Board</u>," which shall have up to three members, two of whom

shall be the Creditors, and the third member shall be a non-Insider creditor of the Debtors, who is willing to serve and reasonably acceptable to the Creditors.

    i. The Liquidating Trust Advisory Board shall have the following powers by majority vote of such body:

        1. Approval over any settlement or compromise of (i) Litigation Claims against any Insider, including the Maldonado Parties; (ii) any Litigation Claims against any party where the amount sought to be recovered in the complaint or demand letter equals or exceeds $100,000.00; or (iii) any Claim Objection where the allowed amount of such claim shall be equal to or in excess of $100,000.00.

        2. Approval of any sale, transfer, assignment, abandonment, or other disposition of Liquidating Trust Assets with a value equal to or in excess of $100,000.00.

        3. Approval over the selection and employment, and payment of compensation and reimbursement of expenses, of any Liquidating Trust Professional.

        4. Removal and replacement of Liquidating Trustee.

        5. Approval over the investment of any Liquidating Trust Assets.

        6. Appointment of successor Liquidating Trustee upon the resignation or incapacitation of the Liquidating Trustee.

        7. Consult with the Liquidating Trustee from time to time on matters concerning the administration of the Liquidating Trust, Distributions, Claim Objections, and pending litigation.

    ii. If any members of the Liquidating Trust Advisory Board resign, the Liquidating Trustee may appoint a replacement member, which shall be the person with the next largest allowed claim in the GUC Classes who is not an Insider or Maldonado Party.

    iii. All members of the Liquidating Trust Advisory Board shall owe fiduciary duties to the Liquidating Trust Beneficiaries as a whole (and not for any particular Liquidating Trust Beneficiary) consistent with the duty owed by an official committee of unsecured creditors under 11 U.S.C. § 1102.

e. <u>Limitation of Liability</u>.  The Liquidating Trustee, the Liquidating Trustee Professionals, and the members of the Liquidating Trust Advisory Board shall not be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any person (including, in the case of the Liquidating Trustee and members of the Liquidating Trust Advisory Board, to any Liquidating Trustee Professionals retained by the Liquidating Trustee in accordance with the Liquidating Trust Agreement) in connection with the Liquidating Trust Assets or the affairs of the Liquidating Trust and shall not be liable with respect to any action taken or omitted to be taken in good faith, except for actions and omissions determined by a final order of the Bankruptcy Court to be due to their respective gross negligence, intentional fraud, criminal conduct, or willful misconduct, and all such persons shall look solely to the Liquidating Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the Liquidating Trust.

    f.   <u>Costs</u>.  The costs incurred by the Liquidating Trust, including the Liquidating Trustee's compensation, the compensation and expense reimbursement of the Liquidating Trust Professionals, and the Liquidating Trust's indemnification obligations shall be deemed a charge against and paid out of the Liquidating Trust Assets, prior in right to any Distributions.

    g.   <u>Indemnification</u>.  The Liquidating Trust shall indemnify, defend, and hold harmless the Liquidating Trustee, the Liquidating Trustee Professionals, and the Liquidating Trust Advisory Board, and their employees, affiliates, officers, directors, shareholders, agents, attorneys, and representatives (collectively, the "<u>Indemnified Parties</u>"), against any and all claims, causes of action, liabilities, obligations, losses, damages, or expenses (including attorneys' fees and expenses) occurring after the Plan Effective Date which the Indemnified Parties may incur or which the Indemnified Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Indemnified Parties arising out of or due to their acts or omissions or the consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties under the Liquidating Trust Agreement, or otherwise to the Liquidating Trust, other than to the extent determined by a final order by a court of competent jurisdiction to be primarily due to such Indemnified Party's own bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

    h.   <u>Distributions</u>.  The Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries (as such may have been determined at such time) as their interests in the Liquidating Trust may entitle them, of the following:  the net income of the Liquidating Trust plus all net proceeds from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement, except for amounts retained as reasonably necessary to maintain the value of the Liquidating Trust Assets, to fund and maintain the reserves to meet claims and contingent liabilities (including disputed claims), and the necessary expenses of the Liquidating Trust.

    i.   <u>Tax Provisions</u>.  The Debtors and Creditors will agree concerning appropriate and customary tax treatment and provision of the creation of and beneficial interests in the Liquidating Trust.

j.   <u>Termination of Liquidating Trust</u>.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated upon (1) the closing of the Bankruptcy Cases, (2) the payment in full of the Liquidating Trust costs, and (3) the Distribution of any remaining Liquidating Trust Assets.  Notwithstanding the preceding sentence, the Liquidating Trust shall terminate on the fifth anniversary of the Plan Effective Date if the events in the preceding sentence have not all occurred, unless the Bankruptcy Court has extended this time period, and if the Liquidating Trust is terminated in such manner, the Liquidating Trustee shall promptly pay all outstanding costs and make Distributions of all remaining Liquidating Trust Assets.

# Exhibit C

## Exhibit C

| Purported Insiders | Non-Insiders |
|---|---|
| 4 Seasons | Aetna Behavioral Health, LLC* |
| Advantis Health Systems, LLC | American Express* |
| AGM | Arizona Pain Ventures, LLC* |
| Amerian Surgical Development, LLC | The Wagner Law Firm* |
| ANMM | American Express* |
| Annabelle Maxon Maldonado | Professional service providers |
| Brandon Maldonado | |
| Chris Maldonado | |
| Cortni Maxon Maldonado | |
| Dana Christini | |
| DAS Auto Kollectiv, LLC | |
| Esteem Funding, LLC | |
| Gregory B. Maxon Maldonado Jr. | |
| Gregory B. Maxon | |
| iiONS, LLC | |
| Linda Maxon | |
| Matrix Anesthesia, LLC | |
| Matrix Management, LLC | |
| MLD | |
| Pantheon Global Holdings, LLC | |
| Pantheon Global Realty, LLC | |
| REM Mgt | |
| Southwest Matrix Anesthesia, PLLC | |
| Tatooine Aviation, LLC | |
| Taylor Maxon Maldonado | |
| Any other Maldonado Party | |

*Claims under 11 U.S.C. §§ 547-550 only

# Exhibit D

# Combined Recovery and Liquidation Analysis

(as of October 24, 2022)

(Draft subject to change)

| | Est. Value | | Liquidating Plan Distribution | % Recovery | Chapter 7 Distribution | % Recovery |
|---|---|---|---|---|---|---|
| *Assets* | | | | | | |
| Deposit accounts | $ 41,513 | | $ 41,513 | 100% | $ 41,513 | 100% |
| ARS A/R | $ 310,066 | | $ 310,066 | 100% | $ 155,033 | 50% |
| ASD A/R | $ 149,854 | | $ 52,449 | 35% | $ 22,478 | 15% |
| ARS-WIP | $ 4,250,000 | [1] | $ 3,400,000 | 80% | $ - | 0% |
| ASD-WIP | $ - | | $ - | 50% | $ - | 0% |
| Tax Refund - *Unknown* | $ - | [2] | $ - | 100% | $ - | 100% |
| Employee Retention Tax Credit benefit for 2020-2021 | $ 2,799,000 | | $ 2,799,000 | 100% | $ 1,399,500 | 50% |
| Insurance Claims (reimbursement for legal expenses) | $ 1,203,303 | [3] | $ 842,312 | 70% | $ 421,156 | 35% |
| Litigation Claims - Non-Insiders - *Unknown* | $ - | [4] | $ - | 0% | $ - | 0% |
| Litigation Claims - Insiders - *Unknown* | $ - | [4] | $ - | 0% | $ - | 0% |
| Judgments (collection) | $ 1,916,648 | [4] | $ 191,665 | 10% | $ 191,665 | 10% |
| **Gross Assets** | | | **$ 7,637,005** | | **$ 2,231,345** | |
| | | | | | | |
| *Administrative Expense Claims* | *Est. Amount* | | | 100% | | 100% |
| Chapter 7 Trustee Fees | $ 90,190 | | $ - | 100% | $ 90,190 | 100% |
| Chapter 7 Trustee Counsel Fees (est.) | $ 250,000 | | $ - | 100% | $ 250,000 | 100% |
| Chapter 7 Fees re ERTC Credit | $ 142,088 | | $ - | 100% | $ 142,088 | 100% |
| Estimated CRO Sonoran Fees (through confirmation) | $ 125,000 | | $ 125,000 | 100% | $ 125,000 | 100% |
| CBIZ fees (ICW ERTC benefit) (est. owed prior to confirmation) | $ 47,850 | | $ 47,850 | 100% | $ 47,850 | 100% |
| Estimated AB&J Fees (through confirmation) | $ 80,000 | | $ 80,000 | 100% | $ 80,000 | 100% |
| Ordinary Course Ch. 11 Administrative Claims | $ 271,300 | | $ 271,300 | 100% | $ 271,300 | 100% |
| US Trustee Fees | $ 2,097 | | $ 2,097 | 100% | $ 2,097 | 100% |
| Liquidating Trust Administrative Expenses (est.) | $ 500,000 | [5] | $ 500,000 | 100% | | 100% |
| **Net Proceeds After Administrative Expense Claims//Available for** | | | **6,610,759** | | **1,222,821** | |
| | | | | | | |
| *Unsecured Claims* | *Est. Amount* | | | | | |
| Priority Claims (Class 1) | $ 47,424 | [6] | $ 47,424 | 100% | $ 47,424 | 100% |
| General Unsecured Claims (Class 2) - *Unknown* | | [7] | $ 6,563,335 | | $ 1,175,397 | |
| Subordinated TPP Claims (Class 3) - *Unknown* | | [7] | $ - | 0.00% | $ - | 0% |

[1] Average of estimated WIP value of $2,500,000 - $6,000,000 used for purpose of this analysis. The value of WIP can only be obtained through continued limited operations in the chapter 11. If the case is converted to chapter 7 the chapter 7 Trustee would not continue limited operations, including processing and complete the WIP, absent authorization under 11 U.S.C. § 721. However, considering the Debtors' industry, it is doubtful a chapter 7 Trustee would continue operations.

[2] Debtors are in the process of determining whether they are entitled to a 2021 tax refund.

[3] Value reflected represents legal expenses paid after E&O and D&O claims tendered to insurance carrier.

[4] Debtors are in the process of determining the value of any litigation claims. However, the value of such claims is subject to defenses and collectability.

[5] Estimate inclusive of second payment due to CBIZ ($142,087.50) and estimated fees for Liquidating Trustee and counsel.

[6] Includes employee priority claims for unpaid compensation, wages and bonuses, and pre-petition franchise tax liability.

[7] Est. $X00,000,000

**Note:** All amounts are estimates rounded to the nearest dollar and made solely for purposes of this analysis. No amount on this analysis should be used or relied on for any purpose other than this analysis. **All rights to object to claims are fully preserved.**